CBNA signed

# Cook Schuhmann & Groseclose, Inc.

## Attorneys at Law

Dennie E. "Skip" Cook
Barbara L. Schuhmann
Robert B. Groseclose
Jo A. Kuchle
Zane D. Wilson
Michael C. Kramer
Craig B. Partyka
Peter M. LeBlanc
Dayle L. Wallien
Mila A. Neubert

Telephone 907.452.1855 • Facsimile 907.452.8154 • Toll Free in Alaska 800.550.1855
714 Fourth Avenue, Suite 200 • Fairbanks, Alaska 99701-4470

July 29, 2003

*Sender's e-mail address:*
bob@alaskalaw.com

Tracy Smith
CNA
333 S. Wabash Floor 38 South
Chicago, IL 60604

Re:    Catholic Bishop of Northern Alaska (CBNA)
       St. Mary's plaintiff's John Does 1-6
       Policy: SMP 239 0621

Dear Ms. Smith:

I can supplement my earlier explanation by providing the following:

     1.     Plaintiffs' First Amended Complaint (filed recently, which adds 2 further plaintiffs).

     2.     CBNA's 12(b)(6) Motion to Dismiss, together with the supporting affidavit, memorandum of counsel, and companion motion for stay.

The enclosed Affidavit of Richard D. Case, S.J., provides the information which I understand you desired by your further letter.

CBNA is tendering defense of this matter to CNA. CBNA regrets the timing issues associated with this matter, and trusts that CNA can appreciate the difficulty encountered in reconstructing insurance records from 40+ years ago. CBNA anxiously awaits CNA's assessment and response to this tender of defense. In the meantime, CBNA is proceeding with those steps which serve its interest.

Please advise should you have questions.

     Sincerely,

     COOK SCHUHMANN & GROSECLOSE, INC.

     By     Robert B. Groseclose (S/HSJ)

Enclosures as stated
cc w/enc:     CBNA (attention: Fr. Case)
     Catholic Mutual (attention: Dick Novak)

Exhibit  1
Page  1 of 37

IN THE SUPERIOR COURT OF THE STATE OF ALASKA

FOURTH JUDICIAL DISTRICT AT BETHEL

COOK, SCHUHMANN
& GROSECLOSE, INC.

JUL 16 2003

RECEIVED

| | |
|---|---|
| JOHN DOE 1, JOHN DOE 2, JOHN DOE 3,<br>JOHN DOE 4, JOHN DOE 5, & JOHN DOE 6, | ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| CATHOLIC BISHOP OF NORTHERN<br>ALASKA, and THE SOCIETY OF JESUS,<br>OREGON PROVINCE, | ) ) ) ) |
| Defendants. | ) ) |

Case No. 4BE-03-0177 CI [DOC]

## FIRST AMENDED COMPLAINT

COME NOW plaintiffs JOHN DOE 1 through 6,[1] by and through counsel Hedland, Brennan, Heideman & Cooke, and for their action against the defendants complain and allege as follows:

### ALLEGATIONS COMMON TO ALL CLAIMS

1.      Plaintiffs, John Doe 1 through 6, at the time of the wrongful conduct described herein, were residents of St. Mary's, or Kaltag, Alaska.  St. Mary's is in located in the Fourth Judicial District, State of Alaska, within the Bethel venue district.  Because the events described in this Complaint are of an extremely personal and sensitive nature and occurred during the minority of all of the named plaintiffs, all plaintiffs choose to identify themselves only by pseudonyms in the public documents filed in this case.

2.     Defendant Catholic Bishop of Northern Alaska (also referred to herein as the

---

[1] JOHN DOE 1,2,3 4, 5 and 6 are pseudonyms, used to protect the identities of the plaintiffs in this case.  The true names of the plaintiffs, and the correlative pseudonyms

LAW OFFICES<br>HEDLAND, BRENNAN, HEIDEMAN & COOKE<br>A PROFESSIONAL CORPORATION<br>1227 WEST NINTH AVENUE, SUITE 300<br>ANCHORAGE, ALASKA 99501-3216<br>(907) 276-5858

Exhibit 1
Page 2 of 37

Diocese of Fairbanks or the Catholic Church) is a domestic corporation sole incorporated on February 13, 1952. Its agent for service of process is Rev. Richard D. Case, S.J., 1316 Peger Road, Fairbanks, Alaska 99709. The chief operating officer and Bishop of defendant Diocese, is appointed by the Pope and has ultimate authority and responsibility for the training, ordination, placement, and, if appropriate, the discipline, removal and recommendation for laicization of all Roman Catholic priests ordained in the Archdiocese. Upon ordination, each and every priest of defendant Diocese vows obedience to the Bishop of the defendant Diocese and his successors. The Diocese also possesses individual responsibility for the care of each and every parish, and its members.

3.      Defendant Society of Jesus, Oregon Province (also referred to herein as the Oregon Province) is a foreign corporation incorporated in Oregon on February 21, 1918. Its agent for service of process is Brad R. Reynolds, 2222 N.W. Hoyt, Portland, OR 97210. The chief operating officer of defendant Oregon Province is Father John D. Whitney, S.J. He is the person personally responsible for the personnel and operations of Oregon Province, which reaches from Point Barrow, Alaska, to Southern Oregon and from the Puget Sound to the plains of Eastern Montana. Some 320 Jesuit priests work in the province, serving 15,000 students at two universities and four high schools, parishioners, retreatants, and Native American missions, including the Native American Missions located in St. Mary's and Kaltag, Alaska.

4.      Plaintiffs John Doe 1, John Doe 2, John Doe 3, and John Doe 4 are all residents of St. Mary's, Alaska. Plaintiff John Doe 5 was raised in St. Mary's, but has

for each, have been filed with the Court under seal.

FIRST AMENDED COMPLAINT
B2533

2

Exhibit ___1___
Page ___3___ of 37

LAW OFFICES
DLAND, BRENNAN, HEIDEMAN & COOKE
A PROFESSIONAL CORPORATION
1227 WEST NINTH AVENUE, SUITE 300
ANCHORAGE, ALASKA 99501-3218
(907) 276-8526

since moved to another village. Plaintiff John Doe 6 was raised in Kaltag but has since moved to another village. Each plaintiff was born into Catholic family. Plaintiff's John Does 1 through 5 was a member of the Church of the Nativity located in St. Mary's, Alaska. John Doe 6 was a member of the St. Theresa's Catholic Church in Kaltag. Each plaintiff was selected by Father Jules Convert to be, and served as, an altar boy at the church located in the village where he resided. The village churches are activities of the Catholic Church, and were operated, managed, staffed, and controlled by the defendants Diocese of Fairbanks and Oregon Province.

5.      From as early as 1940, through at least 1988, Father Jules Convert, S.J., was assigned by the Diocese of Fairbanks and/or the Oregon Province as resident pastor in several Native Alaskan villages along the Yukon River. He was the pastor at St. Mary's or Kaltag at all times relevant to the events which give rise to the complaint in this case. Father Jules Convert, S.J., is now deceased.

<u>FIRST CLAIM FOR RELIEF</u>

6.      Plaintiff John Doe 1 has lived in Western Alaska his entire life. From his childhood, John Doe 1 and his family were members of the Catholic Church, and they attended services at the Church of the Nativity, also located in St. Mary's, Alaska. He was raised in a devout Roman Catholic family, served as an altar boy, was baptized, confirmed, and regularly celebrated mass and received the sacraments through the Roman Catholic Church. As a result, Plaintiff John Doe 1 developed great admiration, trust, reverence, and respect for, and obedience to, Roman Catholic priests

LAW OFFICES
LAND, BRENNAN, HEIDEMAN & COOKE
A PROFESSIONAL CORPORATION
1227 WEST NINTH AVENUE, SUITE 300
ANCHORAGE, ALASKA 99501-3216
(907) 276-5528

LAW OFFICES
DLAND, BRENNAN, HEIDEMAN & COOKE
A PROFESSIONAL CORPORATION
1227 WEST NINTH AVENUE, SUITE 300
ANCHORAGE, ALASKA 99501-3218
(907) 279-5528

7.    Prior to 1977, John Doe 1 was selected by the local Catholic priest, Father Jules Convert, S.J., to be an altar boy at the Church of the Nativity. At all times material to this complaint, plaintiff John Doe was a parishioner at St. Paul's church, located within defendant Diocese. Through his membership and participation as a parishioner at the Church of the Nativity, Plaintiff John Doe 1 came to know, admire, trust, revere and respect Father Convert, his Roman Catholic priest, counselor, spiritual advisor and religious instructor.

8.    On an unknown date in the winter in late 1976 or early 1977, when he was approximately 13 years of age, JOHN DOE 1 was invited by Father Convert to spend the night with him. He was told by Father Convert that spending the night with a priest was a special event, and that only altar boys were allowed to do so. John Doe 1 considered it to be a huge privilege, and it was something that he greatly anticipated.

9.    Upon his arrival at Father Convert's living quarters, attached to the church, Father Convert told John Doe 1 that he needed to bathe. After he had bathed, and spent some time with Father Convert, he was told that he would have to sleep in his under shorts. John Doe 1 protested that he always slept in all his clothes, but was told by Fr. Convert that he would have to remove his clothing. Father Convert then told John Doe 1 that he should sleep next to him, in the same bed.

10.    Twice that night John Doe 1 awoke to discover his penis being fondled by the priest, and found that Father Jules Convert was masturbating. After the second occasion, John Doe 1 got up, dressed himself, and went home.

11.    As a direct and proximate result of the sexual harassment and felony sexual

Exhibit ___1___
Page __5__ of _37_

abuse of a minor described in the preceding paragraphs, plaintiff JOHN DOE 1 suffered great injury and harm including, but not limited to, severe emotional distress, great mental anguish, spiritual theft, loss of faith in God and the Catholic Church, loss of social interaction with others in the community, fear of priests, loss of access to the Holy Sacraments of the Roman Catholic Church, including but not limited to Holy Communion and Confession, and other economic and non-economic injury all to his damage in an amount in excess of $50,000.00, the exact amount to be proven at trial.

<u>SECOND CLAIM FOR RELIEF</u>

12.    Plaintiff John Doe 2 incorporates by reference the preceding paragraphs of this Complaint and further alleges that he has lived in Western Alaska his entire life. Plaintiff John Doe 2 and his family were members of the Catholic Church, and they attended services at the Church of the Nativity, also located in St. Mary's, Alaska. He was raised in a devout Roman Catholic family, served as an altar boy, was baptized, confirmed, and regularly celebrated mass and received the sacraments through the Roman Catholic Church. As a result, Plaintiff John Doe 2 developed great admiration, trust, reverence, and respect for, and obedience to, Roman Catholic priests.

13.    In 1972 through 1974, when he was 10 through 12 years of age, John Doe 2 was an altar boy at the Church of the Nativity, having been selected for that service by the local Catholic priest, Father Jules Convert, S.J. At all times material to this complaint, plaintiff John Doe was a parishioner at St. Paul's church, located within defendant Diocese. Through his membership and participation as a parishioner at the Church of the Nativity, Plaintiff John Doe 2 came to know, admire, trust, revere and respect Father Convert, his

LAW OFFICES
DLAND, BRENNAN, HEIDEMAN & COOKE
A PROFESSIONAL CORPORATION
1227 WEST NINTH AVENUE, SUITE 300
ANCHORAGE, ALASKA 99501-3218
(907) 276-5528

Roman Catholic priest, counselor, spiritual advisor and religious instructor.

14.    On an unknown date in 1972 and 1974, when he was 10 and 12 years of age, John Doe 2 was invited by Father Convert to spend the night with him. He was told by Father Convert that spending the night with a priest was a special event, and that only altar boys were allowed to do so. John Doe 2 considered it to be a huge privilege, and it was something that he greatly anticipated.

15.    Upon his arrival at Father Convert's living quarters, attached to the church, Father Convert played games and generally paid attention to John Doe 2. After he had spent some time with Father Convert, he was told that he would have to sleep in his under shorts. Father Convert then told John Doe 2 that he should sleep next to him.

16.    That night John Doe 2 awoke to discover his penis being fondled by the priest, and found that Father Jules Convert was masturbating.

17.    As a direct and proximate result of the sexual harassment and felony sexual abuse of a minor described in the preceding paragraphs, plaintiff John Doe 2 suffered great injury and harm including, but not limited to, severe emotional distress, great mental anguish, spiritual theft, loss of faith in God and the Catholic Church, loss of social interaction with others in the community, fear of priests, loss of access to the Holy Sacraments of the Roman Catholic Church, including but not limited to Holy Communion and Confession, and other economic and non-economic injury all to his damage in an amount in excess of $50,000.00, the exact amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

18.    Plaintiff John Doe 3 incorporates by reference the preceding paragraphs of

LAW OFFICES
DLAND, BRENNAN, HEIDEMAN & COOKE
A PROFESSIONAL CORPORATION
1227 WEST NINTH AVENUE, SUITE 300
ANCHORAGE, ALASKA 99501-3218
(907) 279-5528

Exhibit ___1___
Page ___7___ of 37

this Complaint and further alleges that he has lived in Western Alaska his entire life. Plaintiff John Doe 3 and his family were members of the Catholic Church, and they attended services at the Church of the Nativity, also located in St. Mary's, Alaska. He was raised in a devout Roman Catholic family, served as an altar boy, was baptized, confirmed, and regularly celebrated mass and received the sacraments through the Roman Catholic Church. As a result, Plaintiff John Doe 3 developed great admiration, trust, reverence, and respect for, and obedience to, Roman Catholic priests.

19.     During 1973 and 1974, when he was 11 to 13 years of age, John Doe 3 was an altar boy at the Church of the Nativity, having been selected for that service by the local Catholic priest, Father Jules Convert, S.J.

20.     On two separate occasions in 1973 and 1974, when he was 11 and 12 years of age, Father Convert invited John Doe 3 to spend the night with him. He was told by Father Convert that spending the night with a priest was a special event, and that only altar boys were allowed to do so. John Doe 3 considered it to be a huge privilege, and it was something that he greatly anticipated.

21.     On each occasion, upon his arrival at Father Convert's living quarters, attached to the church, Father Convert played games and generally paid attention to John Doe 3. After he had spent some time with Father Convert, he was told that he would have to sleep in his under shorts. Father Convert then told John Doe 3 that he should sleep next to him.

22.     Each night he spent at Father Convert's house, John Doe 3 awoke to discover his penis being fondled by the priest, and found that Father Jules Convert was masturbating.

LAW OFFICES
OLAND, BRENNAN, HEIDEMAN & COOKE
A PROFESSIONAL CORPORATION
1227 WEST NINTH AVENUE, SUITE 300
ANCHORAGE, ALASKA 99501-5218
(907) 279-6528

Exhibit ___1___
Page ___8___ of 31

Each time he moved Father Convert's hand away from his penis. Each time Father Convert pretended to be asleep.

23.     As a direct and proximate result of the sexual harassment and felony sexual abuse of a minor described in the preceding paragraphs, plaintiff John Doe 3 suffered great injury and harm including, but not limited to, severe emotional distress, great mental anguish, spiritual theft, loss of faith in God and the Catholic Church, loss of social interaction with others in the community, fear of priests, loss of access to the Holy Sacraments of the Roman Catholic Church, including but not limited to Holy Communion and Confession, and other economic and non-economic injury all to his damage in an amount in excess of $50,000.00, the exact amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

24.     Plaintiff John Doe 4 incorporates by reference the preceding paragraphs of this Complaint and further alleges that he has lived in Western Alaska his entire life. Plaintiff John Doe 4 and his family were members of the Catholic Church, and they attended services at the Church of the Nativity, also located in St. Mary's, Alaska. He was raised in a devout Roman Catholic family, served as an altar boy, was baptized, confirmed, and regularly celebrated mass and received the sacraments through the Roman Catholic Church. As a result, Plaintiff Jon Doe 4 developed great admiration, trust, reverence, and respect for, and obedience to, Roman Catholic priests.

25.     Between 1972 and 1974, when he was 6 to 8 years of age, John Doe 4 was an altar boy at the Church of the Nativity, having been selected for that service by the local Catholic priest, Father Jules Convert, S.J.

LAW OFFICES
OLAND, BRENNAN, HEIDEMAN & COOKE
A PROFESSIONAL CORPORATION
1227 WEST NINTH AVENUE, SUITE 300
ANCHORAGE, ALASKA 99501-3218
(907) 276-3528

26.    On an unknown date in 1972, 1973, or 1974, when he was 6, 7, or 8 years of age, John Doe 4 was invited by Father Convert to spend the night with him. He was told by Father Convert that spending the night with a priest was a special event, and that only altar boys were allowed to do so. John Doe 4 considered it to be a huge privilege, and it was something that he greatly anticipated.

27.    Upon his arrival at Father Convert's living quarters, attached to the church, Father Convert played games and generally paid attention to John Doe 4. After he had spent some time with Father Convert, he was told that he would have to sleep in his under shorts. Father Convert then told John Doe 4 that he should sleep next to him.

28.    Each night at Father Convert's house, John Doe 4 awoke to discover his penis and genitals being fondled by the priest. John Doe 4 was very frightened by the episode, but Father Convert pretended to be asleep. On one occasion Father Convert insisted that John Doe remove all of his clothing so that he (Father Convert) could bathe John Doe 4. On another occasion, John Doe 4 saw Father Convert get out of bed in the morning with his genitals "hanging out".

29.    As a direct and proximate result of the sexual harassment and felony sexual abuse of a minor described in the preceding paragraphs, plaintiff John Doe 4 suffered great injury and harm including, but not limited to, severe emotional distress, great mental anguish, spiritual theft, loss of faith in God and the Catholic Church, loss of social interaction with others in the community, fear of priests, loss of access to the Holy Sacraments of the Roman Catholic Church, including but not limited to Holy Communion and Confession, and other economic and non-economic injury all to his damage in an

LAW OFFICES
DLAND, BRENNAN, HEIDEMAN & COOKE
A PROFESSIONAL CORPORATION
1227 WEST NINTH AVENUE, SUITE 300
ANCHORAGE, ALASKA 99501-3218
(907) 279-5528

amount in excess of $50,000.00, the exact amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

30.    Plaintiff John Doe 5 incorporates by reference the preceding paragraphs of this Complaint and further alleges that he has lived in Western Alaska his entire life. Plaintiff John Doe 5 and his family were members of the Catholic Church, and they attended services at the Church of the Nativity, also located in St. Mary's, Alaska. He was raised in a devout Roman Catholic family, served as an altar boy, was baptized, confirmed, and regularly celebrated mass and received the sacraments through the Roman Catholic Church. As a result, Plaintiff John Doe 5 developed great admiration, trust, reverence, and respect for, and obedience to, Roman Catholic priests.

31.    Between 1972 and 1977, when he was 8 to 13 years of age, John Doe 5 was an altar boy at the Church of the Nativity, having been selected for that service by the local Catholic priest, Father Jules Convert, S.J.

32.    On approximately 12 occasions, on unknown dates in 1972, 1973, 1974, 1975, 1976, and 1977, when he was 8, 9, 10, 11, 12, or 13 years of age, John Doe 5 was invited by Father Convert to spend the night with him. He was told by Father Convert that spending the night with a priest was a special event, and that only altar boys were allowed to do so. John Doe 5 considered it to be a huge privilege, and it was something that he greatly anticipated.

33.    Upon his arrival at Father Convert's living quarters, attached to the church, Father Convert played games and generally paid attention to John Doe 5. After he had spent some time with Father Convert, he was told that he would have to sleep in his under

LAW OFFICES
OLAND, BRENNAN, HEIDEMAN & COOKE
A PROFESSIONAL CORPORATION
1227 WEST NINTH AVENUE, SUITE 300
ANCHORAGE, ALASKA 99501-3219
(907) 276-5828

Exhibit ____1____
Page ___11___ of _37_

shorts. Father Convert then told John Doe 4 that he should sleep next to him.

34.    Each night at Father Convert's house, John Doe 5 awoke to discover his penis and genitals being fondled by the priest. John Doe 5 was very frightened by these episodes, but Father Convert pretended to be asleep. On several occasions John Doe 5 awoke to find that Father Convert had placed his (John Doe 5's) hand on Father Convert's erect penis.

35.    As a direct and proximate result of the sexual harassment and felony sexual abuse of a minor described in the preceding paragraphs, plaintiff John Doe 5 suffered great injury and harm including, but not limited to, severe emotional distress, great mental anguish, spiritual theft, loss of faith in God and the Catholic Church, loss of social interaction with others in the community, fear of priests, loss of access to the Holy Sacraments of the Roman Catholic Church, including but not limited to Holy Communion and Confession, and other economic and non-economic injury all to his damage in an amount in excess of $50,000.00, the exact amount to be proven at trial.

### SIXTH CLAIM FOR RELIEF

36.    Plaintiff John Doe 6 incorporates by reference the preceding paragraphs of this Complaint and further alleges that he has lived in Western Alaska his entire life. Plaintiff John Doe 6 and his family were members of the Catholic Church, and they attended services at St. Theresa's Catholic Church in Kaltag, Alaska. He was raised in a devout Roman Catholic family, served as an altar boy, was baptized, confirmed, and regularly celebrated mass and received the sacraments through the Roman Catholic Church. As a result, Plaintiff John Doe 6 developed great admiration, trust, reverence, and respect for, and obedience to, Roman Catholic priests.

LAW OFFICES
)LAND, BRENNAN, HEIDEMAN & COOKE
A PROFESSIONAL CORPORATION
1227 WEST NINTH AVENUE, SUITE 300
ANCHORAGE, ALASKA 99501-5218
(907) 279-5528

Exhibit    1
Page    12    of 37

37.    Between 1956 and 1958, when he was 9 to 13 years of age, John Doe 6 was

an altar boy at St. Theresa's Catholic Church in Kaltag, Alaska, having been selected for

that service by the local Catholic priest, Father Jules Convert, S.J.

38.    On approximately 10 occasions, on unknown dates in 1956, 1957, and 1958,

when he was 11, 12, or 13 years of age, John Doe 6 was invited by Father Convert to spend

the night with him. He was told by Father Convert that spending the night with a priest was

a special event, and that only altar boys were allowed to do so. John Doe 6 considered it to

be a huge privilege, and it was something that he greatly anticipated.

39.    Upon his arrival at Father Convert's living quarters, attached to the church,

Father Convert played games and generally paid attention to John Doe 6. After he had

spent some time with Father Convert, he was told that he would have to sleep in his under

shorts. Father Convert then told John Doe 6 that he should sleep next to him.

40.    Each night at Father Convert's house, John Doe 6 awoke to discover his penis

and genitals being fondled and masturbated by the priest. When John Doe 6 awoke, Father

Convert pretended to be asleep.

41.    As a direct and proximate result of the sexual harassment and felony sexual

abuse of a minor described in the preceding paragraphs, plaintiff John Doe 6 suffered great

injury and harm including, but not limited to, severe emotional distress, great mental

anguish, spiritual thieft, loss of faith in God and the Catholic Church, loss of social

interaction with others in the community, fear of priests, loss of access to the Holy

Sacraments of the Roman Catholic Church, including but not limited to Holy Communion

and Confession, and other economic and non-economic injury all to his damage in an

LAW OFFICES
CLAND, BRENNAN, HEIDEMAN & COOKE
A PROFESSIONAL CORPORATION
1227 WEST NINTH AVENUE, SUITE 300
ANCHORAGE, ALASKA 99501-3218
(907) 279-0528

amount in excess of $50,000.00, the exact amount to be proven at trial.

## RESPONDEAT SUPERIOR

42.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint and further allege that at all times described herein Jules Convert, S.J., was acting as an agent, servant and employee of the Diocese Of Fairbanks and the Oregon Province. Therefore, the Diocese Of Fairbanks and the Oregon province are vicariously liable to the plaintiffs for each and every act of Jules Convert alleged herein, and all injuries and damages caused thereby or resulting there from.

## AIDED IN AGENCY

43.    Jules Convert, S.J., was aided in the commission of acts injurious to Plaintiffs by his agency relationship with the Diocese of Fairbanks and the Oregon Province. Accordingly, the Diocese of Fairbanks and the Oregon Province are vicariously liable to the plaintiffs for each and every act of Jules Convert alleged herein, and all injuries and damages caused thereby or resulting there from.

## NEGLIGENT HIRING AND SUPERVISION

44.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint and further allege that as a Diocese of the Catholic Church and a trainer of Jesuit Priests, and by accepting parishioners and holding itself out as a place of safety, guidance, healing, refuge and support, defendant Diocese and Oregon Province agreed to and did undertake to provide for the supervision, care and physical safety of Plaintiffs. Defendants Diocese and Oregon Province, therefore, had a duty to use reasonable care in providing supervision of the minor plaintiffs. Defendant Diocese and Oregon Province

LAW OFFICES
DLAND, BRENNAN, HEIDEMAN & COOKE
A PROFESSIONAL CORPORATION
1227 WEST NINTH AVENUE, SUITE 300
ANCHORAGE, ALASKA 99501-3218
(907) 279-5528

breached this duty of care by exposing the minor plaintiffs to unsupervised contact with Father Convert, wherein he was able to sexually abuse plaintiffs. Plaintiff further allege that at all times described herein defendant Diocese of Fairbanks and the Oregon Province were grossly negligent in their hiring, placement, supervision and management of their agent and employee Jules Convert, S.J. As a direct and proximate result of this negligence the plaintiffs suffered the injuries and damages described in the other paragraphs of this Complaint, and defendants Diocese of Fairbanks and Oregon province are directly liable to the plaintiffs for such injury, damage and loss.

## PUNITIVE DAMAGES

45.    The conduct of the defendant Diocese of Fairbanks, Oregon Province, and Jules Convert, S.J., described in this Complaint, was willful and wanton misconduct, illegal, outrageous and malicious behavior, and conduct which showed a reckless indifference to the interests and well-being of minor children; therefore, plaintiffs should be awarded punitive damages against Defendants Catholic Bishop Of Northern Alaska and Oregon Province, Society of Jesus.

## TOLLING OF THE STATUTE OF LIMITATIONS

46.    Plaintiffs are informed and believe, and on that basis allege, that Jules Convert, unknown to and prior to meeting Plaintiffs, engaged in acts of child sexual molestation at various points of time in his career, including but not limited to the time he worked in France, before being transferred to Alaska. Plaintiffs are further informed and believe, and on that basis allege, that before Jules Convert met Plaintiffs, Jules Convert was known by the Defendants to be a child molester and to have committed various acts of

LAW OFFICES
)LAND, BRENNAN, HEIDEMAN & COOKE
A PROFESSIONAL CORPORATION
1227 WEST NINTH AVENUE, SUITE 300
ANCHORAGE, ALASKA 99501-3218
(907) 279-5528

Exhibit ___7___
Page ___15___ of _37_

molestation and unlawful sex acts against minors.

47.     Plaintiffs are informed and believe, and on that basis allege, that Defendants were apprized, knew and/or were specifically put on notice of Jules Convert's propensities and disposition to engage in unlawful sex acts with minors such that they knew that it was reasonably foreseeable, if not a virtual certainty, that Jules Convert would commit wrongful sexual acts with minors in the future.

48.     Plaintiffs are informed and believe, and on that basis allege, that the Defendants, and each of them, conspired to and did, once having knowledge that Jules Convert was a child molester, knowingly fail to report, hide, and conceal from Parishioners, members of the faithful, law enforcement authorities, and other civil authorities, the true facts and relevant information necessary to bring Jules Convert to justice as well as protect their Parishioners, and their families.

49.     Plaintiffs are informed and believe, and on that basis allege, that the Defendants, and each of them, had an obligation/duty under law to not hide material facts and information about Jules Convert's deviate sexual behavior and propensities. Additionally, Defendants, and each of them, had an affirmative duty to inform, warn, and institute appropriate protective measures to safeguard Parishioners, especially minors, who were reasonably likely to come in contact with Jules Convert. Plaintiffs further alleges that the Defendants, and each of them, willfully refused to notify, give adequate warning and/or to implement appropriate safeguards and thereby created the peril that ultimately damaged Parishioners, and minors, such as Plaintiffs.

50.     As part of Defendants' conspiratorial and fraudulent attempt to hide Jules

LAW OFFICES
DLAND, BRENNAN, HEIDEMAN & COOKE
A PROFESSIONAL CORPORATION
1227 WEST NINTH AVENUE, SUITE 300
ANCHORAGE, ALASKA 99501-3218
(907) 276-5528

Convert's identity and acts from public scrutiny and criminal investigation, Defendants, and each of them, implemented various measures designed to make Jules Convert's conduct harder to detect including, but limited to:

      a.    Moving Jules Convert from Parish to Parish, from Diocese to Diocese, from Country to Country, so as to make detection harder and less likely and/or to communicate the false impression that corrective action had been taken (in circumstances when a complaint of molestation had occurred) when, in fact, it was not;

      b.    Concealing and/or misrepresenting to the community of the faithful, the community of students, the public at large, and law enforcement, the reasons why Jules Convert was removed from one Parish and/or Diocese and placed in another;

      c.    Failing to disclose the abuse, molestation, assault and battery by Jules Convert to members of the community of the faithful, the community of students, the public at large, and law enforcement; and

      d.    Permitting Jules Convert to remain in a position of authority and trust after they knew he was a molester.

    51.    In all, Defendants' conduct created a situation of peril that was not and could not be appreciated and/or understood by Parishioners, like the Plaintiffs. Pursuant to Defendants' conspiratorial and fraudulent conduct, and in keeping with its intent to hide Jules Convert's conduct from the faith community, the public at large and law enforcement, Defendants, and each of them, assigned Jules Convert to Plaintiffs' parish, St. Mary's and Kaltag, Alaska. Plaintiffs, during their minority and during the time it is alleged that they were sexually abused, served as altar boys under Jules Convert.

LAW OFFICES
OLAND, BRENNAN, HEIDEMAN & COOKE
A PROFESSIONAL CORPORATION
1227 WEST NINTH AVENUE, SUITE 300
ANCHORAGE, ALASKA 99501-3216
(907) 279-8528

52.    Plaintiffs are informed and believe, and on that basis allege, that Defendant Defendants, and each of them, were aware of Jules Convert's wrongful conduct at or about the time it was occurring. Plaintiffs allege that during the entire time of their sexual abuse at the hands of Jules Convert, the Defendants, though they had the authority to, negligently and/or willfully refused to and/or did not act effectively to stop the sexual assaults on the Plaintiffs. Plaintiffs further allege that, as such, Defendants, and each of them, willfully and/or negligently allowed the sexual abuse to occur. Said failure to act was in keeping with, and a part of, Defendants' conspiratorial plan and arrangement to avoid detection, avoid public disclosure, avoid scandal, avoid disclosure of the atmosphere of tolerance of child molestation, avoid any appearance of impropriety, and avoid any investigation into said conduct by civil authorities. The primary motive in this scheme was to avoid any disclosure that would affect monetary contributions and to protect other molesters from being disclosed.

## EQUITABLE ESTOPPEL

53.    Father Convert's conduct as described above misrepresented and concealed material facts concerning his relationship with and motives in relating to all plaintiffs. In particular, defendant Father Convert presented himself as a beneficent, caring adult male whose intention was to help and guide plaintiffs, when in fact their relationship was to be one of sexual exploitation. Further, Father Convert acted with the intent that such conduct be acted upon by plaintiffs and without knowledge of the real facts. Plaintiffs relied upon Father Convert's conduct, without knowledge of the real facts, to their detriment. Furthermore, Father Convert's continuing concealment of his sexual

LAW OFFICES
OLAND, BRENNAN, HEIDEMAN & COOKE
A PROFESSIONAL CORPORATION
1227 WEST NINTH AVENUE, SUITE 300
ANCHORAGE, ALASKA 99501-3218
(907) 276-8528

misconduct and defendants Diocese's and Oregon Province's misrepresentations, intentional concealment and/or negligent and/or reckless failure to prevent, disclose or discover Father Convert's acts of sexual misconduct, also prevented plaintiffs from discovering or suing upon the wrongs done to him. Defendants are therefore equitably estopped from asserting the statute of limitations in this action.

54.    The sexual abuse of plaintiffs and the circumstances under which it occurred caused plaintiffs to develop confusion, various coping mechanisms and symptoms of psychological disorders, including great shame, guilt, self-blame, depression, repression and disassociation. As a result, plaintiffs John Doe were unable to perceive or know that the conduct of defendant Father Convert was wrongful or abusive, the existence or nature of their psychological and emotional injuries and their connection to the sexual abuse perpetrated upon them by Father Convert. Only within two years prior to the service of this Complaint have the plaintiffs begun to know or have reasons to know that Father Convert's wrongful or abusive acts caused their injuries. Plaintiffs' actions are therefore timely.

### AD DAMNUM

55.    As a direct result of their sexual abuse and sexual exploitation by Father Convert, plaintiffs have suffered and continue to suffer severe and permanent emotional distress, resulting in physical manifestations, embarrassment, loss of self-esteem, humiliation and psychological injuries, were prevented and will continue to be prevented from performing their normal daily activities and obtaining the full enjoyment of life, and have incurred and will continue to incur expenses for medical and psychological treatment,

LAW OFFICES
CLAND, BRENNAN, HEIDEMAN & COOKE
A PROFESSIONAL CORPORATION
1227 WEST NINTH AVENUE, SUITE 300
ANCHORAGE, ALASKA 99501-3218
(907) 279-3528

therapy and counseling, and on information and belief, has incurred and will continue to incur loss of income and/or loss of earning capacity.

WHEREFORE, plaintiffs pray for judgment against the defendants as follows:

A.    To plaintiff John Doe 1, damages on the First Claim for Relief, and the other claims, which pertain to this plaintiff, in an amount to be proven at trial, but which in any event is greater than $50,000.00 on each claim;

B.    To plaintiff John Doe 2, damages on the Second Claim for Relief, and the other claims, which pertain to this plaintiff, in an amount to be proven at trial, but which in any event is greater than $50,000.00 on each claim;

C.    To plaintiff John Doe 3, damages on the Third Claim for Relief, and the other claims that pertain to this plaintiff, in an amount to be proven at trial, but which in any event is greater than $50,000.00 on each claim;

D.    To plaintiff John Doe 4, damages on the Fourth Claim for Relief, and the other claims that pertain to this plaintiff, in an amount to be proven at trial, but which in any event is greater than $50,000.00 on each claim;

E.    To plaintiff John Doe 5, damages on the Fifth Claim for Relief, and the other claims that pertain to this plaintiff, in an amount to be proven at trial, but which in any event is greater than $50,000.00 on each claim;

F.    To plaintiff John Doe 6, damages on the Sixth Claim for Relief, and the other claims that pertain to this plaintiff, in an amount to be proven at trial, but which in any event is greater than $50,000.00 on each claim;

Exhibit _____1_____
Page __20__ of _37_

LAW OFFICES
DLAND, BRENNAN, HEIDEMAN & COOKE
A PROFESSIONAL CORPORATION
1227 WEST NINTH AVENUE, SUITE 300
ANCHORAGE, ALASKA 99501-5218
(907) 279-8528

G.    Awards of punitive damages to all plaintiffs, and each of them, against the

defendants; Catholic Bishop of Northern Alaska and Oregon Province, Society of Jesus.

H.    Awards of pre-judgment interest, costs and attorney's fees to all plaintiffs; and

I.    For such other and further relief as the court deems just and proper.

Dated at Anchorage, Alaska this _____ 9ʰ _____ day of July 2003.

HEDLAND, BRENNAN, HEIDEMAN & COOKE
Attorneys for Plaintiffs John Does 1–6

By: _____
       Kenneth S. Roosa        ABA No. 8306061

LAW OFFICES
DLAND, BRENNAN, HEIDEMAN & COOKE
A PROFESSIONAL CORPORATION
1227 WEST NINTH AVENUE, SUITE 300
ANCHORAGE, ALASKA 99501-3218
(907) 279-5528

FIRST AMENDED COMPLAINT
B2533

.20

Exhibit ____1____
Page ___21___ of _37_

# Cook Schuhmann & Groseclose, Inc.

## *Attorneys at Law*

Dennis E. "Skip" Cook
Barbara L. Schuhmann
Robert B. Groseclose
Jo A. Kuehle
Zane D. Wilson
Michael C. Kramer
Craig B. Partyka
Peter M. LeBlanc
Doyle L. Wollim
Mila A. Neubert

Telephone 907.452.1855 • Facsimile 907.452.8154 • Toll Free in Alaska 800.550.1855
714 Fourth Avenue, Suite 200 • Fairbanks, Alaska 99701-4470

July 28, 2003

Clerk of Court
P.O. Box 130
Bethel, Alaska 99559

Re:    John Doe 1-6 v. Catholic Bishop of Northern Alaska Et al.
       Our File No.:  303.05

Dear Clerk:

Please find enclosed the appropriate number of copies, and our own file copy, of Entry of Appearance, Demand for Jury Trial, CBNA's Motion to Dismiss, CBNA's Memorandum of Counsel in Support of Motion to Dismiss, Affidavit of Richard D. Case, S.J., Order Dismissing First Amended Complaint, Motion for Stay of Pretrial Processing Pending Ruling on 12(b)(6) Motion to Dismiss (Statute of Limitations) Memorandum of Counsel in Support of Motion for Stay of Pretrial Processing Pending Ruling on 12(b)(6) Motion to Dismiss, and Order Granting Motion for Stay of Pretrial Processing Pending Ruling on 12(b)(6) Motion to Dismiss for filing.

Also enclosed is a self addressed stamped envelope.  Once you have file stamped our file copy, please return it to our office in the envelope provided.  If you have any questions please advise.  Thank you.

Sincerely,

COOK SCHUHMANN & GROSECLOSE, INC.

By _____
    Heather Johnson
    Secretary to Robert B. Groseclose

Enclosures as stated

Cc:    Client

Exhibit _____1_____
Page ___22__ of _37_

# IN THE SUPERIOR COURT OF THE STATE OF ALASKA

## FOURTH JUDICIAL DISTRICT AT BETHEL

JOHN DOE 1, JOHN DOE 2, JOHN DOE 3
JOHN DOE 4, JOHN DOE 5, & JOHN DOE 6,  )

       Plaintiffs,

     vs.

CATHOLIC BISHOP OF NORTHERN
ALASKA, and THE SOCIETY OF JESUS,
OREGON PROVINCE,

       Defendants.

Case No. 4BE-03-177 CI

## ENTRY OF APPEARANCE

Robert B. Groseclose, of the law firm of Cook Schuhmann & Groseclose, Inc.,

714 Fourth Avenue, Suite 200, Fairbanks, Alaska, 99701, enters his appearance herein

as counsel for defendant CATHOLIC BISHOP OF NORTHERN ALASKA ("CBNA") in

the above-entitled matter and requests that copies of all pleadings in this action be

served upon him.

DATED at Fairbanks, Alaska, this _28_ day of July, 2003.

COOK SCHUHMANN & GROSECLOSE, INC.
Attorneys for CBNA

By _____
    Robert B. Groseclose #7605032

CERTIFICATE OF SERVICE
The undersigned hereby certifies that on
_7 / 28 / 03_ , a true and correct copy of
the foregoing was hand-delivered/faxed/mailed
via first class mail fully prepaid to the following
attorney(s) or parties of record:

Kenneth Roth
Hedlon, Brenna Heidema & Cook
1227 West Ninth Avenue Suite 300
Anchorage, AK 99501

By: _____
    COOK SCHUHMANN & GROSECLOSE, INC.

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

Exhibit __1__
Page __23__ of __37__

IN THE SUPERIOR COURT OF THE STATE OF ALASKA

FOURTH JUDICIAL DISTRICT AT BETHEL

JOHN DOE 1, JOHN DOE 2, JOHN DOE 3 )
JOHN DOE 4, JOHN DOE 5, & JOHN DOE 6, )
                                      )
                Plaintiffs,           )
                                      )
        vs.                           )
                                      )
CATHOLIC BISHOP OF NORTHERN           )
ALASKA, and THE SOCIETY OF JESUS,     )
OREGON PROVINCE,                      )
                                      )
                Defendants.           )
_____)

Case No. 4BE-03-177 CI

## DEMAND FOR JURY TRIAL

Defendant CATHOLIC BISHOP OF NORTHERN ALASKA ("CBNA"), by and

through counsel, the law firm of Cook Schuhmann & Groseclose, Inc., requests trial by

jury in the above-entitled matter.

DATED at Fairbanks, Alaska, this _28_ day of July, 2003.

COOK SCHUHMANN & GROSECLOSE, INC.
Attorneys for CBNA

By _____
        Robert B. Groseclose #7605032

CERTIFICATE OF SERVICE
This is to certify that on the _25th_ day
of July, 2003, a copy of the foregoing
document was provided to the following attorneys/parties
of record in the following manner:
___ Mail ___ Hand Delivery ___ Courier ___ Telefax

Kenneth S. Roosa
Hedland, Brennan Heideman & Cooke
1227 West Ninth Avenue Suite 300
Anchorage, AK 99501-3218

_____    _07-28-03_
for Cook Schuhmann & Groseclose, Inc.    Date

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

Exhibit _1_
Page _24_ of _37_

# IN THE SUPERIOR COURT OF THE STATE OF ALASKA

## FOURTH JUDICIAL DISTRICT AT BETHEL

JOHN DOE 1, JOHN DOE 2, JOHN DOE 3,  )
JOHN DOE 4, JOHN DOE 5, and JOHN DOE 6)
                                     )
          Plaintiffs,                  )
                                     )
    vs.                              )
                                     )
CATHOLIC BISHOP OF NORTHERN          )
ALASKA, and THE SOCIETY OF JESUS,    )
OREGON PROVINCE,                     )
                                     )
          Defendants.                  )
_____)

Case No. 4BE-03-177 CI

### CBNA's MOTION TO DISMISS

Pursuant to Alaska Civil Rule 12(b)(6) and AS 09.10.070, defendant Catholic Bishop of Northern Alaska, Inc. ("CBNA"), by and through counsel, moves this court for an order dismissing plaintiffs' First Amended Complaint. Plaintiffs' complaint is barred by the applicable statute of limitations. Alternatively, plaintiffs' complaint is barred by the equitable doctrine of laches.

This motion is supported by the accompanying memorandum of counsel and affidavit of Fr. Richard Case, S.J.

DATED at Fairbanks, Alaska, this _28_ day of July, 2003.

COOK SCHUHMANN & GROSECLOSE, INC.
Attorneys for CBNA

By _____
    Robert B. Groseclose #7605032

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

Exhibit ___1___
Page __25__ of _37_

## CERTIFICATE OF SERVICE

This is to certify that on the ___ day
of July, 2003, a copy of the foregoing
document was provided to the following attorneys/parties
of record in the following manner:

____ Mail  ____ Hand Delivery  ____ Courier  ____ Telefax

Kenneth S. Roosa
Hedland, Brennan Heideman & Cooke
1227 West Ninth Avenue Suite 300
Anchorage, AK 99501-3218

_____    7-29-03
for Cook Schuhmann & Groseclose, Inc.    Date

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

Motion to Dismiss
Does 1-4 vs. Catholic Bishop, et al./2BE-03-177 CI
Page 2

Exhibit ___3___
Page ___26___ of ___37___

IN THE SUPERIOR COURT OF THE STATE OF ALASKA

FOURTH JUDICIAL DISTRICT AT **BETHEL**

JOHN DOE 1, JOHN DOE 2, JOHN DOE 3,   )
JOHN DOE 4, JOHN DOE 5, and JOHN DOE 6)
                                       )
        Plaintiffs,                   )
                                       )
    vs.                              )
                                       )
CATHOLIC BISHOP OF NORTHERN            )
ALASKA, and THE SOCIETY OF JESUS,      )
OREGON PROVINCE,                       )
                                       )
        Defendants.                   )
_____)

Case No. 4BE-03-177 CI

## CBNA's MEMORANDUM OF COUNSEL IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

Alaska Civil Rule 12(b)(6) authorizes the filing of a motion to dismiss, prior to answer, when the complaint fails to state a claim upon which relief can be granted. For the reasons discussed more fully below, the plaintiffs' First Amended Complaint fails to state a claim upon which relief can be granted due to its untimeliness. The complaint is barred by the applicable statute of limitations, AS 09.10.070. The complaint is alternatively barred by the doctrine of laches.

### FACTS

The First Amended Complaint sets out claims on behalf of each of six "John Doe" plaintiffs who commonly claim to have been fondled, or touched, by Father Jules Convert (deceased) over 25 years ago. While there is some variation in the allegations

COOK SCHUHMANN
& CROSECLOSE, INC.
714 FOURTH AVE., SUITE 300
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

Exhibit ___1___
Page ___27__ of __37__

unique to each plaintiff, for purposes of the statute of limitations, AS 09.10.070, those variations are immaterial.[1]

---

[1] The key facts as to each of the six plaintiffs are summarized from their First Amended Complaint as follows:

- John Doe 1 was a Church of the Nativity (St. Mary's, Alaska) alter boy in 1976-1977. While age 13, Doe 1 was invited to spend the night at Father Jules Convert's living quarters, attached to the church. After falling asleep, Doe 1 "awoke to discover his penis being fondled . . . and that Father Convert was masturbating him." This is alleged to have happened a second time during the same night, at which point Doe 1 got up and left. [First Amended Complaint, First Claim for Relief]

- John Doe 2 was a Church of the Nativity alter boy in 1972 through 1974, when he was 10 through 12 years of age. Doe 2 claims he awoke to "discover his penis being fondled by the priest, and found that Father Jules Convert was masturbating." [Id., Second Claim for Relief]

- John Doe 3 was a Church of the Nativity alter boy in 1973 and 1974, while age 11 to 13. Doe 3 reports two separate occasions, on separate sleep-overs, similar to the episodes described by Does 1 and 2. On each occasion, Doe 3 "moved Father Convert's hand away from his penis. Each time Father Convert pretended to be asleep." [Id., Third Claim for Relief]

- John Doe 4 was a Church of the Nativity alter boy between 1972 and 1974, while age 6 to 8. Doe 4 describes a single episode similar to that described by Does 1-3. He claims on another occasion that Father Convert "insisted that [he] remove all of his clothing so that [Father Convert] could bathe [him]. On another occasion [he] say Father Convert get out of bed in the morning with his genitals "hanging out." [Id., Fourth Claim for Relief]

- John Doe 5 was a Church of the Nativity alter boy between 1972 and 1977, while age 11 8 to 13. Doe 5 claims that "[o]n approximately 12 occasions, on unknown dates in 1972, 1973, 1974, 1975, 1976, and 1977, when he was 8, 9, 10, 11, 12, or 13 years of age, [he] . . . awoke to discover his penis and genitals being fondled by the priest. John Doe 5 was very frightened by these episodes, but Father Convert pretended to be asleep. On several occasions John Doe 5 awoke to find that Father Convert had placed his (John Doe 5's) hand on Father Convert's erect penis." [Id., Fifth Claim for Relief]

- John Doe 6 was an alter boy at St. Theresa's Catholic Church in Kaltag, Alaska, between 1956 and 1958, when he was 9 to 13 years of age. Doe 6 claims that "[o]n

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

Memorandum of Counsel In Support of CBNA's Motion to Dismiss
Does 1-4 vs. Catholic Bishop, et al./2BE-03-177 CI
Page 2

Exhibit _____1_____
Page _____28_____ of __37__

It is undisputed that Father Convert was assigned through the Jesuits (Society of Jesus) to work with CBNA in Alaska for many years ending in 1979.[2] It is assumed for purposes of this motion that Father Convert was assigned to St. Mary's and/or Kaltag, Alaska, during the times in question.[3]

The plaintiffs seek damages against the defendants under alternative theories of *respondeat superior*, "aided in agency," and "negligent hiring and supervision."[4] They also allege, "upon belief," that defendants acted fraudulently and with "willful and wanton misconduct" so as to entitle them to punitive damages.[5]

## ARGUMENT

### 1.    The *statute of limitations, AS 09.10.070, bars plaintiffs' actions*.

The described events occurred 25-47 years ago. Father Convert is deceased.[6] He left Alaska more than twenty years ago and is believed to have returned to France, the country of his birth, where he died a number of years ago.[7] The plaintiffs' complaint in this matter was filed 47 years after the first incident for which relief is sought. It was filed after not only Father Convert's death, but also after the deaths of the bishops who

---

approximately 10 occasions, on unknown dates in 1956, 1957, and 1958 . . . [he] awoke to discover his penis and genitals being fondled and masturbated by the priest. When John Doe 6 awoke, Father Convert pretended to be asleep." [Id., Sixth Claim for Relief]

See the Affidavit of Richard Case, S.J., page 5.
The annual catalogs of the Oregon Province of Jesuits note Fr. Convert being assigned to Kaltag, Alaska, from 1957 to 1966, and to St. Mary's, Alaska, from 1971 to 1979. See the Affidavit of Richard Case, S.J., page 5.
First Amended Complaint at 13.
Id. at 14.
See the Affidavit of Richard Case, S.J.
Id.

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

Memorandum of Counsel in Support of CBNA's Motion to Dismiss
Does 1-4 vs. Catholic Bishop, et al./2BE-03-177 CI
Page 3

Exhibit ___1___
Page ___29___ of ___37___

served CBNA during the time of Father Convert's service.[8]  It is filed after the deaths of Father Convert's key contemporaries who would likely be able to address issues raised by the complaint.[9]  It is filed after vital insurance records have been lost and are no longer available following diligent search.[10]

Plaintiffs' claims are barred by Alaska's two year statute of limitations in tort, AS 09.10.070.  By its title and substance, that statute applies to "[a]ctions for torts," and for "personal injury."  AS 09.10.140 tolls the commencement of the Sec. 070 statute of limitations until a minor reaches age 18.   However, even after allowing for tolling of the statute during the plaintiffs' minority, the deadline for filing suit would still have expired more than twenty years ago.

Alaska has a "discovery rule."  This means that the statute of limitations is tolled and begins to run as follows:

> (1)     a cause of action accrues when a person discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action;
>
> (2)     a person reasonably should know of his cause of action when he has sufficient information to prompt an inquiry into the cause of action, if all the essential elements of the cause of action may reasonably be discovered within the statutory period at a point when a reasonable time remains within which to file suit.[11]

---

[8] See Affidavit of Fr. Richard D. Case, S. J., at ¶¶ 4 and 10.
[9] Father Convert's contemporaries included the Jesuit "superiors" serving in Alaska during the 1950's, 1960's, and 1970's.  See Affidavit of Fr. Richard D. Case, S. J., at ¶¶ 4 and 10.
[10] Id. at ¶ 11.
[11] Cameron v. State, 822 P.2d 1362, 1366 (Alaska 1991).  See also Bauman v. Day, 892 P.2d 817, 825 (Alaska 1995), where the Alaska Supreme Court reasoned:
> Where the plaintiff does not actually know of the existence of elements essential to her cause of action . . . the limitations period does not begin to run until "a reasonable person [in like

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

Memorandum of Counsel In Support of CBNA's Motion to Dismiss
Does 1-4 vs. Catholic Bishop, et al./2BE-03-177 CI
Page 4

Exhibit ___1___
Page ___30___ of __37__

With negligence actions, the two-year statute of limitations begins to run on the date a plaintiff has sufficient information such that he ought to begin *inquiry* as to whether the cause of his injury was the neglect or other actionable act or omission of another.[12]   In other words, Does 1-6 did not have to know the full extent of CBNA's role in Father Convert's placement, employment or supervision before the statute of limitations began to run on their claims against CBNA.   The "inquiry date" alone tripped the running of the statute of limitations, not the date when inquiry should have produced knowledge of the elements of the cause of action.[13]

The "inquiry date" for each Doe plaintiff arose on his 18th birthday.   At that time, each had "sufficient information to prompt an inquiry" into his causes of action against CBNA.   He knew on that date of Father Convert's association with the Catholic Church. The plaintiffs describe the events as occurring in an annex to the church itself.   Upon reaching age 18, each plaintiff had sufficient information of the elements of his causes of action.[14]

---

circumstances would have] enough information to alert that person that he or she has a potential cause of action or should begin an inquiry to protect his or her rights.

[12] *Yurioff v. American Honda Motor Co., Inc.*, 803 P.2d 386, 388 (Alaska 1990).
[13] *Sopko v. Dowell Schlumberger, Inc.*, 21 P.3d 1265, 1271 (Alaska 2001); *Waage v. Cutter Biological Div. of Miles Laboratories, Inc.*, 926 P.2d 1145, 1148 (Alaska 1996); *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 292 (Alaska 1988); *Cameron*, 822 P.2d at 1366.
[14] The following cases demonstrate the point:   *D.M.S. v. Barber*, 645 N.W.2d 383, 390 (Minn. 2002)(statute of limitations on claim against foster care placement agency for negligently hiring, retaining and supervising foster parent who sexually abused plaintiff while a minor, began to run on plaintiff's 18th birthday); *Parks v. Kownacki*, 193 Ill.2d 164, 737 N.E.2d 287, 294-95, 249 Ill. Dec. 897 (2000)(affirmed dismissal of parishioner's claim; parishioner, with whom priest had engaged in sexual relationship while parishioner was a minor, was aware of injuries she had sustained and that her

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

Memorandum of Counsel in Support of CBNA's Motion to Dismiss
Does 1-4 vs. Catholic Bishop, et al./2BE-03-177 CI
Page 5

Exhibit _____ 1
Page 31 of 37

It is insufficient to toll the statute because of lack of understanding English or not understanding the legal system (or lack of sophistication).[15] The "standard for determining when the statute of limitations begins to run is an objective one."[16] Hence, whatever explanation Does 1-6 may provide for delaying the bringing of suit, their subjective reasons are not determinative.

Despite AS 09.10.070's 2 year bar controlling this case, it is anticipated that the plaintiffs will argue that AS 09.10.065[17] applies to them. AS 09.10.065, was enacted in

---

injuries were wrongfully caused when she reached the age of majority, and thus statute of limitations on claims against parish and diocese began to run when age of majority was reached); *Roman Catholic Diocese of Covington v. Sector*, 966 S.W.2d 286, 288-89 (Ky.App. 1998)(discovery rule did not apply to extend statute of limitations in action against church by former student of church-operated school who alleged that he was sexually assaulted by school employee seventeen years earlier, and who claimed that the church negligently hired, supervised and retained the employee; the student did not allege memory loss and was aware of injury (sexual abuse) within one year of his reaching the age of majority); *Joseph w. v. Catholic Diocese of Madison*, 569 N.W.2d 795, 937)(Wis.App. 1997)(negligent placement, retention and supervision claim made against Catholic diocese and church arising from sexual abuse of plaintiff by priest while plaintiff was a minor held barred by the statute of limitations; plaintiff was required to bring claims within two years after he reached majority because, as a matter of law, plaintiff discovered or should have discovered the cause of his injury at least by the time of the last assault, which took place before he turned eighteen); *Doe v. Archdiocese of Milwaukee*, 211 Wis.2d 312, 565 N.W.2d 94, 115 (1997)(plaintiffs' negligent employment, training and supervision claims against Archdiocese and church were time-barred; the claims, which were based on sexual molestation by priests when plaintiffs were children, accrued when molestation occurred, and so the statute of limitations began to run on the date each plaintiff attained the age of majority); *in accord Doe v. First United Methodist Church*, 68 Ohio St. 3d 531, 629 N.E.2d 402 (1994); *Snyder v. Boy Scouts of America, Inc.*, 205 Cal.App.3d 1318, 253 Cal.Rptr. 156, 159 (1989).

[15] In *Hernandez-Robaina v. State*, 849 P.2d 783, 785 (Alaska 1993), the plaintiff claimed limited understanding of English and not to understand Alaska's legal system. He claimed that this made him mentally incompetent so as toll the statute under AS 09.10.140(a)(2). The Alaska Supreme Court disagreed, and upheld summary judgment for the defendants.

[16] *Sharrow v. Archer*, 658 P.2d 1331, 1334 n. 6 (Alaska 1983).

[17] Incorporating renumbering changes and the 2001 rewrite, AS 09.10.065 reads:

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

Memorandum of Counsel in Support of CBNA's Motion to Dismiss
Does 1-4 vs. Catholic Bishop, et al./2BE-03-177 CI
Page 6

Exhibit __1__
Page __32__ of __37__

1990, after the plaintiffs' causes of action arose and after the 2 year statute of limitations of AS 09.10.070 had expired.

Section 065 only creates an exception to the general two-year statute of limitations for actions against the criminal perpetrator. The alleged perpetrator of any "felony sexual abuse" or "felony sexual assault" was Father Convert, not his employer or principal. Convert's alleged criminal conduct was in no way authorized or condoned by CBNA. To the extent plaintiffs' claims against CBNA rest on vicarious liability, it is insufficient for them to assert that their causes of action are not subject to the AS 09.10.070 statute of limitations. It is further insufficient for them to found their complaint upon anything other than conduct that amounts to felony sexual abuse or felony sexual assault. Unsubstantiated assertions of "fraud" and "willful and wanton misconduct,"[18] even if proven, do not meet the legal elements of the crimes noted in AS 09.10.065. Even if CBNA is generally vicariously liable in tort for the acts of its agents, CBNA cannot be criminally liable in this instance. No crime was committed by CBNA.

AS 09.55.650 underscores this interpretation. In that regard, AS 09.55.650 reads:

> **§ 09.55.650. Claim based on sexual abuse to a minor under 16 years of age**
>
> (a) A person who, as a minor under 16 years of age, was the victim of sexual abuse may maintain an action for

---

**AS 09.10.065 Commencement of actions for sexual abuse or assault**. Notwithstanding other provisions in this chapter, a person may bring an action at any time for the following acts:

(1) felony sexual abuse of a minor; or

(2) felony sexual assault.

[18] First Amended Complaint at ¶¶ 45 & 51.

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

Memorandum of Counsel in Support of CBNA's Motion to Dismiss
Does 1-4 vs. Catholic Bishop, et al./2BE-03-177 CI
Page 7

Exhibit 1
Page 33 of 37

recovery of damages against the perpetrator of the act or acts of sexual abuse based on the perpetrator's intentional conduct for an injury or condition suffered as a result of the sexual abuse.

(b) If the defendant committed more than one act of sexual abuse on the plaintiff, the plaintiff is not required to prove which specific act caused the injury.

**(c) In this section, "sexual abuse" means an act committed by the defendant against the plaintiff maintaining the cause of action if the defendant's conduct would have violated a provision of AS 11.41.410--11.41.440 or 11.41.450--11.41.458, former AS 11.15.120, 11.15.134, or 11.15.160, or former AS 11.40.110 at the time it was committed.**

(Bold added)

AS 09.55.650 and AS 09.10.065 are to be read together. As noted, AS 09.55.650 authorizes "an action for recovery of damages against the **perpetrator**" of the sexual abuse. It defines "sexual abuse" to mean an act "committed by the defendant . . . **if the defendant's conduct would have violated a provision of AS 11.41.410 - 11.41.440 or 11.41.450 -11.41.458 . . . .**" (bold added). CBNA committed no crime. Any cause of action against it is outside the narrow exception provided by AS 09.10.065 to the general two year statute of limitations contained at AS 09.10.070.

Furthermore, the exception to the 2 year general statute of limitations provided by AS 09.10.065 was enacted well after the plaintiffs' causes of action had already become time-barred under Section 070. Each plaintiff was over 20 years of age by 1990. Their causes of action were time barred prior to the enactment of 065. Amendments to the law cannot be "retrospective unless expressly declared therein."[19]

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

[19] AS 01.10.090.

Memorandum of Counsel in Support of CBNA's Motion to Dismiss
Does 1-4 vs. Catholic Bishop, et al./2BE-03-177 CI
Page 8

Exhibit ____1____
Page __34__ of _37_

Even then, retrospective enactments are subject to constitutional limitation.[20]  Section 065 simply cannot apply to the causes of action in question, which arose 12-34 years before 065 was even enacted.


    2.    *The doctrine of laches bars plaintiffs' actions.*

    Even if by chance plaintiffs' claims are viewed as not being barred by AS 09.10.070, they would still be barred by the equitable defense of laches.  That defense arises where prejudice has resulted from unreasonable delay in bringing suit.[21]  Had suit been timely filed, Father Convert would still be living and would be available to testify to the events alleged by the plaintiffs.  The bishops and "superiors" serving at the time of the alleged occurrences would be available to address allegations of fraudulent or wanton conduct.  Plaintiffs' delay in filing their claims has also disadvantaged CBNA in being able to establish insurance coverage for the times in question.[22]

---

[20] Alaska Constitution Art. I § 15.  The recent United States Supreme Court term produced the Stogner v. California decision, holding unconstitutional a purported new criminal statute of limitations permitting prosecution for sex-related child abuse even though the prior limitations period had expired.  See Stogner v. California, ___ U.S.___ (Find Law.com/us/000/01-1757)(Opinion No. 01-1757 decided June 26, 2003).  While the Stogner case arose in the context of a criminal statute of limitations, its reasoning is persuasive here.  The 2 year statute of limitations in place at the time of the alleged events, and even at the time the plaintiffs reached majority, would have expired many years before the 1990 created exception of AS 09.55.650.

[21] In Bibo v. Jeffrey's,  770 P.2d 290 (Alaska 1989), the Alaska Supreme Court explained that "the defense of laches applies primarily where money or valuable services will be wasted as a result of the unreasonable delay, assuming the suit to be ultimately successful." Id. at 293.  It also noted that "[p]rejudice may also be found where delay results in loss of evidence or other defense disadvantage." Id. at Note 3 citing Whitefield v. Anheuser Busch, Inc., 820 F.2d 243 (8th Cir.1987).

[22] See Affidavit of Richard D. Case, S.J.

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

Memorandum of Counsel in Support of CBNA's Motion to Dismiss
Does 1-4 vs. Catholic Bishop, et al./2BE-03-177 CI
Page 9

Exhibit ___1___
Page __35__ of _37_

CBNA faces real prejudice in the loss of evidence and the ability to address plaintiffs' claims.[23] Father Convert is dead.[24] CBNA's bishops serving during Convert's time in Alaska are dead.[25] Many (if not most) of Convert's Alaska contemporaries are dead.[26] Memories have faded, including those of plaintiffs.[27] Insurance records are missing, and are presumed lost or destroyed at this juncture, which comes 47 years later after the first alleged event.[28] This leaves CBNA severely disadvantaged as to the customary means it would invoke to address timely filed tort claims.

### Conclusion

Statutes of limitations conclusively presume that claims cannot be fairly or justly decided when presented too late. Their equitable cousin, the doctrine of laches, bars claims presented too late when there has been ensuing prejudice which could have been otherwise avoided with timely processing. The application of the AS 09.10.070 statute of limitations and its equitable cousin (laches) could not have a clearer context than the 25 to 47 year old claims presented by plaintiffs' complaint.

For the reasons stated, the court should dismiss plaintiffs' First Amended Complaint as being time-barred.

DATED at Fairbanks, Alaska, this _28_ day of July, 2003.

---

[23] In particular, see Affidavit of Richard D. Case, S.J., at ¶ 11.
[24] Id. at ¶ 9.
[25] Id. at ¶¶ 4 & 10.
[26] Id. at ¶10.
[27] Plaintiffs allegations are general as to ages, occurrences, and dates. See First Amended Complaint at ¶¶ 8, 14, 26 ("[o]n an unknown date in 1972, 1973, 1974, when he was 6, 7, or 8"), 32 , and 38.
[28] See Affidavit of Richard D. Case, S.J. at ¶11.

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

Memorandum of Counsel in Support of CBNA's Motion to Dismiss
Does 1-4 vs. Catholic Bishop, et al./2BE-03-177 CI
Page 10

Exhibit _1_
Page _36_ of _37_

COOK SCHUHMANN & GROSECLOSE, INC.
Attorneys for CBNA

By _____

Robert B. Groseclose #7605032

CERTIFICATE OF SERVICE

This is to certify that on the 29th day
of July, 2003, a copy of the foregoing
document was provided to the following attorneys/parties
of record in the following manner:
__X__ Mail ____ Hand Delivery ___ Courier ____ Telefax

Kenneth S. Roosa
Hedland, Brennan Heideman & Cooke
1227 West Ninth Avenue Suite 300
Anchorage, AK 99501-3218                    7-29-03

for Cook Schuhmann & Groseclose, Inc.   Date

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 455-1855
FACSIMILE
(907) 452-8154

Memorandum of Counsel in Support of CBNA's Motion to Dismiss
Does 1-4 vs. Catholic Bishop, et al./2BE-03-177 CI
Page 11

Exhibit ____1____
Page __37__ of __37__