Gary A. Zipkin, Esq.
Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, AK  99501
Phone:   (907) 793-2200
Fax:     (907) 793-2299
E-mail:  gzipkin@guessrudd.com

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| CONTINENTAL INSURANCE COMPANY,<br><br>  Plaintiff,<br><br>vs.<br><br>CATHOLIC BISHOP OF NORTHERN ALASKA,<br><br>  Defendant. | )<br>)<br>)<br>)<br>)  Case No. 3:06-cv-00019 TMB<br>)<br>)<br>)<br>)<br>) |

**CONTINENTAL INSURANCE COMPANY'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

The Catholic Bishop of Northern Alaska ("CBNA") alleges that Continental Insurance Company ("Continental") issued two general liability policies to CBNA, numbered SMP 2390621 and SMP 2397996 and covering 1973 to 1979 (collectively, the "Alleged Policies").  Neither CBNA nor Continental has been able to locate copies of the Alleged Policies, secondary evidence containing their terms and conditions, or any witness with personal knowledge of the Alleged Policies.

Citing the Alleged Policies, CBNA tendered to Continental and is currently seeking coverage for approximately 63 claims in which plaintiffs allege that they were sexually

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Memorandum in Support of Motion for Summary Judgment
Page 1 of 18

abused by priests or volunteers affiliated with CBNA (the "Underlying Abuse Claims"). While reserving all rights to deny coverage and seek recoupment of defense costs, Continental accepted defense of the Underlying Abuse Claims. Continental then filed this action, seeking a declaration that CBNA could not satisfy its burden of establishing the existence, terms and conditions of coverage, and as a result, Continental is entitled to a declaration of no coverage as a matter of law.

With all discovery now complete, the record is clear and no genuine issues of material fact remain. CBNA has failed, as a matter of law, to produce evidence sufficient to establish the existence, terms and conditions of coverage for the Alleged Policies.

## I.   STATEMENT OF FACTS

On March 18, 2003, CBNA first notified Continental of potential Underlying Abuse Claims. (See Exhibit A.) CBNA is currently seeking coverage for 63 Underlying Abuse Claims that allege abuse during the Alleged Policies' term. While pursuing the instant action, Continental has provided a complete defense to CBNA, subject to reservation of rights. (See Exhibit B.)

### A.   Neither Party Has Located A Copy Of Either Alleged Policy

It is undisputed that both Continental and CBNA have been unable to locate any policy providing general liability coverage to CBNA. (See Exhibit B at CIC 02839 and Exhibit C at p. 2, ¶ 2 of the Affidavit of George W. Bowder ("CBNA no longer has copies of the policies available to it over two decades ago").) CBNA's representations to the Second Judicial District of the Superior Court of the State of Alaska reveal that CBNA destroyed the copies of its

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Memorandum in Support of Motion for Summary Judgment
Page 2 of 18

insurance policies. (See Exhibit C at p. 4 ("CBNA has relied to its detriment upon the absence of certain claims in placing its insurance coverage and in its records retention practices").)

**B.   The Purported Secondary Evidence Does Not Establish The Terms, Conditions And Limits Of Coverage**

With no copy of the Alleged Policies, CBNA will seek to prove the policies through secondary evidence. The secondary evidence developed in discovery, however, fails to establish the existence, terms and conditions of coverage.

1.   Alleged Policy SMP 2390621

A.   *Exhibit D*

In seeking to prove the terms and conditions of Alleged Policy SMP 2390621, CBNA will likely cite Exhibit D. This barely legible document appears to be a telex from Continental's Evelyn Christopher to Continental underwriter Julian Robb, dated November 6, 1973. The document appears to state: "Did you apprv [sic] SMP Catholic Bishop Northern Alaska for LaBow Haynes? They are asking me to issue policy here. They want dates to concur with other SMP for the Anchorage locations so first year to run 10/14/73 to 4/15/74. Please Telex reply as I am to be in their office tomorrow to set up policy."

Neither party located a response to this telex, and no witness testified that he or she had personal knowledge of this document or its contents. By its terms, this document provides no information about a policy that might or might not have been issued. The document contains no information about the nature, terms or conditions of the coverage in question.

B.   *Exhibits E and F*

CBNA may cite correspondence from February and March 1974 between Francis E. Mueller, S.J., the Chancellor of CBNA, and Julian Robb. (See Exhibits E and F.) These

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Memorandum in Support of Motion for Summary Judgment
Page 3 of 18

letters reference Policy SMP 2390621 and include recommendations for storing flammable paint, an issue relevant to property insurance. In his deposition, Julian Robb explained that the letters did not relate to liability coverage. "This recommendation is for property only and there is no indication that there would be liability coverage or that there was liability coverage." (Exhibit G, October 4, 2006 deposition of Julian Robb ("J. Robb dep.") at 102:10-102:13.) While Continental will not contest that these letters establish the existence of Policy SMP 2390621, the letters make no mention of the terms or conditions of coverage. (Id. at 102:2-105:1.)

In his deposition, former insurance agent Kenneth Murray explained that the use of "SMP" plus a policy number does not assist in determining the nature, terms or conditions of coverage. (Exhibit H, December 8, 2006 deposition of Kenneth Murray ("K. Murray dep.") at 38:4-40:15 ("It doesn't tell me what the policy limits are, it doesn't tell me how much property, say, there is in values or anything like that. It doesn't tell me anything about special endorsements, it just tells me that it was an SMP, special multi-peril policy of one sort or another. It doesn't even -- those numbers don't necessarily tell me even what the policy period it encompassed.").) "SMP" stands for "special multi-peril." (Id. at 15:20-16:1.) SMP policies were (and are today) package policies in which the policyholder is able to "pick and choose" from a menu of coverage types. (Id. at 14:3-15:1, 15:20-16:13.) SMP policies were flexible in allowing the addition or deletion of types of coverage. (Id. at 46:22-47:3.) Types of coverage could include insurance for property, liability, inland marine, boiler, and fire. (Exhibit G, J. Robb dep. at 21:11-23, 117:22-118:9.) Liability coverage was just one type of coverage that might be chosen, and not all policies included this coverage. (Exhibit H, K. Murray dep. at 52:25-53:4.) For policies with liability coverage, some insureds elected a policy in which

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Memorandum in Support of Motion for Summary Judgment
Page 4 of 18

defense costs counted against limits, and others elected to have such costs not erode indemnity limits. (Id. at 47:4-48:17.) Without more information, the use of "SMP" in the policy number provides no specific information about the nature of coverage.

### C.    *Exhibit I*

CBNA may also rely on Exhibit I, which appears to be a portion of an Accounts Current form, which was generated by Continental and sent to CBNA's broker, Labow Haynes. (Exhibit G, J. Robb dep. at 110:19-112:2.) This document lists Policy SMP 2390621 next to "CATHOLIC BISHOP OF NO AK" but fails to provide any information regarding the nature, terms or conditions of coverage.

### D.    *Exhibit J*

CBNA might rely on Exhibit J, a document that appears to be entitled "Premium Register" and includes a reference to Policy SMP 2390621 next to an entry for "Catholic Bishop." No witness has personal knowledge of this document or its contents. Julian Robb was not even sure whether this was a Continental document. (Exhibit G, J. Robb dep. at 51:10-23, 54:2-7.) Juanita Brown, a former employee of LaBow Haynes, testified that the document "[looks like] a print out of an accounts payable." (Exhibit K, February 5, 2007 deposition of Juanita Brown ("J. Brown dep.") at 42:24-44:24.)[1] Brown further testified that she did not work with such documents as part of her normal job duties and lacked any personal knowledge of the document's origin or contents. (Id. at 64:24-65:25.)

---

[1] The attorney propounding questions represented to Ms. Brown that Julian Robb, "in his deposition, has talked about this document being an accounting document that he believed Continental had generated to show payments made to LaBow, Haynes." (Exhibit K, J. Brown dep. at 42:24-43:4.) This misrepresents Mr. Robb's testimony. Mr. Robb actually testified with respect to this document that he had "no recollection of [] this form at all." (Exhibit G, J. Robb dep. at 51:17-52:6.)

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Memorandum in Support of Motion for Summary Judgment
Page 5 of 18

By its terms, the document provides no assistance to CBNA. Exhibit J fails to provide any information regarding the nature, terms or conditions of Policy SMP 2390621.

2. Alleged Policy SMP 2397996

Unlike Policy SMP 2390621, CBNA lacks any evidence that Alleged Policy SMP 2397996 was ever issued. In addition, CBNA is unable to prove the Alleged Policy's terms and conditions.

A. *Exhibit L*

In seeking to prove Alleged Policy SMP 2397996, CBNA might cite Exhibit L, which appears to be a phone message from "Jim McKeon" dated February 6, 1975. Unknown handwriting that differs from the remainder of the document states, "SMP 2390621." The main body of the documents states, "Renewal 4-15 Fairsbank [sic] Catholic Bishop of Northern Alaska."

CBNA may assert that Exhibit L establishes that Continental renewed Policy SMP 2390621. CBNA lacks any witness with personal knowledge of this document or its contents, however. More importantly, the document itself provides no basis to infer that a renewal was issued, as opposed to merely being a reason for Mr. McKeown's call. And even if one were to assume that Continental renewed the policy, the document contains no evidence regarding the terms or conditions of coverage.

B. *Exhibit M*

CBNA will likely cite Exhibit M, a February 20, 1975 internal Continental memorandum from Continental's P.P. Krug to Evelyn Christopher. This document is dated two weeks after Exhibit L, which appeared to be a phone message from Jim McKeon. In Exhibit M,

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Memorandum in Support of Motion for Summary Judgment
Page 6 of 18

Mr. Krug recounts a conversation with CBNA's broker, Jim McKeown. Mr. Krug reports that Mr. McKeown described insurance that he "will require" for the Archdiocese of Anchorage, "Juneau," and "Fairbanks." Mr. Krug also reports that Mr. McKeown stated that there "would be some competition this year on the risk." Handwriting at the bottom of the page states, "Paul – the policies will be SMP 2937994; 95 & 96 using a .55 factor. Since our [illegible] credit this year can't be 18% - we are using sched. credit to makeup difference. INA quoted a .57 factor." Handwriting at the top of the memorandum states, "SMP for Archdiocese Catholic Bishops (not Northern Alaska Bishop)."

Exhibit M does not show that Continental actually issued a policy containing general liability coverage to CBNA. Nor does it demonstrate what the terms, conditions, policy period, or limits of the policy would have been. The memorandum and handwritten notes refer to anticipated actions and specifies that Continental will have to compete with other insurers for the account. Indeed, with the handwritten note at the top of the document stating "SMP for Archdiocese Catholic Bishops (<u>not Northern Alaska Bishop</u>)" (emphasis added), any inference that the SMP policy for CBNA was issued would be unreasonable and impermissible.

C.   *Exhibit N*

Finally, CBNA may also try to rely on Exhibit N, an undated document on LaBow Haynes letterhead. The typed portion of the document refers to insurance for "Juneau" and "Anchorage." It makes no mention of CBNA. Unidentified handwriting at the bottom of the document includes the text, "SMP Fairbanks Incl Liability." No witness has personal knowledge regarding this document or its contents, however. Its date, authorship, context, and meaning are all unknown.

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Memorandum in Support of Motion for Summary Judgment
Page 7 of 18

C.  **No Witnesses Provide Evidence Regarding The Existence of Alleged Policy SMP 2397996 or the Terms and Conditions of Either Alleged Policy**

In the absence of the policy or any secondary evidence, CBNA might attempt to prove the policies through testimony of witnesses at trial. The record in discovery, however, establishes that no witness possesses personal knowledge of the existence, terms or conditions of either Alleged Policy.

Julian Robb, the former Continental underwriter, has no recollection of dealing with CBNA. (Exhibit G, J. Robb dep. at 29:9-13; 98:6-13.) Like Mr. Robb, Juanita Brown, the only living former employee of LaBow Haynes who has been identified or located (Exhibit K, J. Brown dep. at 15:22-24), offered no testimony as to the relevant terms or conditions of coverage to CBNA. (See generally Exhibit K, J. Brown dep.) CBNA has located no other witnesses to testify about CBNA's insurance during the relevant time period.

D.  **The Insurance Issued To Other Entities Is Not Probative Of Coverage Allegedly Issued To CBNA**

CBNA might seek to prove coverage by citing policies issued to other entities, such as the Diocese of Juneau or the Archdiocese of Anchorage. CBNA identified no witness with personal knowledge, however, to testify that the Alleged Policies were identical to the Juneau or Anchorage policies.

In fact, the testimony in the record rejects the inference that CBNA's policy terms can be assumed to be identical to a different entity's policy terms. Former underwriter Julian Robb's testimony makes clear that one cannot assume that policies issued to different policyholders would be the same. For example, he testified that underwriters look at the specific exposures of the particular insured in creating a policy and tailor the policy to those particular

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Memorandum in Support of Motion for Summary Judgment
Page 8 of 18

exposures. (Exhibit G, J. Robb dep. at 100:9-17.) He also testified that every religious institution has its own unique risks, so they must be more carefully underwritten. (<u>Id.</u> at 116:11-22 ("Religious institutions have their own problems from the standpoint of various things that they're involved in, <u>every one of them being different</u>. So from that standpoint, they would have been underwritten more carefully than, say, the Joe's Grocery next door.") (emphasis added).) Mr. Robb further testified that one must see the policy to know what coverage it provides and "[t]here is no such thing as a sample or a template-type policy." (<u>Id.</u> at 99:2-14, 100:22-25.) Mr. Robb indicated that without details of the terms, it is impossible to reconstruct the Alleged Policies because each policy is unique; "you don't have any idea what coverages would have been in that policy." (<u>Id.</u> at 66:21-67:7.)

    Even if standard forms were used to create the policies, there were many editions of each type of form, each of which would affect the coverage, and Continental did not have standard limits or policy lengths. (<u>Id.</u> at 70:21-71:9, 99:19-25, 100:18-25.) Accordingly, the policies issued to one insured on sample forms would not necessarily be the same as that issued to another insured.

    No CBNA witness disputed Mr. Robb's testimony. To the contrary, Juanita Brown testified that there was insufficient evidence to determine the key relevant terms of the Alleged Policies:

> Q. And this other policy that we don't know about, do we know whether it had liability coverage or not?
>
> A. No.
>
> …

<u>Continental Insurance Company v. Catholic Bishop of Northern Alaska</u>,
Case No. 3:06-cv-00019 TMB
CNA's Memorandum in Support of Motion for Summary Judgment
Page 9 of 18

> Q. Do we know, if it had liability coverage, what the amount of the liability coverage would be?
>
> A. Know nothing of it.
>
> Q. We know nothing of the provisions of coverage?
>
> A. No.
>
> Q. Okay.
>
> A. Without seeing the policy --
>
> Q. Without seeing the policy what?
>
> A. You can't distinguish. You can't say what's in the policy if you can't see the policy.

(Exhibit K, J. Brown dep. at 64:9-23.) Ms. Brown also testified that there were no standard limits ("[policy limits] would vary"). (Id. at 30:18-21.)

## II.  ARGUMENT

### A.  The Standard On Summary Judgment

Summary judgment must be granted where there is no "genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). While the moving party bears the initial responsibility of informing the district court of the basis for its motion, the party with the burden of proof at trial must "make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Memorandum in Support of Motion for Summary Judgment
Page 10 of 18

Moreover, the facts on which the opposition is based must be admissible. "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002) (internal citations omitted). Indeed, a party opposing summary judgment "must set forth *specific facts* showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added); see Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888 (1990) ("The object of [Fed. R. Civ. P. 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit").

While CBNA, the non-movant, is entitled to having reasonable inferences drawn in its favor, it is not entitled to having all possible inferences drawn in its favor. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 fn. 10 (9th Cir. 2002). Only inferences that are "reasonable" are allowed. Id. Inferences that are based on "mere speculation, conjecture, or fantasy" are not reasonable as a matter of law and cannot be used to defeat summary judgment Id. (internal quotation marks and citations omitted).

### B. CBNA Must Prove The Policy Period, Terms, Conditions And Limits Of The Alleged Policies

In Alaska, the purported insured bears the burden of proving the existence of coverage. MAPCO Alaska Petroleum v. Central Nat'l Ins. Co., 795 F. Supp. 941, 948 (D. Alaska 1991); see also Butler v. Gale, 866 P.2d 837, 845 (Alaska 1994) (party seeking to recover under an instrument must establish the terms of the instrument); 17A COUCH ON INSURANCE (3d ed.) § 254:28 ("[a] party relying on the terms of a missing insurance policy . . . must bear the burden of establishing the existence and terms of the policy"); 17A COUCH ON INSURANCE (3d ed.) § 255:7 ("[t]he burden of proving the existence and terms of the alleged policy fall on the party which asserts them as a basis for some right or recovery"). Other jurisdictions have also

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Memorandum in Support of Motion for Summary Judgment
Page 11 of 18

followed this rule. See, e.g., Dart Industries, Inc. v. Commercial Union Ins. Co., 28 Cal. 4th 1059, 1071 (Cal. 2002) (where a claimant seeks coverage under an alleged policy, "the claimant has the burden of proving (1) the fact that he or she was insured under the lost policy during the period in issue, and (2) the substance of each policy provision essential to the claim for relief, i.e., essential to the particular coverage that the insured claims"); City of Sharonville v. American Employers Ins. Co., 109 Ohio St. 3d 186, 191 (Ohio 2006) (citing 17 COUCH ON INSURANCE (3d ed.), § 254:11) ("an insured seeking benefits must prove the existence of a policy covering the relevant period"); UNR Industries, Inc. v. Continental Ins. Co., 682 F. Supp. 1434, 1447 (N.D. Ill. 1988) (policyholder has burden of proving material terms).

It is not enough to simply prove that a policy existed. The policyholder must also prove the terms and conditions of coverage. See 17A COUCH ON INSURANCE (3d ed.) § 255:7; Dart, 28 Cal. 4th at 1071; UNR Industries, 682 F. Supp. at 1447; Star Steel Supply Co. v. United States Fidelity & Guaranty Co., 465 N.W.2d 17, 19-20 (Mich. Ct. App. 1990) (affirming trial court judgment in favor of insurer where trial judge was convinced that a policy had been issued based on the evidence, but the policyholder failed to sustain its burden with regard to the terms of the policy).

    **C.**    **The Undisputed Facts Establish That CBNA Cannot Prove The Terms, Conditions And Limits Of The Alleged Policies**

        1.    *The documents upon which CBNA will try to rely are inadmissible and therefore cannot be relied upon to defeat summary judgment*

Before CBNA can rely on documents to defeat summary judgment, it must establish their admissibility. To this end, CBNA must be able to authenticate the documents and lay a proper foundation. "The foundation is laid for receiving a document in evidence by the

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Memorandum in Support of Motion for Summary Judgment
Page 12 of 18

testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document and, where appropriate, its delivery." United States v. Dibble, 429 F.2d 598, 602 (9th Cir. 1970). As described in the Statement of Facts, CBNA lacks witnesses with personal knowledge of the documents on which it will rely. Consequently, these documents are inadmissible and cannot be relied upon in opposition to summary judgment.

For example, no witness can authenticate or lay a foundation for Exhibit N. The document is undated, the handwriting is not identified or authenticated, and no witness has any personal knowledge regarding the contents or creation of the document. Similarly, no witness has can lay a foundation for Exhibit J. Julian Robb was not sure whether this document was a Continental document and had no personal knowledge regarding it. (Exhibit G, J. Robb dep. at 51:10-23, 54:2-7.) Juanita Brown testified that she did not have any personal knowledge regarding the document's origins or contents. (Exhibit K, J. Brown dep. at 64:24-65:25.) These examples are illustrative of the numerous evidentiary hurdles CBNA must overcome to establish the documents on which it will rely.

  2. <u>No evidence establishes that Alleged Policy SMP 2397996 was issued</u>

Even if CBNA were able to establish the admissibility of all of the exhibits described in the Statement of Facts, it cannot prevail in this action. The only evidence that refers to SMP 2397996 is the handwriting at the bottom of Exhibit M, a February 20, 1975 internal memorandum from P.P. Krug to Evelyn Christopher.

In the memorandum, Mr. Krug recounts a conversation with CBNA's broker, Jim McKeown. Mr. Krug reports that Mr. McKeown described insurance that he "will require" for the Archdiocese of Anchorage, "Juneau," and "Fairbanks." Mr. Krug also reports that Mr.

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Memorandum in Support of Motion for Summary Judgment
Page 13 of 18

McKeown stated that there "would be some competition this year on the risk." Handwriting at the top of the memorandum states, "SMP for Archdiocese Catholic Bishops (not Northern Alaska Bishop)." All of these elements defeat any assumption or inference that the CBNA policy was actually issued after this document was created. Nothing in this document establishes the existence of Alleged Policy 2397996.

        3.    <u>No admissible evidence establishes the terms and conditions of either Alleged Policy</u>

CBNA is similarly unable to establish the terms and conditions of either Alleged Policy. The only documents that provide guidance regarding the policy terms and conditions are Exhibits E and F, which suggest that Policy SMP 2390621 contained property coverage.

No documents discuss the issuance of liability coverage, the beginning and end dates of the policies, or the policy limits, nor can any CBNA witnesses testify regarding the terms and conditions of coverage. (<u>See</u> Exhibit K, J. Brown dep. at 64:9-23 (does not know whether alleged policy contained liability coverage).) Without documents or a witness with knowledge, CBNA cannot meet its burden to establish the Alleged Policies' terms.

        4.    <u>CBNA cannot rely on the Archdiocese of Anchorage policy or any other "sample" policy to demonstrate the terms, conditions, and limits of the Alleged Policies</u>

CBNA may argue that a policy issued to the Archdiocese of Anchorage is identical to the Alleged Policies. This argument lacks any factual basis, however. No witness testified and no documents reflect that the two entities had identical (or even similar) coverage. Without evidence suggesting the policies were the same, any finding that the CBNA policy had the same terms as the Anchorage policy would be impermissible speculation. <u>See</u>, <u>e.g.</u>, <u>Harrow Products</u>, 64 F.3d at 1021 (refusing to allow a party to "rely on some contemporaneous version

<u>Continental Insurance Company v. Catholic Bishop of Northern Alaska</u>,
Case No. 3:06-cv-00019 TMB
CNA's Memorandum in Support of Motion for Summary Judgment
Page 14 of 18

of the policy that it has secured from other parties, or from [the insurance company], absent some clear link, such as there being only one version of the policy, direct testimony linking the sample policy to the one issued, or solely cosmetic differences between versions.")

Reliance on the Archdiocese of Anchorage policy as evidence of terms, conditions and limits of CBNA's Alleged Policies also ignores the differences between the entities. As former insurance agent Kenneth Murray explained, the risks of policyholders vary "like snowflakes." (Exhibit H, K. Murray dep. at 13:15-14:2.) CBNA has offered no admissible evidence to establish that the more urban Anchorage and the largely rural CBNA were identical "snowflakes."

Indeed, the only evidence in the record on this point suggests that the entities were quite different. George Bowder, CBNA's director of finance since 1978 (Exhibit O, December 12, 2006 deposition of George Bowder at 5:2-18), testified that in the 1970s, the Archdiocese of Anchorage was larger than CBNA. (Id. at 50:23-51:1.) Bowder's description of his search for a sample policy issued by a different insurer is telling. Bowder testified that Catholic Mutual Relief Society (an insurer of CBNA) had sample policies for "big," "medium," and "small" dioceses. (Id. at 50:4-51:1.) While CBNA was a small diocese, the Archdiocese of Anchorage was larger. (Id.) With this testimony, it would be an unreasonable and impermissible inference to conclude that Continental would not have treated the two entities differently.

The testimony of Julian Robb, Kenneth Murphy and Juanita Brown establish that each risk was underwritten individually, preventing any assumptions regarding coverage from other insured or sample policies. Julian Robb testified that an underwriter assesses the risks of the particular insured in creating a policy. (Exhibit G, J. Robb dep. at 100:9-17.) Kenneth

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Memorandum in Support of Motion for Summary Judgment
Page 15 of 18

Murray testified that two SMP policies do not necessarily include the same types of coverage. (Exhibit H, K. Murray dep. at 14:3-15:1, 15:20-16:13.) Even if general liability coverage were included in two policies, the policies could differ on such terms as whether defense costs erode the policy's limits. (Id. at 47:4-48:17.) And the fact that a broker may have sought three policies at the same time does not establish that those policies would have contained the same terms (assuming all the policies were issued). In fact, such a conclusion would be an unreasonable inference from the documents. Without a factual basis for concluding the policies were the same, the terms of the Anchorage policy are not probative of any terms that may have been contained in a CBNA policy.

Similarly, no witnesses and no documents suggest that CBNA's policy could be reconstructed by use of a "sample" policy. The testimony of both Julian Robb and Juanita Brown makes clear that one cannot know a policy's terms without reviewing the actual policy language. (See Exhibit G, J. Robb dep. at 99:2-6 (in order to know what is covered under a policy, you need to see the policy); Exhibit K, J. Brown dep. at 64:9-23 ("[y]ou can't say what's in the policy if you can't see the policy").) There are no standard terms, conditions, policy terms, or limits upon which CBNA can rely. Julian Robb testified that Continental did not maintain sample or template-type policies, and that because each policy is unique, one cannot reconstruct a policy. (Exhibit G, J. Robb dep. at 99:7-14; 66:21-67:7; 70:21-71:9.) He further testified that Continental policies did not have standard limits (Id. at 99:19-25), and that one would need to see a policy to determine its length (Id. at 100:18-25).

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Memorandum in Support of Motion for Summary Judgment
Page 16 of 18

**III.   CONCLUSION**

With all discovery complete, no genuine issues of material fact remain.  CBNA cannot, as a matter of law, meet its burden of proving the existence of SMP 2397996 and the terms and conditions of SMP 2390621 and SMP 2397996.  Accordingly, Continental respectfully requests that the Court grant its motion for summary judgment and declare that Continental does not owe CBNA any coverage for the Underlying Abuse Claims.

DATED at Anchorage, Alaska this 1st day of October 2007.

GUESS & RUDD P.C.
Attorneys for Plaintiff


By:   /s/ Gary A. Zipkin
    Guess & Rudd P.C.
    510 L Street, Suite 700
    Anchorage, Alaska  99501
    Phone: 907-793-2200
    Fax:   907-793-2299
    Email: gzipkin@guessrudd.com
    Alaska Bar No. 7505048


CERTIFICATE OF SERVICE
I hereby certify that on the
1ST day of October, 2007, a copy
of the foregoing document was served
electronically on:

Robert B. Groseclose, Esq.


Guess & Rudd P.C.


By:    S/Gary A. Zipkin
F:\DATA\6024\3\pleading\26memo in support of motion for summary judgment.DOC


Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Memorandum in Support of Motion for Summary Judgment
Page 17 of 18

INDEX OF EXHIBITS

A.  Emails dated March 18-19, 2003 from and to Rev. Richard D. Case and David Allen Bertermann

B.  Letter dated September 17, 2003 from Tracy L. Smith to Robert B. Groseclose

C.  Memorandum of Counsel in Support of Motion to Dismiss in *Jane Doe 2 v. James E. Poole, et al.,* Case No. 2NO-04-83, and supporting exhibits

D.  Telex dated November 6, 1973 from Evelyn Christopher to Julian Robb

E.  Letter dated February 28, 1974 from Rev. Francis E. Mueller to Julian Robb

F.  Letter dated March 11, 1974 from J.A. Robb to Chancery Office, Diocese of Fairbanks

G.  Excerpts from October 4, 2006 deposition of Julian Robb

H.  Excerpts from December 8, 2006 deposition of Kenneth Murray

I.  Portion of document "Continental Insurance Company: as of 03/31/74" – CBNA.INS.369

J.  April 1974 Premium Register – LaBow Haynes of Alaska, Inc. – CBNA.INS.365

K.  Excerpts from February 5, 2007 deposition of Juanita Brown

L.  "Telephone Request" dated 2-6-75

M.  Inter-Office Communication dated February 20, 1975 from P.P. Krug to Evelyn Christopher

N.  Undated unsigned LaBow Haynes of Alaska memorandum

O.  Excerpts from December 12, 2006 deposition of George Bowder