# Exhibit H

Deposition of Kenneth H. Murray
Taken December 8, 2006

Continental Insurance Co. vs. Catholic Bishop of Alaska
Case No. 3:06-cv-19-RRB

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF ALASKA
 3
 4    CONTINENTAL INSURANCE COMPANY,      )
                                          )
 5            Plaintiff,                  )
                                          )
 6        vs.                             )
                                          )
 7    CATHOLIC BISHOP OF NORTHERN         )
      ALASKA,                             )
 8                                        )
              Defendant.                  )
 9    _____)
      Case No. 3:06-cv-19-RRB
10
11
12              DEPOSITION OF KENNETH H. MURRAY
13               Taken Friday, December 8, 2006
14          From the hour of 1:38 p.m. to 2:54 p.m.
15              Pages 1 through 57, inclusive
16                        Volume 1
17              Taken by Counsel for Plaintiff
18                           At
19      Offices of Kenneth A. Murray Insurance, Inc.
                    300 Barnette Street
20                Fairbanks, Alaska 99701
21
22
23
24    Reported by:
      CAROL A. McCUE, RMR
25    Heartland Court Reporters
```

EXHIBIT ___H___
Page __1__ of __25__

Deposition of Kenneth H. Murray
Taken December 8, 2006

Continental Insurance Co. vs. Catholic Bishop of Alaska
Case No. 3:06-cv-19-RRB

Page 2

```
 1            A P P E A R A N C E S
 2    For Plaintiff:
             GARY A. ZIPKIN, ESQ.
 3           GUESS & RUDD
             510 L Street, Suite 700
 4           Anchorage, Alaska 99501
             907-973-2200
 5
      For Defendant:
 6           ROBERT B. GROSECLOSE, ESQ.
             COOK, SCHUHMANN & GROSECLOSE
 7           714 Fourth Avenue, Suite 200
             Fairbanks, Alaska 99701
 8           907-452-1855
 9    Also Present:
             RONNIE ROSENBERG
10
      Witness:
11           KENNETH H. MURRAY
             December 8, 2006
12
      Reported by:
13           CAROL A. McCUE, RMR
             Heartland Court Reporters
14
15
16
17
18
19
20           BE IT KNOWN that the deposition of the
21    above-named witness was taken this date in the
22    foregoing action before Carol A. McCue, Registered
23    Merit Reporter and Notary Public within and for the
24    State of Alaska.
25
```

EXHIBIT ___H___
Page __2__ of __25__

Deposition of Kenneth H. Murray
Taken December 8, 2006

Continental Insurance Co. vs. Catholic Bishop of Alaska
Case No. 3:06-cv-19-RRB

Page 3

```
 1                        I N D E X

 2    WITNESS:  KENNETH H. MURRAY           December 8, 2006

 3    EXAMINATION                                      Page

 4    Direct Examination by Mr. Zipkin...............4

      Cross-Examination by Mr. Groseclose...........35

 5    Redirect Examination by Mr. Zipkin............51

 6

 7

 8

 9

10

11

12

13

14

15

16

17                      E X H I B I T S

18    Exhibit No.                        Page Marked

19    1:       28-page document, Status

               Report prepared by Marsh

20             dated 2/8/06.........................6

21

22

23

24

25
```

EXHIBIT ___H___
Page __3__ of __25__

Heartland Court Reporters
Carol A. McCue, RMR

E-mail: carol.mccue@acsalaska.net

Telephone: 907-452-6727
Fax: 907-488-7701

Deposition of Kenneth H. Murray                                   Continental Insurance Co. vs. Catholic Bishop of Alaska
Taken December 8, 2006                                                                        Case No. 3:06-cv-19-RRB

Page 4

```
 1                    P R O C E E D I N G S
 2              (The following proceedings commenced
 3               at 1:38 p.m., December 8, 2006.)
 4              (Witness sworn.)
 5                    KENNETH H. MURRAY,
 6    being called as a witness, having been first duly sworn
 7    to state the truth, the whole truth, and nothing but
 8    the truth, testified under oath as follows:
 9                    DIRECT EXAMINATION
10    BY MR. ZIPKIN:
11       Q.   Please state your full name for our record.
12       A.   Kenneth H. Murray.
13       Q.   Mr. Murray, my name is Gary Zipkin.
14    I introduced myself to you just before we went on the
15    record.  I represent Continental Insurance Company.
16              And I appreciate -- first of all I want you to
17    know, I appreciate your willingness to be deposed on
18    the eve, I guess, of surgery you have next week, and
19    allowing us to take the deposition here at your office
20    in Fairbanks, so I appreciate those courtesies.
21              In terms of your own personal circumstances,
22    you're going in for knee surgery, arthroscopic?
23       A.   Yeah.
24       Q.   In preparation for this deposition, have you
25    had a chance to look at any particular documents or did
```

EXHIBIT ____H____
Page __4__ of __25__

Deposition of Kenneth H. Murray
Taken December 8, 2006

Continental Insurance Co. vs. Catholic Bishop of Alaska
Case No. 3:06-cv-19-RRB

Page 12

1    would have the opportunity at Ken Murray Insurance

2    Agency to canvas a number of potential insurers for

3    them to see who has the most competitive quote, right?

4        A.    Yes.

5        Q.    And if you were to do something like that,

6    clearly you would be working on the behalf of this

7    would-be policyholder, this prospective policyholder?

8        A.    Yeah.

9        Q.    Okay.  And would you agree, sir, that as a

10   general proposition, that the insurance broker, in such

11   a circumstance, needs to gain a good understanding from

12   the prospective policyholder regarding their business,

13   whatever that business may be, and the particular or

14   unique risks that are associated with that business?

15       A.    Yeah, you would.  And depending on the company

16   that those -- the degree of information you need would

17   be reflected by the market's questionnaire.  Some are

18   more extensive than others.

19       Q.    And do you have like a form, questionnaires

20   from the different insurers?  Do they all have some

21   sort of a questionnaire in addition to an application

22   for insurance?

23       A.    Well, the evolution of it is that now there's

24   what's called ACORD forms, which are standard forms,

25   and then there might be supplemental questionnaires

Heartland Court Reporters
Carol A. McCue, RMR

E-mail: carol.mccue@acsalaska.net

Telephone: 907-452-6727
Fax: 907-488-7701

EXHIBIT    H
Page   5   of   25

Deposition of Kenneth H. Murray
Taken December 8, 2006

Continental Insurance Co. vs. Catholic Bishop of Alaska
Case No. 3:06-cv-19-RRB

Page 13

```
1    that one insurance market or another might add to that
2    for additional information.  But there's the basic
3    generic ACORD forms that you start with.
4         Q.   Do you spell that A-C-C-O-R-D?
5         A.   Right.
6         Q.   And do you know who generates the ACORD forms?
7         A.   The Insurance Association -- I can't think of
8    the name of it right now.
9         Q.   Not ISO?
10        A.   Right.  ISO.
11        Q.   Insurance Services --
12        A.   Office.
13        Q.   Office.
14        A.   Yeah.
15        Q.   And would you agree that even where two
16   prospective insureds, let's say, come to you and they
17   have similar businesses, they may have different risks,
18   unique risks to their -- in terms of liability risks or
19   the need for insurance may dramatically vary between
20   two companies in the same general business?
21        A.   Yeah.  Like snowflakes.
22        Q.   Meaning they are all different and unique?
23        A.   Yeah.  They might -- different individuals
24   have different opinions of what they want in terms of
25   limits, deductibles, et cetera, extensions of coverage,
```

Heartland Court Reporters
Carol A. McCue, RMR

E-mail: carol.mccue@acsalaska.net

Telephone: 907-452-6727
Fax: 907-488-7701

EXHIBIT H
Page 6 of 25

Deposition of Kenneth H. Murray                    Continental Insurance Co. vs. Catholic Bishop of Alaska
Taken December 8, 2006                                        Case No. 3:06-cv-19-RRB

Page 14

1    and companies, by the same token, will have not

2    necessarily identical offerings.

3        Q.    And I apologize if a lot of these questions

4    lack the knowledge or experience that you bring to this

5    area, so with that apology ahead of time.

6              Thinking of the policies that you wrote during

7    the time that you were an agent, or at least you had an

8    agency agreement with Continental, can you think of the

9    types of policies that your firm would have written.

10       A.    At one point they were pretty broad, they were

11   doing homeowners, personal insurance lines were

12   homeowners, dwelling fire policies, auto insurance,

13   they had a life and health division, but we didn't do

14   anything with it.  The commercial side, they ran

15   anywhere from what's called inland marine to commercial

16   package policies to medical malpractice, but they got

17   out of that years ago.

18             They had a pretty good range of various

19   policies they wrote on the commercial side.

20       Q.    And when you make reference to, say, a

21   commercial package policy, is that a reference to the

22   fact that one policy may cover a multitude of potential

23   risks or exposures?

24       A.    Right.  It could have property coverage on it,

25   and general liability, it might have inland marine

Heartland Court Reporters                                                      Telephone:  907-452-6727
Carol A. McCue, RMR              E-mail:  carol.mccue@acsalaska.net                    Fax:  907-488-7701

EXHIBIT ___H___
Page ___1___ of ___25___

Deposition of Kenneth H. Murray
Taken December 8, 2006

Continental Insurance Co. vs. Catholic Bishop of Alaska
Case No. 3:06-cv-19-RRB

Page 15

```
 1   coverages on it.

 2       Q.   Might it also have workers' compensation,

 3   even?

 4       A.   I can't remember anybody ever having work comp

 5   combined under a package policy because those are state

 6   regulations, pretty well defined at work comp.

 7       Q.   And when you refer to inland marine, are you

 8   thinking here of coverage for what's generally

 9   considered business personal property?

10       A.   Well, it's usually -- it could be simply that,

11   but it's generally used where you have stuff like

12   equipment that's mobile that moves from one location to

13   another.  "Mobile" doesn't mean it has wheels, it's

14   just property that could be moved around.  You might

15   have fine arts floaters under there, valuable papers.

16       Q.   Computers?

17       A.   Different things like that.  In this day and

18   age, computers, although there are special forms for

19   that anymore, but it could be under inland marine.

20       Q.   There's been a reference throughout this

21   litigation to policies referred to as SMP types of

22   policies.  Are you familiar with that?

23       A.   Special multi-peril.

24       Q.   And would that be what you're referring to, in

25   part, a package policy?
```

EXHIBIT H
Page 8 of 25

Heartland Court Reporters
Carol A. McCue, RMR                E-mail:  carol.mccue@acsalaska.net

Telephone:  907-452-6727
Fax:  907-488-7701

Deposition of Kenneth H. Murray                    Continental Insurance Co. vs. Catholic Bishop of Alaska
Taken December 8, 2006                                                      Case No. 3:06-cv-19-RRB

Page 16

1       A.    That's one of them.

2       Q.    What would be some others?  If you can --

3       A.    BOP, business owner's policy.

4       Q.    Okay.  Even within, let's say, an SMP policy,

5   is it fair to say that if we had two different SMP

6   policies in front of us that were actually procured and

7   placed, they would not necessarily cover the same

8   things?

9       A.    Right.

10      Q.    The insured, the policyholder has the

11  opportunity to pick and choose within coverages, even

12  within, say, an SMP policy?

13      A.    Yes.

14      Q.    And if we think specifically of Continental,

15  do you recall, first of all, as a preliminary question,

16  that Continental offered and you sold SMP policies at

17  some point?

18      A.    Well, we -- we would have, but it's been so

19  long, I wouldn't be able to pick any -- any client or

20  anything as an example, but I know we would have.

21      Q.    Fair enough.  As you look back on that time

22  period, do you know whether Continental had any rules

23  or restrictions in place that required an SMP policy to

24  be a particular length of time in years?  Might it be a

25  one-year policy or did it have to be a five-year policy

Heartland Court Reporters                                       Telephone:  907-452-6727
Carol A. McCue, RMR              E-mail:  carol.mccue@acsalaska.net        Fax:  907-488-7701

EXHIBIT        H
Page    9   of   25

Deposition of Kenneth H. Murray
Taken December 8, 2006

Continental Insurance Co. vs. Catholic Bishop of Alaska
Case No. 3:06-cv-19-RRB

Page 17

```
 1    or something like that?  If you know.

 2         A.    I think five-year policies, by then, as I

 3    recall, were dinosaurs.  They went out in the '60s.

 4    There used to be a lot of companies did five-year

 5    policies, then they shrunk them to three-year policies,

 6    then they shrunk to one year.  Because essentially,

 7    those policies with the longer terms froze the rates.

 8         Q.    So if you look -- if you think back to the

 9    time when you had an agency agreement with Continental,

10    do you know one way or the other whether, if you were

11    marketing an SMP policy, it had to be a certain number

12    of years according to some Continental rule, or not?

13         A.    Well, it would be hard to pin down when it

14    shrunk, but I can't imagine there being anything longer

15    than three years at that point.  And they could have

16    even shrunk to one year.  Somewhere, many years ago, it

17    shrunk.

18         Q.    Do you know the names of any of Continental's

19    sister or subsidiary insurance companies back at the --

20    in the time frame of, say, 1974 through 1980, let's

21    say?

22         A.    Well, they did have some, like most of these

23    companies.  I don't know.  I'd have to look.  I can't

24    remember now.  I know they would have had a bunch of

25    them.  There's a number of insurance companies to this
```

EXHIBIT   H
Page 10 of 25

Deposition of Kenneth H. Murray
Taken December 8, 2006

Continental Insurance Co. vs. Catholic Bishop of Alaska
Case No. 3:06-cv-19-RRB

Page 37

1  a general liability policy would transcend both?   In

2  other words, an individual could have a general

3  liability policy, a business or institution could have

4  a general liability policy; is that fair?

5      A.    Yeah.   They could.   They might use a different

6  terminology just to -- just so within their own --

7      Q.    How does --

8      A.    -- some of them would have called it a

9  personality liability policy, or they would have their

10 own alphabet to distinguish the two.

11     Q.    Okay.   There's been reference to the special

12 multi-peril, the SMP.   How -- how does that alphabet

13 reference factor into what we've covered?

14     A.    Generally speaking, the SMP policies were ones

15 where you had a schedule of property and also liability

16 on the same policy.   That's not necessary on the

17 comprehensive general liability policy.   It might just

18 be all just general liability with no property coverage

19 on it.

20         The SMP policies are usually, even today,

21 something that is written where the pol -- where the

22 property is in excess of roughly speaking $3 million

23 worth of property.   Then they go from a BOP type,

24 business owner's policy, into the SMP, and they might

25 have quite a lengthy schedule of properties on it.

Heartland Court Reporters
Carol A. McCue, RMR

E-mail:  carol.mccue@acsalaska.net

Telephone:  907-452-6727
Fax:  907-488-7701

EXHIBIT  H
Page  11  of  25

Deposition of Kenneth H. Murray
Taken December 8, 2006

Continental Insurance Co. vs. Catholic Bishop of Alaska
Case No. 3:06-cv-19-RRB

Page 38

1       Q.    And by "property," you're using that term to

2   refer to real estate?

3       A.    Yeah.   Buildings, real estate, real property.

4       Q.    Did the numbers that Continental assigned to

5   policies in the 1970s have any pattern to it, that you

6   can recall?   And by that I mean was there any

7   significance if I was to give you -- and I will, maybe

8   here in a minute, give you a number and -- but as you

9   just sit here generally, do you recall any importance

10  to them?

11      A.    I think they used the designation SMP.   And

12  one they had in personal lines was a PCP, personal

13  comprehensive policy, wherein they offered several

14  coverages under that one policy.   It was a little

15  frustrating because you never got it all resolved.

16      Q.    And would there be numbers, when they number

17  their policies in addition to the alphabet?

18      A.    They would have a -- they would have

19  letters -- letters and numbers.

20      Q.    Okay.   What would the numbers represent, if

21  you remember?

22      A.    Just the identification of -- went along

23  with -- the numbers, I guess you could say, identified

24  a specific policy, and the letters put it into a

25  certain category.

EXHIBIT    H
Page  12  of  25

Deposition of Kenneth H. Murray
Taken December 8, 2006

Continental Insurance Co. vs. Catholic Bishop of Alaska
Case No. 3:06-cv-19-RRB

Page 39

1    Q.    Okay.

2    A.    If you just had the numbers, you wouldn't

3    know, unless it was prefaced with the SMP or the BOP or

4    something.

5    Q.    Okay.  Assume that I walk into your office and

6    I tell you I've lost my policy, or can't locate a

7    policy, whether I ever had it to -- to lose in my own

8    physical possession, as opposed to somebody else's, but

9    I've got a number.  I'm told I have a policy SMP 2,

10   space, 39, space, 06, space, 21.  What would you tell

11   me in terms of identifying what I had?

12   A.    Well, I -- I'd have to look for the name of

13   the -- the insured, but well, from that number, maybe

14   I'm answering your question wrong, from what you have

15   there, if you just are asking what that tells me, it

16   tells me it's a special multi-peril policy.

17       It doesn't tell me what the policy limits are,

18   it doesn't tell me how much property, say, there is in

19   values or anything like that.  It doesn't tell me

20   anything about special endorsements, it just tells me

21   that it was an SMP, special multi-peril policy of one

22   sort or another.  It doesn't even -- those numbers

23   don't necessarily tell me even what the policy period

24   it encompassed.

25   Q.    Okay.  What do the numbers tell you, if

Heartland Court Reporters
Carol A. McCue, RMR                E-mail: carol.mccue@acsalaska.net

Telephone: 907-452-6727
Fax: 907-488-7701

EXHIBIT    H
Page   13   of   25

Case 3:06-cv-00019-TMB    Document 46-9    Filed 10/01/2007    Page 15 of 26
Deposition of Kenneth H. Murray                   Continental Insurance Co. vs. Catholic Bishop of Alaska
Taken December 8, 2006                                              Case No. 3:06-cv-19-RRB

Page 40

1    anything?

2        A.    Just that there's this policy there, and if

3    that's all you had, I wouldn't even know who the named

4    insured was on it.

5        Q.    Well, I'm the named insured.  I'm coming in

6    purporting to be the named insured.

7        A.    As the holder of that policy?

8        Q.    Right.  Or I have other documentation that

9    shows this was a number given to me.

10       A.    So all it tells me is you were the owner of

11   this policy and this is the number of it.  It was a

12   special multi-peril policy with a policy number, which,

13   in theory, would allow me to find it somewhere if I was

14   the agent on it within the parameters of keeping

15   records.

16       Q.    And what would you do as -- then where --

17   where would you search out, as a Continental agent,

18   where would you search out a policy of that kind?

19       A.    If it was our policy, in this instance now, I

20   don't know, unless there's a repository somewhere where

21   the -- where the old policies are kept, but if it --

22   that's all I could do is if the company was in

23   existence, to go to the company and see if they had any

24   records and copies that they could generate of the

25   policy and what forms were on it.

EXHIBIT ___H___
Page __14__ of __25__

Deposition of Kenneth H. Murray
Taken December 8, 2006

Continental Insurance Co. vs. Catholic Bishop of Alaska
Case No. 3:06-cv-19-RRB

Page 41

1        If -- if they -- the company didn't exist

2   anymore, then you would have to track down who,

3   somewhere, might have that information, such as when

4   some companies go into receiverships and that sort of

5   thing.

6        Q.   Okay.  Do you know if there were prototype SMP

7   policies that Continental had, either for your use or

8   just that you're aware of otherwise?

9             MR. ZIPKIN:  Object to form.  I don't know

10  what you mean by "prototype."  You mean specimen?

11            MR. GROSECLOSE:  A specimen.  Thank you.

12            THE WITNESS:  Well, you could -- you could get

13  them.

14  BY MR. GROSECLOSE:

15       Q.   And how would one get one?

16       A.   Well, when -- when a company's in existence,

17  we might ask for one, back then they would send you

18  one, so as I recall, I think all the companies would

19  stamp them "specimen."

20       Q.   Okay.  The Alaska Division of Insurance, do

21  you know what records Continental or any carrier that

22  is operating in the state of Alaska in the '70s would

23  have been submitting to the Division of Insurance?  Is

24  that a process you were exposed to?

25       A.   I'm not -- I'm no expert on their whole

Heartland Court Reporters
Carol A. McCue, RMR                    E-mail: carol.mccue@acsalaska.net

Telephone: 907-452-6727
Fax: 907-488-7701

EXHIBIT    H
Page  15  of  25

Deposition of Kenneth H. Murray
Taken December 8, 2006

Continental Insurance Co. vs. Catholic Bishop of Alaska
Case No. 3:06-cv-19-RRB

Page 45

```
 1              MR. ZIPKIN:  Object to form.
 2              THE WITNESS:  I don't know whether they would
 3     have had a contract of indemnity or pay on behalf.
 4     BY MR. GROSECLOSE:
 5        Q.    Okay.  And so Continental, you don't know
 6     whether they would have done it one way or the other?
 7        A.    Not off the top of my head.
 8        Q.    But they would have done it one of those two
 9     ways?
10        A.    It seems to me like it would be.
11        Q.    Okay.  I mean, do you recall any other way?
12        A.    No.  That's all I can think of we've ever
13     used.  Unless it's a bond or something with a financial
14     guarantee.
15        Q.    What other features do you remember were
16     provided in policies issued, SMP policies, maybe we can
17     start with that, issued by Continental?
18        A.    Wait a minute.  What other -- I got distracted
19     trying to think back on one of your other questions.
20     Say that again.
21        Q.     If -- well, maybe I can just role play here a
22     little bit with you.  I walk into your office, we're in
23     the 1970s, and you tell me, Bob, you're going to sell
24     me an SMP policy because that's what you perceive I
25     need.  I'm ignorant of insurance, I look to you and
```

Heartland Court Reporters
Carol A. McCue, RMR                    E-mail:  carol.mccue@acsalaska.net

Telephone:  907-452-6727
Fax:  907-488-7701

EXHIBIT        H
Page    16   of   25

Deposition of Kenneth H. Murray
Taken December 8, 2006

Continental Insurance Co. vs. Catholic Bishop of Alaska
Case No. 3:06-cv-19-RRB

Page 46

1    say, Mr. Murray, what's that going to cover, you know,

2    what does that mean?  I now have this SMP policy, and I

3    realize now we haven't talked about limits and even

4    when it commences and when it ends, but just it's an

5    SMP policy, what can you explain to me as being

6    embraced by that?

7        A.    Well, after asking what it is you basically

8    have that you wanted to insure, and I would say the

9    brief answer asking somebody is they would say I have

10   some buildings and some -- I want some coverage on my

11   property --

12       Q.    And that's fine, I will role play to that

13   extent.  I'm a --

14       A.    -- general liability, then my next process

15   would be how much property, how many locations --

16       Q.    Okay.

17       A.    -- any idea what liability limits you have,

18   what do you do.  As that unfolds, then I -- I might be

19   thinking different policy forms, and then what's going

20   to fit.  Some might be -- some forms might be

21   eliminated simply by the questions you answer.

22       Q.    Okay.  And see, I'm worried if I get sued, I

23   want protection.  What -- will your policy protect me?

24       A.    And then I -- if there was enough value there

25   and stuff, I could very likely come to the conclusion

Heartland Court Reporters
Carol A. McCue, RMR                E-mail:  carol.mccue@acsalaska.net

Telephone:  907-452-6727
Fax:  907-488-7701



EXHIBIT ____H____
Page ___1___ of ___25___

Deposition of Kenneth H. Murray
Taken December 8, 2006

Continental Insurance Co. vs. Catholic Bishop of Alaska
Case No. 3:06-cv-19-RRB

Page 47

```
 1   that using an SMP because it's fairly flexible in
 2   adding -- adding and taking coverages on and off at
 3   that time and go from there.
 4      Q.   Okay.  And so it will -- it will do what in
 5   terms of if I get sued for a million dollars or 500 --
 6   well, let's not talk numbers because you don't know
 7   what the coverage is.
 8            If -- if I get sued, who is going to defend
 9   me?
10      A.   Probably the -- I would think probably the
11   insurance company was, but all these things that have
12   changed so much, it's -- it's -- I don't know now
13   whether their policy forms would have -- that limit
14   would have included the cost of defense or the cost of
15   defense was in addition to the policy limits.  These
16   things have a way of changing over the years and you
17   just forget when.
18      Q.   Okay.  So as you sit here now, you don't
19   recall, in the '70s, if the Continental SMP policy
20   included defense or excluded defense?
21      A.   Yeah.  Obviously, I wouldn't have given it a
22   thought in years.
23      Q.   Okay.
24      A.   Deal with what you have at the time.  What's
25   available.
```

EXHIBIT H
Page 18 of 25

Deposition of Kenneth H. Murray                Continental Insurance Co. vs. Catholic Bishop of Alaska
Taken December 8, 2006                                                  Case No. 3:06-cv-19-RRB

Page 48

1      Q.   Do you recall, as an agent, what you would

2    have -- what you were recommending in the '70s for

3    people to have in terms of either coverage that

4    included or excluded?

5      A.   Well, preferably that the policy would pay on

6    behalf, and -- and of course, preferably the costs of

7    defense would be outside the limits of the policy.

8      Q.   Okay.  You say "preferably."  Do you have

9    an -- have a sense of instances where you would not

10   have done that?

11     A.   Well, I could imagine that we would have maybe

12   done that where a company might have been a little

13   cheaper, but you know, it still rolls around, do you

14   get what you pay for in many cases.  And that would be

15   one way to make something cheaper, a million dollars is

16   the total you're going to get, and the more defense

17   costs, the less there is to pay any damages.

18     Q.   Okay.  You say if a company is cheaper.  If I

19   then add to that, you're the Continental agent, we're

20   talking about a Continental SMP policy, does that

21   change whether the company is cheaper component?

22     A.   I'm not -- say that again.  I'm kind of --

23     Q.   Well, I'm asking to you assume it's a

24   Continental SMP policy.

25     A.   Uh-hum.

EXHIBIT  H
Page 19 of 25

Heartland Court Reporters                                        Telephone:  907-452-6727
Carol A. McCue, RMR          E-mail:  carol.mccue@acsalaska.net        Fax:  907-488-7701

Deposition of Kenneth H. Murray                Continental Insurance Co. vs. Catholic Bishop of Alaska
Taken December 8, 2006                                              Case No. 3:06-cv-19-RRB

Page 49

```
 1        Q.    Would there have been any instance where that
 2   policy would not have included defense?
 3        A.    I don't know.  I couldn't tell you now.
 4        Q.    Okay.  And maybe to ask it a different way,
 5   would there have been any instance that you can recall
 6   from the '70s where you would not have recommended a
 7   Continental policy that included a defense?
 8        A.    It's just all a vague -- vague memory now.
 9        Q.    Okay.  You mentioned that your records
10   retention practice is seven years, and there was
11   reference, I think, that you would expect other
12   agencies to do what the state required.  Do you know
13   what the requirement is for records retention?
14        A.    Yeah.  Well, I think it's basically --
15        Q.    If there is one.
16        A.    There is specified.  We keep it seven years.
17   And a little bit longer sometimes because we don't
18   generally clean it out every two years.
19        Q.    So you're referring to a requirement --
20        A.    I think there's at least five years, but we
21   tend to keep things seven years.
22        Q.    And you're referring to what requirement?
23   State insurance law or some regulation that applies to
24   insurance companies?
25        A.    Yeah.
```

EXHIBIT ___H___
Page _20_ of _25_

Deposition of Kenneth H. Murray
Taken December 8, 2006

Continental Insurance Co. vs. Catholic Bishop of Alaska
Case No. 3:06-cv-19-RRB

Page 50

1         MR. GROSECLOSE:  Okay.  Well, let me take a

2    minute to review some notes, maybe at a break point,

3    and that may cover my questions.

4         MR. ZIPKIN:  Off record, then, I guess.

5         THE REPORTER:  Off record.

6         (Off record, recess from

7            2:46 p.m. to 2:47 p.m.)

8    BY MR. GROSECLOSE:

9       Q.   To what extent would you keep policies for

10   your customers?  And I guess to ask it in a different

11   way, is that the role that a broker serves for the --

12   his customer?  And I'm referring to the 1970s, so that

13   time warps us.

14      A.   Well, I would just assume that they all kept

15   the dead files.  How long they kept them, I don't know

16   for sure.

17      Q.   And by "dead files," I'm referring to the

18   policies themselves.  So when you place the coverage

19   for the customer, do you then expect, as the broker, to

20   get either the very policy or simply a copy of the

21   policy?

22      A.   Well, back then, I -- all that I recall, all

23   of the policies we got were -- we got the customer's

24   copy, call it the original, and we got our copy, which

25   is -- was often slightly abbreviated and just referring

EXHIBIT ____H____
Page  21  of  25

Deposition of Kenneth H. Murray
Taken December 8, 2006

Continental Insurance Co. vs. Catholic Bishop of Alaska
Case No. 3:06-cv-19-RRB

Page 51

1    to policy form numbers on it, which in the business we

2    called the daily file copy, which was our copy.

3        Q.   Is that also referred to as the dec sheet,

4    declaration sheet or declaration page?

5        A.   Well, the dec sheet is on both the customer's

6    copy and ours.

7        Q.   Okay.  Okay.  And did you say Juanita Brown's

8    name was familiar to you, but you don't know her?

9        A.   It is, but I can't remember, I can't remember

10   why.  But it sure is familiar.

11       Q.   Or Greg Brown or maybe it's Gary Brown, if

12   he's her husband?

13       A.   Greg Brown seems like -- seems like he was an

14   insurance adjuster, but I might be wrong on that.

15       Q.   Okay.

16       A.   But I think it was -- I think they were

17   husband and wife.

18            MR. GROSECLOSE:  Well, thank you.  That's all

19   the questions I have.

20            MR. ZIPKIN:  Mr. Murray, just a couple

21   follow-ups, I think.

22                      REDIRECT EXAMINATION

23   BY MR. ZIPKIN:

24       Q.   I take it you do not have personal knowledge

25   about whether Continental's SMP policies in the 1970s

Heartland Court Reporters
Carol A. McCue, RMR                E-mail:  carol.mccue@acsalaska.net

Telephone:  907-452-6727
Fax:  907-488-7701

EXHIBIT ____H____
Page __22__ of __25__

Deposition of Kenneth H. Murray
Taken December 8, 2006

Continental Insurance Co. vs. Catholic Bishop of Alaska
Case No. 3:06-cv-19-RRB

Page 52

1    strictly followed or adopted ISO forms?

2        A.    I would -- I would assume that they had the

3    basics of it, but -- but I just always assumed that

4    every company has some of their own forms to modify

5    things.

6        Q.    What's a manuscript form?

7        A.    A manuscript form is one usually that is

8    customized for a certain situation, and it -- who

9    writes that form could be anybody from, in this day and

10   age, say, a risk manager hired by the customer, could

11   be their legal department, could be the broker writing

12   it.

13          The broker writes it, and of course, whoever

14   writes a manuscript form would be giving it to an

15   insurance company to see if they would agree to the

16   terms of the manuscript form and come up with a rate, a

17   charge for using that form.

18       Q.    Is it fair to say that a Continental SMP

19   policy issued in the 1970s might have ISO form --

20   forms, might have a manuscript endorsement, might have

21   other forms that were generated by Continental

22   underwriting, might have a combination of those three

23   things?

24       A.    I guess, yeah, I think it could have.

25       Q.    Do you know whether Continental, in the '70s,

Heartland Court Reporters
Carol A. McCue, RMR

E-mail: carol.mccue@acsalaska.net

Telephone: 907-452-6727
Fax: 907-488-7701

EXHIBIT H
Page 23 of 25

Case 3:06-cv-00019-TMB    Document 46-9    Filed 10/01/2007    Page 25 of 26
Deposition of Kenneth H. Murray
Taken December 8, 2006
Continental Insurance Co. vs. Catholic Bishop of Alaska
Case No. 3:06-cv-19-RRB

Page 53

1    issued policies that were strictly property coverages

2    and had no liability coverages?

3        A.    Oh, I'm sure that -- I'm sure we probably did,

4    and I can't imagine why any other agent wouldn't.

5        Q.    Now, there were several questions that I heard

6    posed to you about what the liability coverage of a

7    Continental policy would have provided or not provided.

8    Some of the Continental policies didn't provide

9    liability coverage at all, right, they just covered

10    first party property damage?

11        A.    Right.

12        Q.    And with regard to the Division of Insurance,

13    I think you've said, and it's true, right, that our

14    Division of Insurance does require that policy forms

15    and endorsements from insurers wishing to issue

16    policies here in Alaska be submitted to the Division of

17    Insurance for approval and must be approved before use,

18    if we set aside all of the surplus lines business,

19    right?

20        A.    Yes.  I think if I understood that right, yes.

21        Q.    I mean surplus lines, just so the reader of

22    this may understand, there are insurers that are not

23    admitted in Alaska, haven't sought to be admitted in

24    Alaska, who are, nevertheless, out there who can write

25    policies, and those policies typically do not go

Heartland Court Reporters
Carol A. McCue, RMR
E-mail:  carol.mccue@acsalaska.net
Telephone:  907-452-6727
Fax:  907-488-7701

EXHIBIT    H
Page  24  of  25

Deposition of Kenneth H. Murray
Taken December 8, 2006

Continental Insurance Co. vs. Catholic Bishop of Alaska
Case No. 3:06-cv-19-RRB

Page 54

1   through the Division of Insurance approval process,

2   right?

3       A.   I don't know how far they are reaching into

4   that, but I would -- I would say that they are not

5   necessarily going to be under the Division of

6   Insurance.  But I've never asked if they -- I've never

7   bothered to ask them if they require a look at

8   everything they are using or not.

9       Q.   And do you happen to know whether all ISO

10  forms, just because they come from the ISO, are

11  automatically going to be approved by the Division of

12  Insurance for Alaska?  In other words, might the

13  Division of Insurance of Alaska reject an ISO form

14  because it might be acceptable in other states but not

15  meeting Alaska's unique insurance requirements?

16      A.   I think they have to get them approved, but I

17  never have any idea, we never see anything on those,

18  whether they rejected them, but given the laws vary

19  from state to state, I think it would be necessary that

20  the -- they would have to be filed at Division, and

21  then approved.

22      Q.   I take it that you have no personal knowledge

23  of what Continental forms or endorsements were

24  submitted and approved by the Division and which ones

25  were submitted and rejected by the Division?

Heartland Court Reporters
Carol A. McCue, RMR                    E-mail:  carol.mccue@acsalaska.net

Telephone:  907-452-6727
Fax:  907-488-7701

EXHIBIT ____H____
Page __25__ of __25__