**PACIFIC INSURANCE COMPANY**
SAN FRANCISCO, CALIFORNIA

A STOCK COMPANY    Policy No. S M P

**2 39 79 94**

Policy Issued By

Producer's Name and Address

LaBow, Haynes of Alaska, Inc.
840 K Street
Anchorage, Alaska 99501

54-080-080

Producer's Code

Renewal of:
SMP 8288602

Item
1. Named Insured and P.O. Address (No., Street, Town, County, State & Zip No.)

Corporation of the Catholic
Archbishop of Anchorage, etal
(See endorsement)
P.O. Box 2239
Anchorage, Alaska 99510

**SPECIAL MULTI-PERIL POLICY**
**DECLARATIONS**

2. Policy Period:    4-15-75    4-15-78
Inception (Mo. Day Yr.)    Expiration (Mo. Day Yr.)
Noon Standard Time at location of described property

3. The Named Insured Is: ☐ Individual  ☒ Corporation  ☐ Partnership  ☐ Joint Venture  ☐ Other:

4. Location of Premises (Enter "Same" if same location as above)    Occupancy of Premises
1. Per MLB 22 attached
2.
3.

Institutional – Church Properties

5. Insurance is provided with respect to those premises described above and with respect to those coverages and kinds of property for which a specific limit of liability is shown, subject to all of the terms of this policy including forms and endorsements made a part hereof:

| SECTION I—PROPERTY COVERAGE | | Coinsurance Percentage Applicable | LIMIT OF LIABILITY | | | | |
|---|---|---|---|---|---|---|---|
| | | | Loc. No. BLK | Bldg. No. BLK | Loc. No. | Bldg. No. | Loc. No. Bldg. No. |
| Cov. A—Building(s) | | 90% | $6,472,683. | | $ | | $ |
| Cov. B—Personal Property | | 90% | $Included | | $ | | $ |
| Addl. Cov. (Specify) | | $ | | $ | | $ | |
| Specific Property Form (Camera Schedule) | | $ 7,775. | | | | | |
| Miscellaneous Articles Limited Form | | $76,500. | | | | | |

Loss Deductible Clause No. 1 is 1,000 applicable. Loss Deductible Clause No. 2 is 1,000 applicable.

Addl. Cov. (Specify)    $    $    $

| SECTION II—LIABILITY COVERAGE | LIMIT OF LIABILITY | | | |
|---|---|---|---|---|
| Cov. C—Bodily Injury and Property Damage Liability | $See MLB21 each occurrence | | See MLB21 aggregate | |
| Cov. D—Premises Medical Payments | $ each person | | $ each accident | |
| Addl. Cov. (Specify) Broad Form Contractual; Products; Owners and Contractors Protective; Personal Injury; Comprehensive General Liability; Alaskan Suits | $ | $ | | |

SECTION III— ☐ CRIME COVERAGE
SECTION IV— ☐ BOILER AND MACHINERY COVERAGE  } Limits as stated in the endorsement, made part of this Policy, if indicated by ☒.

6. Forms and Endorsements made part of this Policy at time of issue: (Insert No. and Edition Date)

Per Endorsement Attached

7. Mortgagee: (Name and Address)

Per Endorsement Attached

8. The Total Provisional Premium is $ 91,965. and is payable $ 30,655. at inception, and $ 30,655. on each anniversary.

Countersignature Date

May 2, 1975 sal

Agency at Anchorage, Alaska

Agent

In Consideration of the Provisions and Stipulations Herein or Added Hereto and of the Premium Above Specified (or specified in endorsement attached hereto), this Company, for the term of these years from Inception date shown above (At Noon Standard Time) to expiration date shown above (At Noon Standard Time) at location of property insured, to an amount not exceeding the limit of liability specified, does insure the Insured named in the Declarations above and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all DIRECT LOSS BY FIRE, LIGHTNING AND OTHER PERILS INSURED AGAINST IN THIS POLICY IN-CLUDING REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described herein while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Assignment of this policy shall not be valid except with the written consent of this Company.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

MPD 130G Rev. 1973

Exhibit E (100 pages) to CBNA's Memo re S.J.
Page 1 of 100

NAMED INSURED ENDORSEMENT


1)  Corporation of the Catholic Archbishop of
    Anchorage

2)  Catholic Archdiocese of Anchorage

3)  Alaska Catholic Conference, Inc.

4)  Catholic Charities

Exhibit ___E___
Page __2__ of _100_

FORMS AND ENDORSEMENTS MADE PART OF THIS POLICY AT TIME OF ISSUE

SECTION I

| | |
|---|---|
| MLB 104 | (2-71) |
| MLB 121 | (3-71) |
| MLB 184 | (10-66) |
| MLB 185 | (10-66) |
| MLB 22 | (10-66) |
| 438 BFU | (5-42) |
| M52 | (Rev. 1-72) |
| S.F. 99 | (10-68) |

Deductible Endorsement
Amendatory Endorsement
Scheduled Property Floater Supplement IM 2366
Miscellaneous Articles Limited Form
Named Insured Endorsement
Specific Property Schedule
Schedule of Mortgagees

SECTION II

| | |
|---|---|
| MLB 200 | (1-73) |
| MLB 202 | (1-73) |
| MLB 248 | (1-73) |
| MLB 220 | (1-73) |
| MLB 21 | (1-73) |
| MLB 16 | (11-69) |
| MLB 237 | (10-66) |
| G 610 | (7-66) |
| L 9231a | (4-71) |
| GU 8882 | (11-69) |

Named Insured Endorsement

Exhibit _E_
Page _3_ of _100_    _3_

SECTION I

Exhibit _E_
Page _4_ of _100_ 4

COINSURANCE CONTRACT

**CFC**

.IP INSTITUTIONAL PROPERTY . RM
SECTION I — PROPERTY COVERAGE

Form MLB-104
(Ed. 5-69)

## I. PROPERTY COVERED

**COVERAGE A — BUILDING(S):** When the insurance under this policy covers buildings, such insurance shall also cover all additions and extensions attached thereto; all fixtures, machinery and equipment constituting a permanent part of and pertaining to the service of the building; materials and supplies intended for use in construction, alteration or repair of the buildings; yard fixtures; personal property of the insured as landlord used for the maintenance or service of the described buildings, and including fire extinguishing apparatus, floor coverings, refrigerating, ventilating, cooking, dishwashing and laundering equipment, shades and outdoor furniture (but not including other personal property in apartments or rooms furnished by the insured as landlord); all while at the described locations.

**COVERAGE B — PERSONAL PROPERTY:** When the insurance under this policy covers personal property, such insurance shall cover only business personal property of the insured usual to the occupancy of the insured, including bullion, manuscripts, furniture, fixtures, equipment and supplies, not otherwise covered under this policy, and shall cover similar property held by the insured and belonging in whole or in part to others for not exceeding the amount for which the insured is liable; all while in or on the described buildings, or in the open (including within vehicles) on the described premises or within 100 feet thereof.

This coverage shall also include Tenant's Improvements and Betterments, meaning the insured's use interest in fixtures, alterations, installations or additions comprising a part of the buildings occupied but not owned by the insured and made or acquired at the expense of the insured exclusive of rent paid by the insured, but which are not legally subject to removal by the insured.

**DEBRIS REMOVAL — COVERAGE A — BUILDING(S) OR COVERAGE B — PERSONAL PROPERTY:** This policy covers expense incurred in the removal of debris of the property covered hereunder which may be occasioned by loss by a peril insured against. The total amount recoverable under this policy shall not exceed the limit of liability stipulated for each item. Cost of removal of debris shall not be considered in the determination of actual cash value when applying the Coinsurance Clause.

## II. PROPERTY NOT COVERED

In addition to the kinds of property which are otherwise excluded or limited under this policy, the following are also excluded from coverage under this form:

A. Animals and pets; aircraft; watercraft, including motors, equipment and accessories (except rowboats and canoes, while out of water and on the described premises); and automobiles, trailers, semi-trailers or any self-propelled vehicles or machines, except motorized equipment not licensed for use on public thoroughfares and operated principally on the premises of the insured.

This exclusion does not apply when the following types of property are held for sale or sold but not delivered and are specifically covered by endorsement:
1. Animals and pets.
2. Motorcycles and motor-scooters.
3. Trailers designed for use with private passenger vehicles for general utility purposes or carrying boats.
4. Watercraft while not afloat.

B. Outdoor swimming pools; fences; piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls not constituting a part of building; walks, roadways and other paved surfaces; unless such items are specifically covered by endorsement.

C. The cost of excavations, grading or filling; foundations of buildings, machinery, boilers or engines which foundations are below the undersurface of the lowest basement floor, or where there is no basement, below the surface of the ground; pilings, piers, pipes, flues and drains which are underground; pilings which are below the low water mark.

D. Outdoor signs, whether or not attached to a building, unless specifically covered by endorsement.

E. Household and personal effects contained in living quarters occupied by the insured, any officer, director, stockholder or partner of the insured or relatives of any of the foregoing, except as provided in the Extensions of Coverage or unless specifically covered by endorsement.

F. Growing crops and lawns.

G. Property of tenants or guests, except as provided in the Extensions of Coverage.

H. Trees, shrubs and plants, except when held for sale or sold but not delivered, or to the extent provided in the Extensions of Coverage.

I. Property which is more specifically covered in whole or in part under this or any other contract of insurance.

## III. PERILS INSURED AGAINST

This policy insures under Section I against all direct loss to the property covered under this form caused by the following perils, except as otherwise specifically provided:

A. Fire.

B. Lightning.

C. Windstorm and Hail:
1. The Company shall not be liable as respects this peril for loss caused directly or indirectly by frost or cold weather or ice (other than hail), snow or sleet, whether driven by wind or not.
2. The Company shall not be liable as respects these perils for loss to the interior of the buildings or the property covered therein caused
   a. by rain, snow, sand or dust, whether driven by wind or not, unless the buildings covered or containing the property covered shall first sustain an actual damage to roof or walls by the direct action of wind or hail and then shall be liable for loss to the interior of the buildings or the property covered therein as may be caused by rain, snow, sand or dust entering the buildings through openings in the roof or walls by direct action of wind or hail; or
   b. by water from sprinkler equipment or other piping, unless such equipment or piping be damaged as a direct result of wind or hail.

3. Unless specifically covered by endorsement, the Company shall not be liable as respects these perils for damage to
   a. grain, hay, straw or other crops outside of buildings.
   b. windmills, windpumps or their towers:
   c. crop silos or their contents;
   d. metal smokestacks or, when outside of buildings, cloth awnings;
   e. outdoor radio or television antennas including their lead-in wiring, masts or towers;
   f. trees, shrubs and plants.

D. Explosion: Loss by explosion shall include direct loss resulting from the explosion of accumulated gases or unconsumed fuel within the firebox (or combustion chamber) of any fired vessel or within the flues or passages which conduct the gases of combustion therefrom. The Company shall not be liable for loss by explosion of steam boilers, steam pipes, steam turbines or steam engines, if owned by, leased by or operated under the control of the insured. The following are not explosions within the intent or meaning of these provisions:
1. Shock waves caused by aircraft, generally known as "sonic boom".
2. Electric arcing.

Form MLB-104 (Ed. 5-69)

Page 1 of 4

Exhibit ___E___    5

Page ___5___ of ___100___

3. Rupture or bursting of rotating or moving parts of machinery caused by centrifugal force or mechanical breakdown.
4. Water hammer.
5. Rupture or bursting of water pipes.
6. Rupture or bursting due to expansion or swelling of the contents of any building or structure, caused by or resulting from water.
7. Rupture, bursting or operation of pressure relief devices.

E. Sudden and Accidental Damage from Smoke, other than smoke from agricultural smudging or industrial operations.

F. Vehicles or Aircraft: Loss by aircraft or by vehicles shall mean only direct loss resulting from actual physical contact of an aircraft or a vehicle with the property covered hereunder or with the buildings containing the property covered hereunder, except that loss by aircraft includes direct loss by objects falling therefrom.

The Company shall not be liable as respects this peril for loss
1. by any vehicle owned or operated by the insured or by any occupant of the described premises; or
2. to any aircraft or vehicle, including contents thereof, other than stocks of aircraft or vehicles in process of manufacture or for sale.

G. Riot, Riot Attending a Strike and Civil Commotion: Loss by riot, riot attending a strike or civil commotion shall include direct loss by acts of striking employees of the owner or occupants of the described buildings while occupied by said striking employees and shall also include under this peril direct loss from pillage and looting occurring during and at the immediate place of a riot, riot attending a strike or civil commotion.

The Company shall not be liable as respects this peril for loss resulting from damage to or destruction of the described property owing to change in temperature or humidity or interruption of operations, whether or not such loss is covered by this policy as to other perils.

## IV. EXTENSIONS OF COVERAGE

The total amount recoverable under the Extensions of Coverage in this form and Extensions of Coverage in any other form made a part of this policy are not cumulative and shall not exceed the largest amount recoverable under any single form made a part of this policy.

When there is Contributing Insurance, the Company shall not be liable for more than its pro rata share of the limits set forth in the following Extensions of Coverage.

A. This policy is extended to provide additional amounts of insurance as follows:

1. Newly Acquired Property: The insured may apply up to 15%, but not exceeding $100,000, of the sum of the limits of liability specified for Coverage A—Building(s) and Coverage B—Personal Property to cover direct loss in any one occurrence by a peril insured against to the following described property:
   a. If Coverage A—Building(s) is provided under this form:
      (1) New additions, new buildings and new structures when constructed within the territorial limits of this policy during the policy period. This coverage shall cease 180 days from the date construction begins or on the date the values of new construction are reported to the Company, or on the expiration date of the policy, whichever occurs first.
      (2) Buildings acquired by the insured at any location, elsewhere than at the described premises, within the territorial limits of this policy and used by him for similar occupancies. This coverage shall cease 180 days from the date of such acquisition or on the date values of the buildings are reported to the Company, or on the expiration date of the policy, whichever occurs first.
   b. If Coverage B — Personal Property is provided under this form: such property acquired by the insured at any location, elsewhere than at the described premises, within the territorial limits of this policy. This coverage is limited to a period of 180 days from the date of such acquisition or on the date values at such locations are reported to the Company, or on the expiration date of the policy, whichever occurs first.
   Additional premium shall be due and payable for values so reported from the date construction begins or the property is acquired.

2. Off-Premises: The insured may apply up to 2%, but not exceeding $5,000, of the sum of the limits of liability specified for Coverage A — Building(s) and Coverage B — Personal Property at a described location to cover direct loss in any one occurrence by a peril insured against to such property (other than merchandise or stock) while removed from such location for purposes of cleaning, repairing, reconstruction or restoration. This Extension of Coverage shall not apply to property in transit, nor to property on any premises owned, leased, operated or controlled by the insured.

3. Personal Effects: The insured may apply up to 1%, but not exceeding $5,000, of the sum of the limits of liability specified for Coverage A — Building(s) and Coverage B — Personal Property to cover direct loss in any one occurrence by a peril insured against under this term with respect to Coverage B — Personal Property to personal effects while located on the described premises, belonging to the insured, officers, partners or employees thereof, and limited to $500 on personal effects owned by any one individual. This Extension of Coverage does not apply if the loss is covered by any other insurance, whether collectible or not, or which would have been covered by such other insurance in the absence of this policy. At the option of the Company, loss under this Extension of Coverage may be adjusted with and payable to the insured.

4. Valuable Papers and Records: The insured may apply up to 1%, but not exceeding $5,000, of the sum of the limits of liability specified for Coverage A — Building(s) and Coverage B — Personal Property to cover direct loss in any one occurrence by a peril insured against under this form to valuable papers and records consisting of books of account, manuscripts, abstracts, drawings, card index systems, film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing, and other records, all the property of the insured at described locations. This Extension of Coverage covers only the cost of research and other expense necessarily incurred by the insured to reproduce, replace or restore such valuable papers and records. The total amount payable in any one occurrence under this Extension of Coverage shall not exceed the limit specified above, regardless of the number of described locations.

B. The liability of the Company for loss in any one occurrence, including loss under the following Extensions of Coverage, shall not exceed the limit of liability specified for the coverages being extended:

1. Trees, Shrubs and Plants: The insured may apply up to $1,000 of the sum of the limits of liability specified for Coverage A — Building(s) and Coverage B — Personal Property to cover trees, shrubs and plants at the described location against direct loss in any one occurrence by the perils of fire, lightning, explosion, riot, civil commotion or aircraft, but only to the extent such perils are insured against herein. The Company shall not be liable for more than $250 on any one tree, shrub or plant, including expense incurred for removing debris thereof.

2. Extra Expense: The insured may apply up to $1,000 of the sum of the limits of liability specified for Coverage A — Building(s) and Coverage B — Personal Property to cover the necessary extra expense incurred

Exhibit _E_

Page _6_ of _100_　6

by the insured in order to continue as nearly as practicable the normal operations of the insured's business immediately following damage by a peril insured against to the buildings or personal property situated at the described locations.

"Extra expense" means the excess of the total cost incurred during the period of restoration chargeable to the operation of the insured's business over and above the total cost that would normally have been incurred to conduct the business during the same period had no loss occurred. Any salvage value of property obtained for temporary use during the period of restoration, which remains after the resumption of normal operations, shall be taken into consideration in the adjustment of any loss hereunder.

"Period of restoration" means that period of time, commencing with the date of damage and not limited by the date of expiration of this policy, as would be required with the exercise of due diligence and dispatch to repair, rebuild or replace such part of said buildings or personal property as have been damaged. The Company shall not be liable under this Extension of Coverage for:
1. loss of income.
2. the cost of repairing or replacing any of the described property, or the cost of research or other expense necessary to replace or restore books of account, manuscripts, abstracts, drawings, card index systems, film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing, and other

records that have been damaged by a peril insured against, except cost in excess of the normal cost of such repair, replacement or restoration necessarily incurred for the purpose of reducing the total amount of extra expense. In no event shall such excess cost exceed the amount by which the total extra expense otherwise payable under this Extension of Coverage is reduced.
3. any other consequential or remote loss.

3. Replacement Cost Coverage: In the event of loss to a building structure covered under this policy, when the full cost of repair or replacement is less than $1,000, this policy is extended to cover the full cost of repair or replacement (without deduction for depreciation). Coverage shall be applicable only to a building structure covered hereunder, but excluding carpeting, cloth awnings, air conditioners, domestic appliances and outdoor equipment, all whether permanently attached to the building structure or not. The Company shall not be liable under this Extension of Coverage:
a. unless and until the damaged property is actually repaired or replaced on the same premises with due diligence and dispatch, and, in no event, unless repair or replacement is completed within a reasonable time after such loss.
b. unless the whole amount of insurance applicable to the building structure for which claim is made is equal to or in excess of the amount produced by multiplying the co-insurance percentage applicable (specified in this policy) by the actual cash value of such property at the time of the loss.

## V. EXCLUSIONS

This policy does not insure under this form against:

A. Loss occasioned directly or indirectly by:
1. enforcement of any local or state ordinance or law regulating the construction, repair or demolition of buildings or structures unless such liability is otherwise specifically assumed by endorsement;
2. electrical currents artificially generated unless loss by fire or explosion as insured against hereunder ensues, and then the Company shall be liable for only such ensuing loss.

B. Loss caused by or resulting from power, heating or cooling failure, unless such failure results from physical damage to power, heating or cooling equipment situated on premises where the property covered is located, caused by a peril insured against. The Company shall not be liable for any loss specifically excluded under the riot provisions of this form.

C. Loss caused by, resulting from, contributed to or aggravated by any of the following:
1. earth movement, including but not limited to earthquake, landslide, mudflow, earth sinking, earth rising or shifting;
2. flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not;
3. water which backs up through sewers or drains;
4. water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors, or through doors, windows or any other openings in such sidewalks, driveways, foundations, walls or floors;
unless loss by fire or explosion as insured against hereunder ensues, and then the Company shall be liable for only such ensuing loss.

## VI. COINSURANCE CLAUSE

The Company shall not be liable for a greater proportion of any loss to the property covered hereunder than the limit of liability under this policy for such property bears to the amount produced by multiplying the coinsurance percentage applicable (specified in this policy) by the actual cash value of such property at the time of the loss.

In the event that the aggregate claim for any loss is both less than $10,000 and less than 5% of the limit of liability for all contributing insurance applicable to the property involved at the time such loss occurs, no special inventory and appraisement of the undamaged property

shall be required, provided that nothing herein shall be construed to waive the application of the first paragraph of this clause.

If insurance under Section I of this policy is divided into separate limits of liability, the foregoing shall apply separately to the property covered under each such limit of liability.

The value of property covered under Extensions of Coverage, and the cost of the removal of debris, shall not be considered in the determination of actual cash value when applying the Coinsurance Clause.

## VII. DEDUCTIBLE CLAUSE

The sum of $100 shall be deducted from the amount of loss in any one occurrence resulting from any of the perils insured against, other than fire or lightning. This deductible shall apply separately to each building or structure (including its personal property) and separately to personal property in the open, but in no event shall the aggregate amount deducted from loss in any one occurrence exceed $1,000. The Company shall be liable only for its proportion of loss in excess of the deductible, in accordance with the other insurance provisions of this policy.

## VIII. VALUATION

Subject to the provisions and stipulations of this policy, the following bases for valuation of property are established:

A. Property of others at the amount for which the insured is liable but in no event to exceed actual cash value.

B. Tenant's Improvements and Betterments:
1. If repaired or replaced at the expense of the insured within a reasonable time after loss, the actual cash value of the damaged or destroyed improvements

and betterments.

2. If not repaired or replaced within a reasonable time after loss, that proportion of the original cost at time of installation of the damaged or destroyed property which the unexpired term of the lease or rental agreement, whether written or oral, in effect at the time of loss bears to the periods from the dates such improvements or betterments were made to the expiration date of the lease.

Form MLB-104 (Ed. 5-69)

Exhibit E

Page 7 of 100  7

3. If repaired or replaced at the expense of others for the use of the insured, there shall be no liability hereunder.

C. Books of account, manuscripts, abstracts, drawings, card index systems and other records (except film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing) for not exceeding the cost of blank books, blank cards and other blank materials.

D. Film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing for not exceeding the cost of such media in unexposed or blank form.

E. All other property at actual cash value.

## IX. CONDITIONS

A. **Permits and Use:** Except as otherwise provided herein, permission is hereby granted:

1. to make alterations and repairs;

2. for such unoccupancy as is usual or incidental to the described occupancy but vacancy is limited to the 60 day period permitted by the policy conditions;

3. in the event of loss hereunder, to make reasonable repairs, temporary or permanent, provided such repairs are confined solely to the protection of the property from further damage, and provided further that the insured shall keep an accurate record of such repair expenditures. The cost of any such repairs directly attributable to damage by any peril insured hereunder shall be included in determining the amount of loss hereunder. Nothing herein contained is intended to modify the policy requirements applicable in case loss occurs, and in particular the requirement that, in case loss occurs, the insured shall protect the property from further damage.

B. **Loss Clause:** Any loss hereunder shall not reduce the amount of this policy.

C. **Mortgage Clause:** Applicable to buildings only (this entire clause is void unless name of mortgagee (or trustee) is inserted in the Declarations): Loss, if any, under this policy, shall be payable to the mortgagee (or trustee), named on the first page of this policy, as interest may appear under all present or future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee) in order of precedence of said mortgages, and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy: provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same. Provided also, that the mortgagee (or trustee) shall notify the Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void. The Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and the Company shall have the right, on like notice, to cancel this agreement.

Whenever the Company shall pay the mortgagee (or trustee) any sum for loss under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, the Company shall to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

NOTE—**Inspections by the Insured:** This insurance contemplates not less than two inspections per year of the described property made by the insured for the purposes of fire prevention and fire safety.

Form MLB-104 (Ed. 5-69)                                                                                           Page 4 of 4

Exhibit E
Page 8 of 100  8

**CFC®**

## VANDALISM OR MALICIOUS MISCHIEF ENDORSEMENT

Form MLB-121
(Ed. 3-71)

PROPERTY COVERED    [X] Coverage A — Building(s)      [X] Coverage B — Personal Property

Subject to all the provisions and stipulations otherwise applicable to Section I of this policy of which this endorsement is made a part, except as otherwise provided for herein, the following perils are added to and made part of the "Perils Insured Against" section of the forms of which this endorsement is made a part with respect to the coverage specified by an "X" in the appropriate box above.

A. Vandalism or Malicious Mischief: Loss by vandalism or malicious mischief shall mean only the wilful and malicious damage to or destruction of the property covered. The Company shall not be liable, as respects these perils, for any loss:

1. to glass (other than glass building blocks) constituting a part of a building;

2. by pilferage, theft, burglary or larceny, except for wilful damage to the buildings covered hereunder caused by burglars;

3. by explosion, rupture, or bursting of steam boilers, steam pipes, steam turbines, steam engines, or rotating parts of machines or machinery owned, operated or controlled by the insured;

4. caused by or resulting from power, heating or cooling failure unless such failure results from physical damage to power, heating or cooling equipment situated on premises where the property covered is located;

5. if the described buildings had been vacant or unoccupied beyond a period of 30 consecutive days immediately preceding the loss, whether or not such period commenced prior to the inception date of this endorsement.

NOTE: A building in process of construction shall not be deemed vacant or unoccupied.

Loss Deductible Clause No. 2 does not apply to the coverage afforded by this endorsement.

This Endorsement must be attached to Change Endorsement MLB-20 when issued after the Policy is written.

Form MLB-121 (Ed. 3-71)

Exhibit ___E___
Page ___9___ of _100_ 9

**X CIC ®**    SPECIAL INSTITUTIONAL AGREED AMOUNT ENDORSEMENT    Form MLB-184
(Ed. 10-66)

Subject to all provisions and stipulations otherwise applicable to Section I, Forms MLB-104 and MLB-105 are amended as follows:

### Agreed Amount

A. With respect only to the property specified in the Schedule of this endorsement, it is made a condition of this insurance that the application of the Coinsurance Clause in Forms MLB-104 and MLB-105 is suspended in the determination of loss caused by the perils insured against occurring after the date of this endorsement and prior to  4-15-76  but in no
Exp. Date of End't.
event beyond the expiration date of this policy, and in lieu thereof the following clause is made a part of the form during such period of suspension:

"The Company shall not be liable for a greater proportion of any loss than the amount applying under this policy to the property involved bears to the amount for that property as shown in the Schedule:"

B. If the expiration date set forth in paragraph A is not extended by endorsement, the Coinsurance Clause in the form attached to this policy is automatically reinstated.

C. In no event shall this endorsement apply to coverage on extra expense, rents, earnings or tuition fees.

### SCHEDULE

| LOC. NO. | BLDG. NO. | INSERT EITHER BLDG(S), PERS. PPTY. OR BLANKET BLDG. AND PERS. PPTY. | DESCRIPTION AND LOCATION | AMOUNT APPLICABLE IN PAR. A ABOVE.* |
|---|---|---|---|---|
| All | All | Blanket Buildings & Personal Property | Per MLB 22 | $6,472,683. |

*Indicate total agreed amount for all contributing insurance.

This Endorsement must be attached to Change Endorsement MLB-20 when issued after the Policy is written.

Form MLB-184 (Ed. 10-66)

Exhibit _E_
Page _10_ of _100_ *10*

SPECIAL INSTITUTIONAL REPLACEMENT COST ENDORSEMENT    Form MLB-185
(Ed. 10-66)

☒ Coverage A — Buildings          ☒ Coverage B — Personal Property

The provisions and stipulations of this policy applicable to the coverages indicated by an "X" in the appropriate box are amended to substitute the term 'replacement cost' for the term 'actual cash value' wherever it appears in this policy, thereby eliminating any deduction for depreciation, subject in all other respects to the provisions and stipulations of this endorsement and of the policy of which this endorsement is made a part.

1. The insured may elect to make claim under this policy in accordance with its provisions, disregarding this endorsement; and the insured may make further claim for any additional liability brought about by this endorsement in accordance with its provisions, provided the Company is notified in writing within 180 days after loss of the insured's intent to make such further claim.

2. This endorsement shall not apply to:
   a. books of account, abstracts, manuscripts, drawings, card index systems and other records (including film, tape, disc, drum, cell and other magnetic recording or storage media);
   b. paintings, etchings, pictures, tapestries, statuary, marbles, bronzes, antique furniture, rare books, antique silver, porcelains, rare glassware and bric-a-brac, or other articles of art, rarity or antiquity.

3. The Company's liability for loss under this policy including this endorsement shall not exceed the smallest of the following amounts:
   a. the amount of this policy applicable to the damaged or destroyed property;
   b. the replacement cost of the property to which this endorsement applies, or any part thereof, identical with such property ☒☒☒☒☒☒☒☒☒☒ and intended for the same occupancy and use;
   c. the amount actually and necessarily expended in repairing or replacing the damaged or destroyed property or any part thereof.

4. The Company shall not be liable under this endorsement for any loss:
   a. occasioned directly or indirectly by enforcement of any local or state ordinance or law regulating the construction, repair or demolition of buildings or structures unless such liability has been specifically assumed under this policy;
   b. unless and until the damaged or destroyed property is actually repaired or replaced by the insured with due diligence and dispatch.

This Endorsement must be attached to Change Endorsement MLB-20 when issued after the Policy is written.

Form MLB-185 (Ed. 10-66)

Exhibit _E_

Page __11__ of _100_  _11_

## SUPPLEMENTAL DECLARATIONS ENDORSEMENT

Form MLB-22
(Ed. 10-66)

Location of premises, as stated in the Declarations, is extended to include the following and insurance is provided with respect to those premises described below and with respect to those coverages and kinds of property for which a specific limit of liability is shown, subject to all the terms of this policy including forms and endorsements made a part hereof:

| Div. No. | Loc. No. | Bldg. No. | LOCATION OF PREMISES (Address, City, State) | OCCUPANCY | SECTION I | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | COVERAGE | Forms and Endorsements Applicable | Coinsurance Percentage Applicable | Limits of Liability ($) |
| 1 | 1 | 1 | Holy Family Cathedral 818 Fifth Avenue Anchorage, Alaska | Church | A & B Blanket | MLB104 MLB121 MLB184 MLB185 MLB 22 Deductible Endorsement Amendatory Endorsement 438BFUNS Mortgage Schedule | Per MLB 184 | $6,472,683. |
| 1 | 1 | 2 | Holy Family Rectory 818 Fifth Avenue Anchorage, Alaska | Rectory | Same as | Above | | Included |
| 1 | 2 | 1 | Chancery Office 811 Sixth Avenue Anchorage, Alaska | Chancery | Same as | Above | | Included |
| 1 | 3 | 1 | Little Flower Gift Shop 511 H Street Anchorage, Alaska | Mercantile | Same as | Above | | Included |
| 1 | 4 | 1 | St. Anthony's Church 825 Klevin Street Anchorage, Alaska | Church | Same as | Above | | Included |
| 1 | 4 | 2 | St. Anthony's Rectory 825 Klevin Street Anchorage, Alaska | Rectory | Same as | Above | | Included |
| 1 | 4 | 3 | St. Anthony's Garage 825 Klevin Street Anchorage, Alaska | Garage | Same as | Above | | Included |
| 1 | 5 | 1 | St. Benedict's Church 8110 Jewell Lake Rd. Anchorage, Alaska | Church | Same as | Above | | Included |
| 1 | 5 | 2 | St. Benedict's Rectory 8110 Jewell Lake Rd. Anchorage, Alaska | Rectory | Same as | Above | | Included |
| 1 | 6 | 1 | St. Francis House 835 Sixth Avenue Anchorage, Alaska | Charitable Home | Same as | Above | | Included |
| 1 | 7 | 1 | Retreat House & Chapel Hillside Drive Anchorage, Alaska | Retreat House & Chapel | Same as | Above | | Included |

Form MLB-22 (Ed. 10-66)

Exhibit _E_
Page _12_ of _100_    12

## SUPPLEMENTAL DECLARATIONS ENDORSEMENT

Form MLB-22
(Ed. 10-66)

Location of premises, as stated in the Declarations, is extended to include the following and insurance is provided with respect to those premises described below and with respect to those coverages and kinds of property for which a specific limit of liability is shown, subject to all the terms of this policy including forms and endorsements made a part hereof:

| Div. No. | Loc. No. | Bldg. No. | LOCATION OF PREMISES (Address, City, State) | OCCUPANCY | SECTION 1 | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | COVERAGE | Forms and Endorsements Applicable | Coinsurance Percentage Applicable | Limits of Liability ($) |
| 1 | 8 | 1 | Our Lady of Guadalupe 3007 West 34th Avenue Anchorage, Alaska | Rectory | Same as | Above | | Included |
| 1 | 9 | 1 | Mercy House 3005 West 34th Avenue Anchorage, Alaska | Convent | Same as | Above | | Included |
| 1 | 10 | 1 | St. Patrick's Rectory 2111 Muldoon Road Anchorage, Alaska | Rectory | Same as | Above | | Included |
| 1 | 10 | 2 | St. Patrick's Church 2111 Muldoon Road Anchorage, Alaska | Church | Same as | Above | | Included |
| 1 | 11 | 1 | Rollohome Townhouse Hillside Drive Anchorage, Alaska | Retreat House | Same as | Above | | Included |
| 1 | 12 | 1 | St.Michael's Church Palmer, Alaska | Church | Same as | Above | | Included |
| 1 | 13 | 1 | St. Michael's Rectory Palmer, Alaska | Rectory | Same as | Above | | Included |
| 1 | 14 | 1 | Sacred Heart Church & Rectory Wasilla, Alaska | Church & Rectory | Same as | Above | | Included |
| 1 | 15 | 1 | Willow Church (Mobile Home) Willow, Alaska | Church | Same as | Above | | Included |
| 1 | 16 | 1 | Talkeetna Church Talkeetna, Alaska | Church | Same as | Above | | Included |
| 1 | 17 | 1 | Talkeetna Rectory (1971 Detroit Trailer, S#GJ041397) Talkeetna, Alaska | Rectory | Same as | Above | | Included |
| 1 | 18 | 1 | Talkeetna Rental (Mobile Home) Talkeetna, Alaska | Rental Dwelling | Same as | Above | | Included |
| 1 | 19 | 1 | Eagle River Church Eagle River, Alaska | Church | Same as | Above | | Included |

Form MLB-22 (Ed. 10-66)

Exhibit __E__
Page __13__ of __100__

13

 SUPPLEMENTAL DECLARATIONS ENDORSEMENT

Form MLB-22
(Ed. 10-66)

Location of premises, as stated in the Declarations, is extended to include the following and insurance is provided with respect to those premises described below and with respect to those coverages and kinds of property for which a specific limit of liability is shown, subject to all the terms of this policy including forms and endorsements made a part hereof:

| Div. No. | Loc. No. | Bldg. No. | LOCATION OF PREMISES (Address, City, State) | OCCUPANCY | SECTION I | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | COVERAGE | Forms and Endorsements Applicable | Coinsurance Percentage Applicable | Limits of Liability ($) |
| 1 | 20 | 1 | Eagle River Rectory (Mobile Home) Eagle River, Alaska | Rectory | Same as | Above | | Included |
| 1 | 21 | 1 | Eagle River Rectory #2 Huskey Mobile Home Eagle River, Alaska | Rectory | Same as | Above | | Included |
| 1 | 22 | 1 | Church & Rectory Cordova, Alaska | Church & Rectory | Same as | Above | | Included |
| 1 | 23 | 1 | Rectory Dillingham, Alaska | Rectory | Same as | Above | | Included |
| 1 | 23 | 2 | Church Dillingham, Alaska | Church | Same as | Above | | Included |
| 1 | 23 | 3 | Rental Dwelling Adjacent Rectory Dillingham, Alaska | Rental | Same as | Above | | Included |
| 1 | 24 | 1 | Church Homer, Alaska | Church | Same as | Above | | Included |
| 1 | 25 | 1 | Church Homer, Alaska | Church | Same as | Above | | Included |
| 1 | 26 | 1 | Church Kenai, Alaska | Church | Same as | Above | | Included |
| 1 | 27 | 1 | Rectory (1968 Broadmore Trailer, S#1387) Kenai, Alaska | Rectory | Same as | Above | | Included |
| 1 | 28 | 1 | Kodiak Volunteers House 1017 Mill Bay Road Kodiak Aleutian Homes Kodiak, Alaska | Residence | Same as | Above | | Included |
| 1 | 29 | 1 | Church 100 Kashevaroff Street Kodiak, Alaska | Church | Same as | Above | | Included |
| 1 | 30 | 1 | Parish Hall 146 Kashevaroff Street Kodiak, Alaska | Parish | Same as | Above | | Included |
| 1 | 31 | 1 | Rectory, Tract B Kodiak, Alaska | Rectory | Same as | Above | | Included |

Form MLB-22 (Ed. 10-66)

Exhibit _____E_____
Page _____14_____ of _100_    14



## SUPPLEMENTAL DECLARATIONS ENDORSEMENT

Form MLB-22
(Ed. 10-66)

Location of premises, as stated in the Declarations, is extended to include the following and insurance is provided with respect to those premises described below and with respect to those coverages and kinds of property for which a specific limit of liability is shown, subject to all the terms of this policy including forms and endorsements made a part hereof:

| Div. No. | Loc. No. | Bldg. No. | LOCATION OF PREMISES (Address, City, State) | OCCUPANCY | SECTION I | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | COVERAGE | Forms and Endorsements Applicable | Coinsurance Percentage Applicable | Limits of Liability ($) |
| 1 | 32 | 1 | Convent, Tract A Kodiak, Alaska | Convent | Same as | Above | | Included |
| 1 | 33 | 1 | St. Mary's School Kodiak, Alaska | School | Same as | Above | | Included |
| 1 | 34 | 1 | Church Ninilchik, Alaska | Church | Same as | Above | | Included |
| 1 | 35 | 1 | Church Seldovia, Alaska | Church | Same as | Above | | Included |
| 1 | 36 | 1 | Church & Rectory Seward, Alaska | Church & Rectory | Same as | Above | | Included |
| 1 | 37 | 1 | Church Soldotna, Alaska | Church | Same as | Above | | Included |
| 1 | 38 | 1 | Rectory Soldotna, Alaska | Rectory | Same as | Above | | Included |
| 1 | 38 | 2 | Garage Soldotna, Alaska | Garage | Same as | Above | | Included |
| 1 | 38 | 3 | Storage Building Soldotna, Alaska | Storage | Same as | Above | | Included |
| 1 | 39 | 1 | Bunkhouse St. Theresa's Camp o/s of Soldotna, Ak. | Bunkhouse | Same as | Above | | Included |
| 1 | 39 | 2 | Bunkhouse St. Theresa's Camp o/s of Soldotna, Ak. | Bunkhouse | Same as | Above | | Included |
| 1 | 39 | 3 | Bunkhouse St. Theresa's Camp o/s of Soldotna, Ak. | Bunkhouse | Same as | Above | | Included |
| 1 | 39 | 4 | Bunkhouse St. Theresa's Camp o/s of Soldotna, Ak. | Bunkhouse | Same as | Above | | Included |
| 1 | 39 | 5 | Bunkhouse St. Theresa's Camp o/s of Soldotna, Ak. | Bunkhouse | Same as | Above | | Included |
| 1 | 39 | 6 | Chapel St. Theresa's Camp o/s of Soldotna, Ak. | Chapel | Same as | Above | | Included |

Form MLB-22 (Ed. 10-66)



## SUPPLEMENTAL DECLARATIONS ENDORSEMENT

Form MLB-22
(Ed. 10-66)

Location of premises, as stated in the Declarations, is extended to include the following and insurance is provided with respect to those premises described below and with respect to those coverages and kinds of property for which a specific limit of liability is shown, subject to all the terms of this policy including forms and endorsements made a part hereof:

| Div. No. | Loc. No. | Bldg. No. | LOCATION OF PREMISES (Address, City, State) | OCCUPANCY | SECTION 1 | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | COVERAGE | Forms and Endorsements Applicable | Coinsurance Percentage Applicable | Limits of Liability ($) |
| 1 | 39 | 7 | Mess Hall St. Theresa's Camp o/s of Soldotna, Ak. | Mess Hall | Same as | Above | | Included |
| 1 | 39 | 8 | Pump House St. Theresa's Camp o/s of Soldotna, Ak. | Pump House | Same as | Above | | Included |
| 1 | 39 | 9 | Toilet Building St. Threas's Camp o/s of Soldotna, Ak. | Toilet Building | Same as | Above | | Included |
| 1 | 39 | 10 | Toilet Building St. Theresa's Camp o/s of Soldotna, Ak. | Toilet Building | Same as | Above | | Included |
| 1 | 39 | 11 | Recreation Hall St. Theresa's Camp o/s of Soldotna, Ak. | Recreation Hall | Same as | Above | | Included |
| 1 | 39 | 12 | Storage Building St. Theresa's Camp o/s of Soldotna, Ak. | Storage | Same as | Above | | Included |
| 1 | 40 | 1 | St. Francis Xavier Church & Rectory Valdez, Alaska | Church Rectory | Same as | Above | | Included |
| 1 | 41 | 1 | Catholic Charities 1320 K Street Anchorage, Alaska | Office | Same as | Above | | Included |
| 1 | 42 | 1 | Rectory Hillside Drive Anchorage, Alaska | Rectory | Same as | Above | | Included |
| 1 | 43 | 1 | Chancery Office Hillside Drive Anchorage, Alaska | Office | Same as | Above | | Included |
| 1 | 44 | 1 | Church Glennallen, Alaska | Church & Rectory | Same as | Above | | Included |
| 1 | 45 | 1 | Church & Rectory Trappers Creek, Ak. | Church & Rectory | Same as | Above | | Included |
| 1 | 46 | 1 | Rectory 7528 Stanley Drive Anchorage, Alaska | Rectory | Same as | Above | | Included |

Form MLB-22 (Ed. 10-66)



## SUPPLEMENTAL DECLARATIONS ENDORSEMENT

Form MLB-22
(Ed. 10-66)

Location of premises, as stated in the Declarations, is extended to include the following and insurance is provided with respect to those premises described below and with respect to those coverages and kinds of property for which a specific limit of liability is shown, subject to all the terms of this policy including forms and endorsements made a part hereof:

| Div. No. | Loc. No. | Bldg. No. | LOCATION OF PREMISES (Address, City, State) | OCCUPANCY | SECTION I | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | COVERAGE | Forms and Endorsements Applicable | Coinsurance Percentage Applicable | Limits of Liability ($) |
| 1 | 47 | 1 | Rectory 7538 Stanley Drive Anchorage, Alaska | Rectory | Same as | Above | | Included |
| 1 | 48 | 1 | Rental Dwelling 824 West 5th Anchorage, Alaska | Rental | Same as | Above | | Included |

Form MLB-22 (Ed. 10-66)

Exhibit __E__
Page __17__ of __100__     17

## SCHEDULE OF MORTGAGEES

1. Provident Institution for Savings in the Town of Boston
   c/o National Bank of Alaska
   FHA Department, Pouch 7-023
   Anchorage, Alaska  99501

   First Mortgagee with Respect to the Rectory situated Tract B-1 of
   Tract B., U. S. Survey 3218, Kodiak, Alaska. (Location #31)

2. Federal National Mortgage Association
   c/o First National Bank of Anchorage
   Box 720, FHA Department
   Anchorage, Alaska  99510

   First Mortgagee with Respect to Lot 4 of the resubdivision of Lot 3,
   Block 2, New McRae Subdivision, 3007 West 34th Avenue, Anchorage, Alaska.
   (Location #8)

3. First National Bank of Anchorage
   P.O. Box 720
   Anchorage, Alaska  99510

   First Mortgagee with respect to the 1971 Detroit trailer #GJ041397
   (Location #17) and 1968 Broadmore trailer, S#1387 (Location #27), Kenai,
   Alaska.

4. William and Patricia Lewis
   8000 Brink Court
   Anchorage, Alaska  99504

   First Mortgagee with respect to the Rectory at 2111 Muldoon Road,
   Anchorage, Alaska.  (Location #10)

5. Federal National Mortgage Association
   c/o First National Bank of Anchorage
   Box 720, FHA Department, Anchorage, Alaska  99501
              -and-
   Hiram L. and Alice M. Wells
   Star Route A, Box 198, Anchorage, Alaska  99502

   As respects Lot 3 of Re-Subdivided Lot 3, Block 2, New Lot Addition,
   Anchorage Recording District, 3005 West 34th Street, Anchorage, Alaska.
   (Location #9)

6. Small Business Administration
   Suite 200, Anchorage Legal Center
   1016 W. 6th Avenue, Anchorage, Alaska
   As respects Church at Seward (Location #36) and Church at Valdez (Location #40)

7. First Federal Savings & Loan (1st Deed of Trust)
   305 5th Avenue, Anchorage, Alaska

**PDH
LDH**

Exhibit _E_

Page _18_ of _100_     _18_

Ada A. Somers, Escrow (2nd Deed of Trust)
National Bank of Alaska, Kodiak, Alaska

As respects Convent situated Tract A (renamed Tract B) of U.S.
Survey 3218, Kodiak, Alaska

8.  First National Bank of Anchorage (1st Mortgagee)
    South Center Branch, P.O. Box 42090
    Anchorage, Alaska  99509
              -and-
    First National Bank of Anchorage (2nd Mortgagee)
    Vernon E. and Maxine O. Uhlig, Escrow
    P.O. Box 42090
    Anchorage, Alaska

As respects Rental Dwelling situated 7528 Stanley Drive (Location #46)
and Rectory situated 7538 Stanley Drive (Location #47), Anchorage,
Alaska

This endorsement, effective ___4-15-75___, forms part of Policy
SMP 2397994 issued to THE CORPORATION OF THE CATHOLIC ARCHBISHOP
OF ANCHORAGE, ETAL by the Pacific Insurance Company.

LaBow, Haynes of Alaska, Inc.

James R. McKeown

James R. McKeown

S.F. FORM

Form 438BFU
(Rev. May 1, 1942)

## LENDER'S LOSS PAYABLE ENDORSEMENT

1. Loss or damage, if any, under this policy shall be paid to **First National Bank of Anchorage**

_____ **South Center Branch, Box 42090**
          **(1st Mortgagee)** _____ **Anchorage, Alaska  99509** _____

its successors and assigns, hereinafter referred to as "the Lender," in whatever form or capacity its interests may appear and whether said interest be vested in said Lender in its individual or in its disclosed or undisclosed fiduciary or representative capacity, or otherwise, or vested in a nominee or trustee of said Lender.

2. The insurance under this policy, or any rider or endorsement attached thereto, as to the interest only of the Lender, its successors and assigns, shall not be invalidated nor suspended: (a) by any error, omission, or change respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy by virtue of any mortgage or trust deed; (c) by any breach of warranty, act, omission, neglect, or non-compliance with any of the provisions of this policy, including any and all riders now or hereafter attached thereto, by the named insured, the borrower, mortgagor, trustor, vendee, owner, tenant, warehouseman, custodian, occupant, or by the agents of either or any of them or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, whether occurring before or after the attachment of this endorsement, or whether before or after a loss, which under the provisions of this policy of insurance or of any rider or endorsement attached thereto would invalidate or suspend the insurance as to the named insured, excluding herefrom, however, any acts or omissions of the Lender while exercising active control and management of the property.

3. In the event of failure of the insured to pay any premium or additional premium which shall be or become due under the terms of this policy or on account of any change in occupancy or increase in hazard not permitted by this policy, this Company agrees to give written notice to the Lender of such non-payment of premium after sixty (60) days from and within one hundred and twenty (120) days after the date of such premium and it is a condition of the continuance of the rights of the Lender hereunder that the Lender when so notified in writing by this Company of the failure of the insured to pay such premium shall pay or cause to be paid the premium due within ten (10) days following receipt of the Company's demand in writing therefor. If the Lender shall decline to pay said premium or additional premium, the rights of the Lender under this Lender's Loss Payable Endorsement shall not be terminated before ten (10) days after receipt of said written notice by the Lender.

4. Whenever this Company shall pay to the Lender any sum for loss or damage under this policy and shall claim that as to the insured no liability therefor exists, this Company, at its option, may pay to the Lender the whole principal sum and interest and other indebtedness due or to become due from the insured, whether secured or unsecured, (with refund of all interest not accrued), and this Company, to the extent of such payment, shall thereupon receive a full assignment and transfer, without recourse, of the debt and all rights and securities held as collateral thereto.

5. If there be any other insurance upon the within described property, this Company shall be liable under this policy as to the Lender for the proportion of such loss or damage that the sum hereby insured bears to the entire insurance of similar character on said property under policies held by, payable to and expressly consented to by the Lender. Any Contribution Clause included in any Falling Building Clause Waiver or any Extended Coverage Endorsement attached to this contract of insurance is hereby nullified, and also any Contribution Clause in any other endorsement or rider attached to this contract of insurance is hereby nullified except Contribution Clauses for the compliance with which the insured has received reduction in the rate charged or has received extension of the coverage to include hazards other than fire and compliance with such Contribution Clause is made a part of the consideration for insuring such other hazards. The Lender upon the payment to it of the full amount of its claim, will subrogate this Company (pro rata with all other insurers contributing to said payment) to all of the Lender's rights of contribution under said other insurance.

6. This Company reserves the right to cancel this policy at any time, as provided by its terms, but in such case this policy shall continue in force for the benefit of the Lender for ten (10) days after written notice of such cancellation is received by the Lender and shall then cease.

7. This policy shall remain in full force and effect as to the interest of the Lender for a period of ten (10) days after its expiration unless an acceptable policy in renewal thereof with loss thereunder payable to the Lender in accordance with the terms of this Lender's Loss Payable Endorsement, shall have been issued by some insurance company and accepted by the Lender.

8. Should legal title to and beneficial ownership of any of the property covered under this policy become vested in the Lender or its agents, insurance under this policy shall continue for the term thereof for the benefit of the Lender but, in such event, any privileges granted by this Lender's Loss Payable Endorsement which are not also granted the insured under the terms and conditions of this policy and/or under other riders or endorsements attached thereto shall not apply to the insurance hereunder as respects such property.

9. All notices herein provided to be given by the Company to the Lender in connection with this policy and this Lender's Loss Payable Endorsement shall be mailed to or delivered to the Lender at its office or branch at _____ or, if none be specified, at its head office at _____

Attached to Policy No. **SMP 2397994** of **Pacific Insurance Company**

Issued to **Corporation of the Catholic Archbishop of Anchorage, Etal**

Agency at **Anchorage, Alaska** _____ Date **4-15-75**

As respects rental dwelling situate 7528 Stanley Drive (location #46) and rectory situated 7538 Stanley Drive (location #47)

Approved:
  Board of Fire Underwriters of the Pacific.
  California Bankers' Association.
    Committee on Insurance.

_James R. McKeown_
      James R. McKeown        Agent.

Exhibit ___E___
Page ___20___ of ___100___

**20**

S.F. FORM

Form 438BFU
(Rev. May 1, 1942)

## LENDER'S LOSS PAYABLE ENDORSEMENT

1. Loss or damage, if any, under this policy shall be paid to **Vernon E. & Maxine O. Uhlig, Escrow**
**C/O First National Bank of Anchorage**
  **(2nd Mortgagee)**          **Box 42090, Anchorage, Alaska 99509**
its successors and assigns, hereinafter referred to as "the Lender," in whatever form or capacity its interests may appear and whether said interest be vested in said Lender in its individual or in its disclosed or undisclosed fiduciary or representative capacity, or otherwise, or vested in a nominee or trustee of said Lender.

2. The insurance under this policy, or any rider or endorsement attached thereto, as to the interest only of the Lender, its successors and assigns, shall not be invalidated nor suspended: (a) by any error, omission, or change respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy by virtue of any mortgage or trust deed; (c) by any breach of warranty, act, omission, neglect, or non-compliance with any of the provisions of this policy, including any and all riders now or hereafter attached thereto, by the named insured, the borrower, mortgagor, trustor, vendee, owner, tenant, warehouseman, custodian, occupant, or by the agents of either or any of them or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, whether occurring before or after the attachment of this endorsement, or whether before or after a loss, which under the provisions of this policy of insurance or of any rider or endorsement attached thereto would invalidate or suspend the insurance as to the named insured, excluding herefrom, however, any acts or omissions of the lender while exercising active control and management of the property.

3. In the event of failure of the insured to pay any premium or additional premium which shall be or become due under the terms of this policy or on account of any change in occupancy or increase in hazard not permitted by this policy, this Company agrees to give written notice to the Lender of such non-payment of premium after sixty (60) days from and within one hundred and twenty (120) days after due date of such premium and it is a condition of the continuance of the rights of the Lender hereunder that the Lender when so notified in writing by this Company of the failure of the insured to pay such premium shall pay or cause to be paid the premium due within ten (10) days following receipt of the Company's demand in writing therefor. If the Lender shall decline to pay said premium or additional premium, the rights of the Lender under this Lender's Loss Payable Endorsement shall not be terminated before ten (10) days after receipt of said written notice by the Lender.

4. Whenever this Company shall pay to the Lender any sum for loss or damage under this policy and shall claim that as to the insured no liability therefor exists, this Company, at its option, may pay to the Lender the whole principal sum and interest and other indebtedness due or to become due from the insured, whether secured or unsecured, (with refund of all interest not accrued), and this Company, to the extent of such payment, shall thereupon receive a full assignment and transfer, without recourse, of the debt and all rights and securities held as collateral thereto.

5. If there be any other insurance upon the within described property, this Company shall be liable under this policy as to the Lender for the proportion of such loss or damage that the sum hereby insured bears to the entire insurance of similar character on said property under policies held by, payable to and expressly consented to by the Lender. Any Contribution Clause included in any Fallen Building Clause Waiver or any Extended Coverage Endorsement attached to this contract of insurance is hereby nullified, and also any Contribution Clause in any other endorsement or rider attached to this contract of insurance is hereby nullified except Contribution Clauses for the compliance with which the insured has received reduction in the rate charged or has received extension of the coverage to include hazards other than fire and compliance with such Contribution Clause is made a part of the consideration for insuring such other hazards. The Lender upon the payment to it of the full amount of its claim, will subrogate this Company (pro rata with all other insurers contributing to said payment) to all of the Lender's rights of contribution under said other insurance.

6. This Company reserves the right to cancel this policy at any time, as provided by its terms, but in such case this policy shall continue in force for the benefit of the Lender for ten (10) days after written notice of such cancellation is received by the Lender and shall then cease.

7. This policy shall remain in full force and effect as to the interest of the Lender for a period of ten (10) days after its expiration unless an acceptable policy in renewal thereof with loss thereunder payable to the Lender in accordance with the terms of this Lender's Loss Payable Endorsement, shall have been issued by some insurance company and accepted by the Lender.

8. Should legal title to and beneficial ownership of any of the property covered under this policy become vested in the Lender or its agents, insurance under this policy shall continue for the term thereof for the benefit of the Lender but, in such event, any privileges granted by this Lender's Loss Payable Endorsement which are not also granted the insured under the terms and conditions of this policy and/or under other riders or endorsements attached thereto shall not apply to the insurance hereunder as respects such property.

9. All notices herein provided to be given by the Company to the Lender in connection with this policy and this Lender's Loss Payable Endorsement shall be mailed to or delivered to the Lender at its office or branch at _____ or, if none be specified, at its head office at _____

Attached to Policy No. **SMP 2397994, Pacific Insurance Company**

Issued to **Corporation of the Catholic Archbishop of Anchorage, Et.al.**

Agency at **Anchorage, Alaska                  4-15-75**

As respect Rental Dwelling situated 7528 Stanley Drive (location #46)
and Rectory situated 7538 Stanley Drive (location #47)

Approved:
  Board of Fire Underwriters of the Pacific.
  California Bankers' Association.
          Committee on Insurance.                 *James R. McKeown*          Agent.

Exhibit ___E___
Page ___21___ of ___100___   21

S.F. FORM

**Ⓢ**

Form 438BFU
(Rev. May 1, 1942)

## LENDER'S LOSS PAYABLE ENDORSEMENT

1. Loss or damage, if any, under this policy shall be paid to **Small Business Administration,**
**Suite 200, Anchorage Legal Center**
**1016 West 6th Avenue, Anchorage, Alaska    99501**
its successors and assigns, hereinafter referred to as "the Lender," in whatever form or capacity its interests may appear and whether said interest be vested in said Lender in its individual or in its disclosed or undisclosed fiduciary or representative capacity, or otherwise, or vested in a nominee or trustee of said Lender.

2. The insurance under this policy, or any rider or endorsement attached thereto, as to the interest only of the Lender, its successors and assigns, shall not be invalidated nor suspended: (a) by any error, omission, or change respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy by virtue of any mortgage or trust deed; (c) by any breach of warranty, act, omission, neglect, or non-compliance with any of the provisions of this policy, including any and all riders now or hereafter attached thereto, by the named insured, the borrower, mortgagor, trustor, vendee, owner, tenant, warehouseman, custodian, occupant, or by the agents of either or any of them or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, whether occurring before or after the attachment of this endorsement, or whether before or after a loss, which under the provisions of this policy of insurance or of any rider or endorsement attached thereto would invalidate or suspend the insurance as to the named insured, excluding herefrom, however, any acts or omissions of the lender while exercising active control and management of the property.

3. In the event of failure of the insured to pay any premium or additional premium which shall be or become due under the terms of this policy or on account of any change in occupancy or increase in hazard not permitted by this policy, this Company agrees to give written notice to the Lender of such non-payment of premium after sixty (60) days from and within one hundred and twenty (120) days after due date of such premium and it is a condition of the continuance of the rights of the Lender hereunder that the Lender when so notified in writing by this Company of the failure of the insured to pay such premium shall pay or cause to be paid the premium due within ten (10) days following receipt of the Company's demand in writing therefor. If the Lender shall decline to pay said premium or additional premium, the rights of the Lender under this Lender's Loss Payable Endorsement shall not be terminated before ten (10) days after receipt of said written notice by the Lender.

4. Whenever this Company shall pay to the Lender any sum for loss or damage under this policy and shall claim that as to the insured no liability therefor exists, this Company, at its option, may pay to the Lender the whole principal sum and interest and other indebtedness due or to become due from the insured, whether secured or unsecured, (with refund of all interest not accrued), and this Company, to the extent of such payment, shall thereupon receive a full assignment and transfer, without recourse, of the debt and all rights and securities held as collateral thereto.

5. If there be any other insurance upon the within described property, this Company shall be liable under this policy as to the Lender for the proportion of such loss or damage that the sum hereby insured bears to the entire insurance of similar character on said property under policies held by, payable to and expressly consented to by the Lender. Any Contribution Clause included in any Fallen Building Clause Waiver or any Extended Coverage Endorsement attached to this contract of insurance is hereby nullified, and also any Contribution Clause in any other endorsement or rider attached to this contract of insurance is hereby nullified except Contribution Clauses for the compliance with which the insured has received reduction in the rate charged or has received extension of the coverage to include hazards other than fire and compliance with such Contribution Clause is made a part of the consideration for insuring such other hazards. The Lender upon the payment to it of the full amount of its claim, will subrogate this Company (pro rata with all other insurers contributing to said payment) to all of the Lender's rights of contribution under said other insurance.

6. This Company reserves the right to cancel this policy at any time, as provided by its terms, but in such case this policy shall continue in force for the benefit of the Lender for ten (10) days after written notice of such cancellation is received by the Lender and shall then cease.

7. This policy shall remain in full force and effect as to the interest of the Lender for a period of ten (10) days after its expiration unless an acceptable policy in renewal thereof with loss thereunder payable to the Lender in accordance with the terms of this Lender's Loss Payable Endorsement, shall have been issued by some insurance company and accepted by the Lender.

8. Should legal title to and beneficial ownership of any of the property covered under this policy become vested in the Lender or its agents, insurance under this policy shall continue for the term thereof for the benefit of the Lender but, in such event, any privileges granted by this Lender's Loss Payable Endorsement which are not also granted the insured under the terms and conditions of this policy and/or under other riders or endorsements attached thereto shall not apply to the insurance hereunder as respects such interest.

9. All notices herein provided to be given by the Company to the Lender in connection with this policy and this Lender's Loss Payable Endorsement shall be mailed to or delivered to the Lender at its office or branch at.............................................................
or, if none be specified, at its head office at...........................................................................................................................
Attached to Policy No. **SMP 2397994** of **Pacific Insurance Company**
Issued to **Corporation of the Catholic Archbishop of Anchorage, Etal**
Agency at **Anchorage, Alaska**                            Date **4-15-75**

**As respects Church at Seward (location #36) and Church at Valdez**
**(location #40)**

Approved:                                                                    _James R. McKeown_
    Board of Fire Underwriters of the Pacific.
    California Bankers' Association.                             ────────────────────
        Committee on Insurance.                                    James R. McKeown            Agent.

S.F. FORM

Form 438BFU
(Rev. May 1, 1942)

## LENDER'S LOSS PAYABLE ENDORSEMENT

1. Loss or damage, if any, under this policy shall be paid to **Provident Institution for Savings in the Town of Boston, C/O National Bank of Alaska, FHA Dept., Pouch 7-023, Anchorage, Alaska  99501**
its successors and assigns, hereinafter referred to as "the Lender," in whatever form or capacity its interests may appear and whether said interest be vested in said Lender in its individual or in its disclosed or undisclosed fiduciary or representative capacity, or otherwise, or vested in a nominee or trustee of said Lender.

2. The insurance under this policy, or any rider or endorsement attached thereto, as to the interest only of the Lender, its successors and assigns, shall not be invalidated nor suspended: (a) by any error, omission, or change respecting the ownership, description, possession, or location of the subject of the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy by virtue of any mortgage or trust deed; (c) by any breach of warranty, act, omission, neglect, or non-compliance with any of the provisions of this policy, including any and all riders now or hereafter attached thereto, by the named insured, the borrower, mortgagor, trustor, vendee, owner, tenant, warehouseman, custodian, occupant, or by the agents of either or any of them or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, whether occurring before or after the attachment of this endorsement, or whether before or after a loss, which under the provisions of this policy of insurance or of any rider or endorsement attached thereto would invalidate or suspend the insurance as to the named insured, excluding herefrom, however, any acts or omissions of the Lender while exercising active control and management of the property.

3. In the event of failure of the insured to pay any premium or additional premium which shall be or become due under the terms of this policy or on account of any change in occupancy or increase in hazard not permitted by this policy, this Company agrees to give written notice to the Lender of such non-payment of premium after sixty (60) days from and within one hundred and twenty (120) days after due date of such premium and it is a condition of the continuance of the rights of the Lender hereunder that the Lender when so notified in writing by this Company of the failure of the insured to pay such premium shall pay or cause to be paid the premium due within ten (10) days following receipt of the Company's demand in writing therefor. If the Lender shall decline to pay said premium or additional premium, the rights of the Lender under this Lender's Loss Payable Endorsement shall not be terminated before ten (10) days after receipt of said written notice by the Lender.

4. Whenever this Company shall pay to the Lender any sum for loss or damage under this policy and shall claim that as to the insured no liability therefor exists, this Company, at its option, may pay to the Lender the whole principal sum and interest and other indebtedness due or to become due from the insured, whether secured or unsecured, (with refund of all interest not accrued), and this Company, to the extent of such payment, shall thereupon receive a full assignment and transfer, without recourse, of the debt and all rights and securities held as collateral thereto.

5. If there be any other insurance upon the within described property, this Company shall be liable under this policy as to the Lender for the proportion of such loss or damage that the sum hereby insured bears to the entire insurance of similar character on said property under policies held by, payable to and expressly consented to by the Lender. Any Contribution Clause included in any Fallen Building Clause Waiver or any Extended Coverage Endorsement attached to this contract of insurance is hereby nullified, and also any Contribution Clause in any other endorsement or rider attached to this contract of insurance is hereby nullified except Contribution Clauses for the compliance with which the insured has received reduction in the rate charged or has received extension of the coverage to include hazards other than fire and compliance with such Contribution Clause is made a part of the consideration for insuring such other hazards. The Lender upon the payment to it of the full amount of its claim, will subrogate this Company (pro rata with all other insurers contributing to said payment) to all of the Lender's rights of contribution under said other insurance.

6. This Company reserves the right to cancel this policy at any time, as provided by its terms, but in such case this policy shall continue in force for the benefit of the Lender for ten (10) days after written notice of such cancellation is received by the Lender and shall then cease.

7. This policy shall remain in full force and effect as to the interest of the Lender for a period of ten (10) days after its expiration unless an acceptable policy in renewal thereof with loss thereunder payable to the Lender in accordance with the terms of this Lender's Loss Payable Endorsement, shall have been issued by some insurance company and accepted by the Lender.

8. Should legal title to and beneficial ownership of any of the property covered under this policy become vested in the Lender or its agents, insurance under this policy shall continue for the term thereof for the benefit of the Lender but, in such event, any privileges granted by this Lender's Loss Payable Endorsement which are not also granted the insured under the terms and conditions of this policy and/or under other riders or endorsements attached thereto shall not apply to the insurance hereunder as respects such property.

9. All notices herein provided to be given by the Company to the Lender in connection with this policy and this Lender's Loss Payable Endorsement shall be mailed to or delivered to the Lender at its office or branch at..................................................................................................................................
or, if none be specified, at its head office at..........................................................................................

Attached to Policy No. **SMP  2397994** of..... **Pacific  Insurance  Company**

Issued to..... **Corporation  of  the  Catholic  Archbishop  of  Anchorage,  Etal**

Agency at..... **Anchorage,  Alaska**              Date..... **4-15-75**
        **As respects Rectory, Situated; Tract B-1 of Tract B, US Survey 3218,**
Approved;     **Kodiak,  Alaska    (location #31)**

Board of Fire Underwriters of the Pacific.
California Bankers' Association.                     **James R. McKeown**              Agent.
        Committee on Insurance.

S.F. FORM

Form 438BFU
(Rev. May 1, 1942)

## LENDER'S LOSS PAYABLE ENDORSEMENT

1. Loss or damage, if any, under this policy shall be paid to First National Bank of Anchorage
P. O. Box 720
Anchorage, Anchorage 99510
its successors and assigns, hereinafter referred to as "the Lender," in whatever form or capacity its interests may appear and whether said interest be vested in said Lender in its individual or in its disclosed or undisclosed fiduciary or representative capacity, or otherwise; or vested in a nominee or trustee of said Lender.

2. The insurance under this policy, or any rider or endorsement attached thereto, as to the interest only of the Lender, its successors and assigns, shall not be invalidated nor suspended: (a) by any error, omission, or change respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy by virtue of any mortgage or trust deed; (c) by any breach of warranty, act, omission, neglect, or non-compliance with any of the provisions of this policy, including any and all riders now or hereafter attached thereto, by the named insured, the borrower, mortgagor, trustor, vendee, owner, tenant, warehouseman, custodian, occupant, or by the agents of either or any of them or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, whether occurring before or after the attachment of this endorsement, or whether before or after a loss, which under the provisions of this policy of insurance or of any rider or endorsement attached thereto would invalidate or suspend the insurance as to the named insured, excluding herefrom, however, any acts or omissions of the lender while exercising active control and management of the property.

3. In the event of failure of the insured to pay any premium or additional premium which shall be or become due under the terms of this policy or on account of any change in occupancy or increase in hazard not permitted by this policy, this Company agrees to give written notice to the Lender of such non-payment of premium after sixty (60) days from and within one hundred and twenty (120) days after due date of such premium and it is a condition of the continuance of the rights of the Lender hereunder that the Lender when so notified in writing by this Company of the failure of the insured to pay such premium shall pay or cause to be paid the premium due within ten (10) days following receipt of the Company's demand in writing therefor. If the Lender shall decline to pay said premium or additional premium, the rights of the Lender under this Lender's Loss Payable Endorsement shall not be terminated before ten (10) days after receipt of said written notice by the Lender.

4. Whenever this Company shall pay to the Lender any sum for loss or damage under this policy and shall claim that as to the insured no liability therefor exists, this Company, at its option, may pay to the Lender the whole principal sum and interest and other indebtedness due or to become due from the insured, whether secured or unsecured, (with refund of all interest not accrued), and this Company, to the extent of such payment, shall thereupon receive a full assignment and transfer, without recourse, of the debt and all rights and securities held as collateral thereto.

5. If there be any other insurance upon the within described property, this Company shall be liable under this policy as to the Lender for the proportion of such loss or damage that the sum hereby insured bears to the entire insurance of similar character on said property under policies held by, payable to and expressly consented to by the Lender. Any Contribution Clause included in any Fallen Building Clause Waiver or any Extended Coverage Endorsement attached to this contract of insurance is hereby nullified, and also any Contribution Clause in any other endorsement or rider attached to this contract of insurance is hereby nullified except Contribution Clauses for the compliance with which the insured has received reduction in the rate charged or has received extension of the coverage to include hazards other than fire and compliance with such Contribution Clause is made a part of the consideration for insuring such other hazards. The Lender upon the payment to it of the full amount of its claim, will subrogate this Company (pro rata with all other insurers contributing to said payment) to all of the Lender's rights of contribution under said other insurance.

6. This Company reserves the right to cancel this policy at any time, as provided by its terms, but in such case this policy shall continue in force for the benefit of the Lender for ten (10) days after written notice of such cancellation is received by the Lender and shall then cease.

7. This policy shall remain in full force and effect as to the interest of the Lender for a period of ten (10) days after its expiration unless an acceptable policy in renewal thereof with loss thereunder payable to the Lender in accordance with the terms of this Lender's Loss Payable Endorsement, shall have been issued by some insurance company and accepted by the Lender.

8. Should legal title to and beneficial ownership of any of the property covered under this policy become vested in the Lender or its agents, insurance under this policy shall continue for the term thereof for the benefit of the Lender but, in such event, any privileges granted by this Lender's Loss Payable Endorsement which are not also granted the insured under the terms and conditions of this policy and/or under other riders or endorsements attached thereto shall not apply to the insurance hereunder as respects such property.

9. All notices herein provided to be given by the Company to the Lender in connection with this policy and this Lender's Loss Payable Endorsement shall be mailed to or delivered to the Lender at its office or branch at.................................................................
or, if none be specified, at its head office at.................................................................................................................................

Attached to Policy No. SMP2397994 of Pacific Insurance Company

Issued to Corporation of the Catholic Archbishop of Anchorage, Etal

Agency at Anchorage, Alaska                Date 4-15-75

As respects 1971 Detroit Trailer, S# GJ041397(location # 17) and
1968 Broadmore Trailer, S# 1387 ((location # 27), Kenai, Alaska

Approved:
Board of Fire Underwriters of the Pacific,
California Bankers' Association.
Committee on Insurance.                     James R. McKeown        Agent.

Exhibit _E_
Page _24_ of _100_    24

S.F. FORM

Form 438BFU
(Rev. May 1, 1942)

## LENDER'S LOSS PAYABLE ENDORSEMENT

1. Loss or damage, if any, under this policy shall be paid to William and Patricia Lewis
8000 Brink Court
Anchorage, Alaska   99504
its successors and assigns, hereinafter referred to as "the Lender," in whatever form or capacity its interests may appear and whether said interest be vested in said Lender in its individual or in its disclosed or undisclosed fiduciary or representative capacity, or otherwise, or vested in a nominee or trustee of said Lender.

2. The insurance under this policy, or any rider or endorsement attached thereto, as to the interest only of the Lender, its successors and assigns, shall not be invalidated nor suspended: (a) by any error, omission, or change respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy by virtue of any mortgage or trust deed; (c) by any breach of warranty, act, omission, neglect, or non-compliance with any of the provisions of this policy, including any and all riders now or hereafter attached thereto, by the named insured, the borrower, mortgagor, trustor, vendee, owner, tenant, warehouseman, custodian, occupant, or by the agents of either or any of them or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, whether occurring before or after the attachment of this endorsement, or whether before or after a loss, which under the provisions of this policy of insurance or of any rider or endorsement attached thereto would invalidate or suspend the insurance as to the named insured, excluding herefrom, however, any acts or omissions of the Lender while exercising active control and management of the property.

3. In the event of failure of the insured to pay any premium or additional premium which shall be or become due under the terms of this policy or on account of any change in occupancy or increase in hazard not permitted by this policy, this Company agrees to give written notice to the Lender of such non-payment of premium after sixty (60) days from and within one hundred and twenty (120) days after due date of such premium and it is a condition of the continuance of the rights of the Lender hereunder that the Lender when so notified in writing by this Company of the failure of the insured to pay such premium shall pay or cause to be paid the premium due within ten (10) days following receipt of the Company's demand in writing therefor. If the Lender shall decline to pay said premium or additional premium, the rights of the Lender under this Lender's Loss Payable Endorsement shall not be terminated before ten (10) days after receipt of said written notice by the Lender.

4. Whenever this Company shall pay to the Lender any sum for loss or damage under this policy and shall claim that as to the insured no liability therefor exists, this Company, at its option, may pay to the Lender the whole principal sum and interest and other indebtedness due or to become due from the insured, whether secured or unsecured, (with refund of all interest not accrued), and this Company, to the extent of such payment, shall thereupon receive a full assignment and transfer, without recourse, of the debt and all rights and securities held as collateral thereto.

5. If there be any other insurance upon the within described property, this Company shall be liable under this policy as to the Lender for the proportion of such loss or damage that the sum hereby insured bears to the entire insurance of similar character on said property under policies held by, payable to and expressly consented to by the Lender. Any Contribution Clause included in any Fallen Building Clause Waiver or any Extended Coverage Endorsement attached to this contract of insurance is hereby nullified, and also any Contribution Clause in any other endorsement or rider attached to this contract of insurance is hereby nullified except Contribution Clauses for the compliance with which the insured has received reduction in the rate charged or has received extension of the coverage to include hazards other than fire and compliance with such Contribution Clause is made a part of the consideration for insuring such other hazards. The Lender upon the payment to it of the full amount of its claim, will subrogate this Company (pro rata with all other insurers contributing to said payment) to all of the Lender's rights of contribution under said other insurance.

6. This Company reserves the right to cancel this policy at any time, as provided by its terms, but in such case this policy shall continue in force for the benefit of the Lender for ten (10) days after written notice of such cancellation is received by the Lender and shall then cease.

7. This policy shall remain in full force and effect as to the interest of the Lender for a period of ten (10) days after its expiration unless an acceptable policy in renewal thereof with loss thereunder payable to the Lender in accordance with the terms of this Lender's Loss Payable Endorsement, shall have been issued by some insurance company and accepted by the Lender.

8. Should legal title to and beneficial ownership of any of the property covered under this policy become vested in the Lender or its agents, insurance under this policy shall continue for the term thereof for the benefit of the Lender but, in such event, any privileges granted by this Lender's Loss Payable Endorsement which are not also granted the insured under the terms and conditions of this policy and/or under other riders or endorsements attached thereto shall not apply to the insurance hereunder as respects such property.

9. All notices herein provided to be given by the Company to the Lender in connection with this policy and this Lender's Loss Payable Endorsement shall be mailed to or delivered to the Lender at its office or branch at .................................................................
or, if none be specified, at its head office at .....................................................................................................................

Attached to Policy No. SMP 2397994 of Pacific Insurance Company

Issued to Corporation of the Catholic Archbishop of Anchorage, Etal

Agency at Anchorage, Alaska                            Date 4-15-75
As respects rectory, at 2111 Muldoon Road, Anchorage, Alaska

Approved:    (Location #10)

Board of Fire Underwriters of the Pacific.
California Bankers' Association.
Committee on Insurance.

James R. McKeown                            Agent.

S.F. FORM

Form 438BFU
(Rev. May 1, 1942)

## LENDER'S LOSS PAYABLE ENDORSEMENT

1. Loss or damage, if any, under this policy shall be paid to....Hiram L. and Alice Wells......................
.........................................Star Route A, Box 198........................................
.........................................Anchorage, Alaska 99502........................................
its successors and assigns, hereinafter referred to as "the Lender," in whatever form or capacity its interests may appear and whether said interest be vested in said Lender or in its individual or in its disclosed or undisclosed fiduciary or representative capacity, or otherwise, or vested in a nominee or trustee of said Lender.

2. The insurance under this policy, or any rider or endorsement attached thereto, as to the interest only of the Lender, its successors and assigns, shall not be invalidated nor suspended: (a) by any error, omission, or change respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy by virtue of any mortgage or trust deed; (c) by any breach of warranty, act, omission, neglect, or non-compliance with any of the provisions of this policy, including any and all riders now or hereafter attached thereto, by the named insured, the borrower, mortgagor, trustor, vendee, owner, tenant, warehouseman, custodian, occupant, or by the agents of either or any of them or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, whether occurring before or after the attachment of this endorsement, or whether before or after a loss, which under the provisions of this policy of insurance or of any rider or endorsement attached thereto would invalidate or suspend the insurance as to the named insured, excluding herefrom, however, any acts or omissions of the lender while exercising active control and management of the property.

3. In the event of failure of the insured to pay any premium or additional premium which shall be or become due under the terms of this policy or on account of any change in occupancy or increase in hazard not permitted by this policy, this Company agrees to give written notice to the Lender of such non-payment of premium after sixty (60) days from and within one hundred and twenty (120) days after due date of such premium and it is a condition of the continuance of the rights of the Lender hereunder that the Lender when so notified in writing by this Company of the failure of the insured to pay such premium shall pay or cause to be paid the premium due within ten (10) days following receipt of the Company's demand in writing therefor. If the Lender shall decline to pay said premium or additional premium, the rights of the Lender under this Lender's Loss Payable Endorsement shall not be terminated before ten (10) days after receipt of said written notice by the Lender.

4. Whenever this Company shall pay to the Lender any sum for loss or damage under this policy and shall claim that as to the insured no liability therefor exists, this Company, at its option, may pay to the Lender the whole principal sum and interest and other indebtedness due or to become due from the insured, whether secured or unsecured, (with refund of all interest not accrued), and this Company, to the extent of such payment, shall thereupon receive a full assignment and transfer, without recourse, of the debt and all rights and securities held as collateral thereto.

5. If there be any other insurance upon the within described property, this Company shall be liable under this policy as to the Lender for the proportion of such loss or damage that the sum hereby insured bears to the entire insurance of similar character on said property under policies held by, payable to and expressly consented to by the Lender. Any Contribution Clause included in any Fallen Building Clause Waiver or any Extended Coverage Endorsement attached to this contract of insurance is hereby nullified, and also any Contribution Clause in any other endorsement or rider attached to this contract of insurance is hereby nullified except Contribution Clauses for the compliance with which the insured has received reduction in the rate charged or has received extension of the coverage to include hazards other than fire and compliance with such Contribution Clause is made a part of the consideration for insuring such other hazards. The Lender upon the payment to it of the full amount of its claim, will subrogate this Company (pro rata with all other insurers contributing to said payment) to all of the Lender's rights of contribution under said other insurance.

6. This Company reserves the right to cancel this policy at any time, as provided by its terms, but in such case this policy shall continue in force for the benefit of the Lender for ten (10) days after written notice of such cancellation is received by the Lender and shall then cease.

7. This policy shall remain in full force and effect as to the interest of the Lender for a period of ten (10) days after its expiration unless an acceptable policy in renewal thereof with loss thereunder payable to the Lender in accordance with the terms of this Lender's Loss Payable Endorsement, shall have been issued by some insurance company and accepted by the Lender.

8. Should legal title to and beneficial ownership of any of the property covered under this policy become vested in the Lender or its agents, insurance under this policy shall continue for the term thereof for the benefit of the Lender but, in such event, any privileges granted by this Lender's Loss Payable Endorsement which are not also granted the insured under the terms and conditions of this policy and/or under other riders or endorsements attached thereto shall not apply to the insurance hereunder as respects such property.

9. All notices herein provided to be given by the Company to the Lender in connection with this policy and this Lender's Loss Payable Endorsement shall be mailed to or delivered to the Lender at its office or branch at..........................................
or, if none be specified, at its head office at.................................................

Attached to Policy No...SMP..2397994..of.....Pacific..Insurance..Company......................

Issued to.......Corporation..of..the..Catholic..Archbishop..of..Anchorage,..Etal......

Agency at.......Anchorage,..Alaska.................... Date...4-15-75..............

As respects Lot 3 of resubdivided Lot 2, Block 2, New Lot Addition, Anchorage Recording District, 3005 West 34th Street, Anchorage,

Approved:   Alaska                         (Location #9)

Board of Fire Underwriters of the Pacific,
California Bankers' Association,
Committee on Insurance.                     James R McKeown              Agent.

Exhibit E
Page 26 of 100
26

S.F. FORM

**6**

Form 438BFU
(Rev. May 1, 1942)

## LENDER'S LOSS PAYABLE ENDORSEMENT

1. Loss or damage, if any, under this policy shall be paid to **First Federal Savings & Loan**
   **305 5th Avenue**
   **(1st Deed of Trust)**                **Anchorage, Alaska**

its successors and assigns, hereinafter referred to as "the Lender," in whatever form or capacity its interests may appear and whether said interest be vested in said Lender in its individual or in its disclosed or undisclosed fiduciary or representative capacity, or otherwise, or vested in a nominee or trustee of said Lender.

2. The insurance under this policy, or any rider or endorsement attached thereto, as to the interest only of the Lender, its successors and assigns, shall not be invalidated nor suspended: (a) by any error, omission, or change respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy by virtue of any mortgage or trust deed; (c) by any breach of warranty, act, omission, neglect, or non-compliance with any of the provisions of this policy, including any and all riders now or hereafter attached thereto, by the named insured, the borrower, mortgagor, trustor, vendee, owner, tenant, warehouseman, custodian, occupant, or by the agents of either or any of them or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, whether occurring before or after the attachment of this endorsement, or whether before or after a loss, which under the provisions of this policy of insurance or of any rider or endorsement attached thereto would invalidate or suspend the insurance as to the named insured, excluding herefrom, however, any acts or omissions of the lender while exercising active control and management of the property.

3. In the event of failure of the insured to pay any premium or additional premium which shall be or become due under the terms of this policy or on account of any change in occupancy or increase in hazard not permitted by this policy, this Company agrees to give written notice to the Lender of such non-payment of premium after sixty (60) days from and within one hundred and twenty (120) days after due date of such premium and it is a condition of the continuance of the rights of the Lender hereunder that the Lender when so notified in writing by this Company of the failure of the insured to pay such premium shall pay or cause to be paid the premium due within ten (10) days following receipt of the Company's demand in writing therefor. If the Lender shall decline to pay said premium or additional premium, the rights of the Lender under this Lender's Loss Payable Endorsement shall not be terminated before ten (10) days after receipt of said written notice by the Lender.

4. Whenever this Company shall pay to the Lender any sum for loss or damage under this policy and shall claim that as to the insured no liability therefor exists, this Company, at its option, may pay to the Lender the whole principal sum and interest and other indebtedness due or to become due from the insured, whether secured or unsecured, (with refund of all interest not accrued), and this Company, to the extent of such payment, shall thereupon receive a full assignment and transfer, without recourse, of the debt and all rights and securities held as collateral thereto.

5. If there be any other insurance upon the within described property, this Company shall be liable under this policy as to the Lender for the proportion of such loss or damage that the sum hereby insured bears to the entire insurance of similar character as to said property under policies held by, payable to and expressly consented to by the Lender. Any Contribution Clause included in any Fallen Building Clause Waiver or any Extended Coverage Endorsement attached to this contract of insurance is hereby nullified, and also any Contribution Clause in any other endorsement or rider attached to this contract of insurance is hereby nullified except Contribution Clauses for the compliance with which the insured has received reduction in the rate charged or has received extension of the coverage to include hazards other than fire and compliance with such Contribution Clause is made a part of the consideration for insuring such other hazards. The Lender upon the payment to it of the full amount of its claim, will subrogate this Company (pro rata with all other insurers contributing to said payment) to all of the Lender's rights of contribution under said other insurance.

6. This Company reserves the right to cancel this policy at any time, as provided by its terms, but in such case this policy shall continue in force for the benefit of the Lender for ten (10) days after written notice of such cancellation is received by the Lender and shall then cease.

7. This policy shall remain in full force and effect as to the interest of the Lender for a period of ten (10) days after its expiration unless an acceptable policy in renewal thereof with loss thereunder payable to the Lender in accordance with the terms of this Lender's Loss Payable Endorsement, shall have been issued by some insurance company and accepted by the Lender.

8. Should legal title to and beneficial ownership of any of the property covered under this policy become vested in the Lender or its agents, insurance under this policy shall continue for the term thereof for the benefit of the Lender but, in such event, any privileges granted by this Lender's Loss Payable Endorsement which are not also granted the insured under the terms and conditions of this policy and/or under other riders or endorsements attached thereto shall not apply to the insurance hereunder as respects such property.

9. All notices herein provided to be given by the Company to the Lender in connection with this policy and this Lender's Loss Payable Endorsement shall be mailed to or delivered to the Lender at its office or branch at................................................
or, if none be specified, at its head office at.................................................................................................................................

Attached to Policy No. **SMP 2397994** of **Pacific Insurance Company**.
Issued to....**Corporation of the Catholic Archbishop of Anchorage, Etal**
Agency at.....**Anchorage, Alaska**..........Date...**4-15-72**............
As respects Convent, situated; Tract 6 (renamed "Trackel Reown)
Survey 3218, Kodiak, Alaska (location #32)
Approved
Board of Fire Underwriters of the Pacific.
California Bankers' Association,
Committee on Insurance.

**James R. McKeown**                          Agent.

S.F. FORM

Form 438BFU
(Rev. May 1, 1942)

## LENDER'S LOSS PAYABLE ENDORSEMENT

1. Loss or damage, if any, under this policy shall be paid to Ada A. Somers, Escrow
c/o National Bank of Alaska
(2nd Deed of Trust)    Kodiak, Alaska  99615
its successors and assigns, hereinafter referred to as "the Lender," in whatever form or capacity its interests may appear and whether said interest be vested in said Lender in its individual or in its disclosed or undisclosed fiduciary or representative capacity, or otherwise, or vested in a nominee or trustee of said Lender.

2. The insurance under this policy, or any rider or endorsement attached thereto, as to the interest only of the Lender, its successors and assigns, shall not be invalidated nor suspended: (a) by any error, omission, or change respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy by virtue of any mortgage or trust deed; (c) by any breach of warranty, act, omission, neglect, or non-compliance with any of the provisions of this policy, including any and all riders now or hereafter attached thereto, by the named insured, the borrower, mortgagor, trustor, vendee, owner, tenant, warehouseman, custodian, occupant, or by the agents of either or any of them or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, whether occurring before or after the attachment of this endorsement, or whether before or after a loss, which under the provisions of this policy of insurance or of any rider or endorsement attached thereto would invalidate or suspend the insurance as to the named insured, excluding herefrom, however, any acts or omissions of the lender while exercising active control and management of the property.

3. In the event of failure of the insured to pay any premium or additional premium which shall be or become due under the terms of this policy or on account of any change in occupancy or increase in hazard not permitted by this policy, this Company agrees to give written notice to the Lender of such non-payment of premium after sixty (60) days from and within one hundred and twenty (120) days after due date of such premium and it is a condition of the continuance of the rights of the Lender hereunder that the Lender when so notified in writing by this Company of the failure of the insured to pay such premium shall pay or cause to be paid the premium due within ten (10) days following receipt of the Company's demand in writing therefor. If the Lender shall decline to pay said premium or additional premium, the rights of the Lender under this Lender's Loss Payable Endorsement shall not be terminated before ten (10) days after receipt of said written notice by the Lender.

4. Whenever this Company shall pay to the Lender any sum for loss or damage under this policy and shall claim that as to the insured no liability therefor exists, this Company, at its option, may pay to the Lender the whole principal sum and interest and other indebtedness due or to become due from the insured, whether secured or unsecured, (with refund of all interest not accrued), and this Company, to the extent of such payment, shall thereupon receive a full assignment and transfer, without recourse, of the debt and all rights and securities held as collateral thereto.

5. If there be any other insurance upon the within described property, this Company shall be liable under this policy as to the Lender for the proportion of such loss or damage that the sum hereby insured bears to the entire insurance of similar character on said property under policies held by, payable to and expressly consented to by the Lender. Any Contribution Clause included in any Fallen Building Clause Waiver or any Extended Coverage Endorsement attached to this contract of insurance is hereby nullified, and also any Contribution Clause in any other endorsement or rider attached to this contract of insurance is hereby nullified except Contribution Clauses for the compliance with which the insured has received reduction in the rate charged or has received extension of the coverage to include hazards other than fire and compliance with such Contribution Clause is made a part of the consideration for insuring such other hazards. The Lender upon the payment to it of the full amount of its claim, will subrogate this Company (pro rata with all other insurers contributing to said payment) to all of the Lender's rights of contribution under said other insurance.

6. This Company reserves the right to cancel this policy at any time, as provided by its terms, but in such case this policy shall continue in force for the benefit of the Lender for ten (10) days after written notice of such cancellation is received by the Lender and shall then cease.

7. This policy shall remain in full force and effect as to the interest of the Lender for a period of ten (10) days after its expiration unless an acceptable policy in renewal thereof with loss thereunder payable to the Lender in accordance with the terms of this Lender's Loss Payable Endorsement, shall have been issued by some insurance company and accepted by the Lender.

8. Should legal title to and beneficial ownership of any of the property covered under this policy become vested in the Lender or its agents, insurance under this policy shall continue for the term thereof for the benefit of the Lender but, in such event, any privileges granted by this Lender's Loss Payable Endorsement which are not also granted the insured under the terms and conditions of this policy and/or under other riders or endorsements attached thereto shall not apply to the insurance hereunder as respects such property.

9. All notices herein provided to be given by the Company to the Lender in connection with this policy and this Lender's Loss Payable Endorsement shall be mailed to or delivered to the Lender at its office or branch at................................................................
or, if none be specified, at its head office at................................................................
Attached to Policy No. SMP 2397994/ Pacific Insurance Company
Issued to.....Corporation of the Catholic Archbishop of Anchorage, Etal
Agency at......Anchorage, Alaska..........Date.....4-15-75...........
As respects  Convent Situated; Tract A (renamed Tract B) of US Survey
Approved:    3218, Kodiak, Alaska (Location #32)
Board of Fire Underwriters of the Pacific,                    James K. McKeown    Agent.
California Bankers' Association,
Committee on Insurance.

S.F. FORM

Form 438BFU
(Rev. May 1, 1942)

## LENDER'S LOSS PAYABLE ENDORSEMENT

1. Loss or damage, if any, under this policy shall be paid to **Federal National Mortgage Assoc.** **c/o First National Bank of Anchorage, Box 720, FHA Department** **Anchorage, Alaska 99510** its successors and assigns, hereinafter referred to as "the Lender," in whatever form or capacity its interests may appear and whether said interest be vested in said Lender in its individual or in its disclosed or undisclosed fiduciary or representative capacity, or otherwise, or vested in a nominee or trustee of said Lender.

2. The insurance under this policy, or any rider or endorsement attached thereto, as to the interest only of the Lender, its successors and assigns, shall not be invalidated nor suspended: (a) by any error, omission, or change respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy by virtue of any mortgage or trust deed; (c) by any breach of warranty, act, omission, neglect, or non-compliance with any of the provisions of this policy, including any and all riders now or hereafter attached thereto, by the named insured, the borrower, mortgagor, trustor, vendee, owner, tenant, warehouseman, custodian, occupant, or by the agents of either or any of them or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, whether occurring before or after the attachment of this endorsement, or whether before or after a loss, which under the provisions of this policy of insurance or of any rider or endorsement attached thereto would invalidate or suspend the insurance as to the named insured, excluding herefrom, however, any acts or omissions of the Lender while exercising active control and management of the property.

3. In the event of failure of the insured to pay any premium or additional premium which shall be or become due under the terms of this policy or on account of any change in occupancy or increase in hazard not permitted by this policy, this Company agrees to give written notice to the Lender of such non-payment of premium after sixty (60) days from and within one hundred and twenty (120) days after due date of such premium and is is a condition of the continuance of the rights of the Lender hereunder that the Lender when so notified in writing by this Company of the failure of the insured to pay such premium shall pay or cause to be paid the premium due within ten (10) days following receipt of the Company's demand in writing therefor. If the Lender shall decline to pay said premium or additional premium, the rights of the Lender under this Lender's Loss Payable Endorsement shall not be terminated before ten (10) days after receipt of said written notice by the Lender.

4. Whenever this Company shall pay to the Lender any sum for loss or damage under this policy and shall claim that as to the insured no liability therefor exists, this Company, at its option, may pay to the Lender the whole principal sum and interest and other indebtedness due or to become due from the insured, whether secured or unsecured, (with refund of all interest not accrued), and this Company, to the extent of such payment, shall thereupon receive a full assignment and transfer, without recourse, of the debt and all rights and securities held as collateral thereto.

5. If there be any other insurance upon the within described property, this Company shall be liable under this policy as to the Lender for the proportion of such loss or damage that the sum hereby insured bears to the entire insurance of similar character on said property under policies held by, payable to and expressly consented to by the Lender. Any Contribution Clause included in any Fallen Building Clause Waiver or any Extended Coverage Endorsement attached to this contract of insurance is hereby nullified, and also any Contribution Clause in any other endorsement or rider attached to this contract of insurance is hereby nullified except Contribution Clauses for the compliance with which the insured has received reduction in the rate charged or has received extension of the coverage to include hazards other than fire and compliance with such Contribution Clause is made a part of the consideration for insuring such other hazards. The Lender upon the payment to it of the full amount of its claim, will subrogate this Company (pro rata with all other insurers contributing to said payment) to all of the Lender's rights of contribution under said other insurance.

6. This Company reserves the right to cancel this policy at any time, as provided by its terms, but in such case this policy shall continue in force for the benefit of the Lender for ten (10) days after written notice of such cancellation is received by the Lender and shall then cease.

7. This policy shall remain in full force and effect as to the interest of the Lender for a period of ten (10) days after its expiration unless an acceptable policy in renewal thereof with loss thereunder payable to the Lender in accordance with the terms of this Lender's Loss Payable Endorsement, shall have been issued by some insurance company and accepted by the Lender.

8. Should legal title to and beneficial ownership of any of the property covered under this policy become vested in the Lender or its agents, insurance under this policy shall continue for the term thereof for the benefit of the Lender but, in such event, any privileges granted by this Lender's Loss Payable Endorsement which are not also granted the insured under the terms and conditions of this policy and/or under other riders or endorsements attached thereto shall not apply to the insurance hereunder as respects such property.

9. All notices herein provided to be given by the Company to the Lender in connection with this policy and this Lender's Loss Payable Endorsement shall be mailed to or delivered to the Lender at its office or branch at **Anchorage, Alaska** or, if none be specified, at its head office at.......

Attached to Policy No. **SMP 2397994** of **Pacific Insurance Company**

Issued to **Corporation of the Catholic Archbishop of Anchorage, Etal**

Agency at **Anchorage, Alaska**    D...**4-15-75**

Approved:
Board of Fire Underwriters of the Pacific.
California Bankers' Association.
Committee on Insurance.

*James R. McKeown*

**James R. McKeown**    Agent

Exhibit ___E___
Page ___29___ of ___100___

29

SPECIFIC PROPERTY FORM                Attached to and forming part of        SMP 2397994

Issued to  Corporation of the Catholic Archbishop of Anchorage, Etal

by       Pacific Insurance Company
                                                                            at its Agency

located (city and state)  Anchorage, Alaska              Date  4-15-75

SUBJECT TO ALL OF THE STIPULATIONS, LIMITATIONS, CONDITIONS AND EXCLUSIONS IN THE POLICY OF WHICH THIS FORM
CONSTITUTES A PART AND SUBJECT ALSO TO THE PROVISIONS OF THIS FORM, THIS POLICY COVERS:

1.   On property scheduled herein or as per schedule attached.

| Item No. | Description | Manufacturer's name, serial number or other identification | Amount of Insurance |
|---|---|---|---|
| | Per schedule attached | | $7,775.00 |

2.                          THIS POLICY INSURES AGAINST:

Direct physical loss of or damage to the property except as hereinafter provided, by.

3                        THIS POLICY DOES NOT INSURE AGAINST:

(a)  Loss or damage caused by insects, vermin, wear and tear, gradual deterioration, inherent vice or defect, dampness of atmosphere or extremes of
     temperature, rust, mechanical breakdown or derangement;
(b)  Infidelity of insured's employees or persons to whom the property is entrusted (carriers for hire excepted);
(c)  Breakage of glass (lenses of telescopes and scientific instruments excepted) and articles of a fragile or brittle nature, chipping, marring or
     scratching, unless caused by theft or attempt thereat, vandalism or malicious mischief, fire, lightning, windstorm, earthquake, flood, explosion,
     falling aircraft, rioters, strikers, collapse of building or other structure, or by accident to a transporting conveyance (but only when and to the
     same extent that such perils are otherwise covered under this policy);
(d)  Loss or damage by any process or while the property is actually being worked upon and resulting therefrom, unless caused by fire or explosion;
(e)  Loss or damage to electrical apparatus caused by electricity other than lightning unless fire ensues and then only for loss or damage by such
     ensuing fire;
(f)  Loss or damage to property on exhibition at Fairgrounds or on the premises of any National or International Exposition unless such premises
     are specifically described in the policy by endorsement;
(g)  Loss, damage or expense caused by or resulting from testing.
(h)  Loss or damage caused by or resulting from: (1) hostile or warlike action in time of peace or war, including action in hindering, combating or
     defending against an actual, impending or expected attack, (a) by any government or sovereign power (de jure or de facto), or by any
     authority maintaining or using military, naval or air forces; or (b) by military, naval or air forces, or (c) by an agent of any such government,
     power, authority or forces; (2) any weapon of war employing atomic fission or radioactive force whether in time of peace or war; (3)
     insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending
     against such an occurrence, seizure or destruction under quarantine or customs regulations, confiscation by order of any government or public
     authority, or risks of contraband or illegal transportation or trade;
(i)  Loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be
     direct or indirect, proximate or remote, or in in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this
     policy; however, subject to the foregoing and all provisions of this policy, direct loss by fire resulting from nuclear reaction or nuclear radiation
     or radioactive contamination is insured against by this policy.

4.   DEDUCTIBLE. Each claim for loss or damage shall be adjusted separately and from the amount of each adjusted claim, the sum of _____
     One Hundred _____ Dollars shall be deducted.

5.   TERRITORIAL LIMITS. This insurance covers in respect of the aforementioned property wherever same may be within and between the states of
     the United States, the District of Columbia and Canada, excluding XXXXXXXXHawaii.

MDC

M-52 REV. 1-72

## SPECIAL CONDITIONS

Coinsurance. This Company shall be liable in no event or loss for no greater than one thereof than the amount bears to the actual value of the property insured hereunder at the time when a loss shall happen.

2. Other Insurance. If at the time of loss or damage there is available to the insured or uninsured fixtures in any other interested party any other insurance which would apply in the absence of this policy the insurance under this policy shall apply only as excess insurance over such other insurance.

3. Reinstatement (a) Scheduled Property – The amount of insurance and the applicable limit of liability upon the occurrence of any loss covered hereunder, is reduced by the amount of such loss. (b) Unscheduled Property – Each claim paid hereunder reduces the amount of insurance by the sum paid, but the amount of such loss shall be restated automatically and a pro rata additional premium shall be payable from the date of the occurrence when the amount of such loss is determined.

4. Machinery. In the event of loss or damage to machinery consisting, when complete for sale or use, of several parts, the Company shall only be liable for the value of the partial loss or damaged, including the cost of installation.

5. Labels. In the event of loss of or damage to labels, capsules or wrappers, the loss shall be adjusted on the basis of an amount sufficient to pay the cost of new labels, capsules or wrappers.

6. Impairment of Recovery Rights. Any act or agreement by the insured before or after loss or damage whereby any right of the insured to recover in whole or in part for loss or damage to property covered hereunder against any carrier, bailee or other part, liable therefor, is released, impaired or lost, shall render this policy null and void but the insured's right to retain or recover the premium shall not be affected. The Company is not liable for any loss or damage which, without its written consent, has been settled or compromised by the insured. It shall, however, be permissible for the insured without prejudice to this insurance, to accept the ordinary Bills of Lading or Shipping Receipts issued by carriers limiting their liability to less than the actual value.

7. Suit and Labor. In case of loss or imminent loss or damage, it shall be lawful and necessary for the insured, its or their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the property insured hereunder, or any part thereof without prejudice to this insurance, nor shall the acts of the insured or the Company in recovering, saving and preserving the property insured in case of loss or damage be considered a waiver or an acceptance of abandonment. The expenses so incurred shall be borne by the insured and the Company proportionately to the extent of their respective interests.

8. Company's Options. It shall be optional with the Company to take all, or any part, of the property at the agreed or appraised value, or to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within sixty (60) days after the receipt of the proof of loss herein required.

9. Abandonment. There can be no abandonment to the Company of any property.

10. Assignment of Policy. This policy shall be void if assigned or transferred without the written consent of this Company.

11. Civil Authority. Property covered under this policy against the peril of fire is also covered against the peril of damage or destruction by civil authority during a conflagration and for the purpose of retarding the same; provided that neither such conflagration nor such damage or destruction is caused or contributed to by a peril otherwise excluded herein.

12. Cancellation by Non-Payment of Premium. It is a condition of this policy that if the premium be not paid within sixty days from the date of attaching, this policy shall be null and void during the time the premium is past due and unpaid.

Clause 9, Loss Clause and Clause 10, Protection of Property contained in the General Conditions of this policy are hereby deemed waived.

## SPECIFIC PROPERTY SCHEDULE

1.  Zeiss Macro Lens, shutter, and lens mount          Amount – $  300.
    S# 4847371

2.  Leitz 2 1/4 x 2 1/4 projector and lens             Amount – $  400.
    S# 322052

3.  Hasselblad system                                  Amount – $1,600.
    S# UP137683, UH307329, 5152805

4.  Linhof Technika 4 x 5-V                            Amount – $1,300.
    S# 2171765

5.  Sironar lens, 150MM in Copal                       Amount – $  300.
    S# 6340693

6.  Zeiss Biogon 75MM                                  Amount – $1,400.
    S# NR4118405

7.  Luna Pro                                           Amount – $   75.
    S# 549568

8.  Symmar 300 MM lens in 712192 Copal                 Amount – $  700.
    S# 10717359

9.  Zeiss 500MM Hasselbad lens                         Amount – $1,300.
    S# 5364348

10. Tripods, cases, and minor accessories              Amount – $  400.
                                                       Total    $7,775.

S.F. FORM



FORM 99
(Oct. 1968)

# CERTIFICATE OF INSURANCE

| Certificate issued to<br>First National Bank of Anchorage<br>South Center Branch<br>P.O. Box 42090<br>Anchorage, Alaska   99509<br>(1st Mortgagee) | Name and address of Insured<br>Corporation of the Catholic Archbishop<br>of Anchorage, Etal<br>Box 2239<br>Anchorage, Alaska   99510 |
|---|---|

| Perils insured against<br>[x] Fire and Lightning          [ ] Sprinkler Leakage<br>[x] Extended Coverage          [ ]<br>[x] Vandalism & Malicious Mischief  [ ] | $ 1,000   deductible, applying to<br>All Perils |
|---|---|

Location of property covered
  (1) Various, including rental dwelling situated 7528 Stanley Drive and rectory
  (2)  situated 7538 Stanley Drive, Anchorage, Alaska
  (3)
  (4)

| Policy<br>Number | Insurer | Term<br>From | To | Coverage &<br>Locations | Amount of<br>Insurance |
|---|---|---|---|---|---|
| SMP 2397994 | Pacific Insurance Company | 4-15-75 | 4-15-78 | BL-BE ~ A | $6,472,683. |

Legend:
  SP —Specific insurance
  BL—Blanket insurance
  R —Reporting form—amount of ins.
     shown is limit of liability for all
     contributing insurance

  B  —Building(s)
  BE—Building(s) & Equipment
  E  —Equipment
  ES—Equipment & Stock
  S  —Stock

  1—Location #1
  2—Location #2
  3—Location #3
  4—Location #4
  A—All locations

[ ] Mortgagee Clause (requires 10 day written notice of cancellation to mortgagee)
[x] Lenders Loss Payable Endorsement (policy continues in force 10 days after written notice of
    cancellation is received by lender)
[ ] Other payee clause (copy attached to this Certificate)
Policies contain clause indicated above. Loss, if any, payable to the party to whom this Certificate
is issued, unless otherwise noted below.

I certify that the above described policies exist and cover only in accordance with the policy terms.

_James R. McKeown_                      Agent                       April 15, 1975
        (SIGNATURE)                            (TITLE)                    (DATE)
James R. McKeown
LaBow, Haynes of Alaska, Inc., 840 "K" St., Anchorage, Alaska  99501
                    (FIRM AND ADDRESS)

THIS CERTIFICATE IS FOR INFORMATION ONLY; IT IS NOT A CONTRACT OF INSURANCE BUT
ATTESTS THAT A POLICY AS NUMBERED HEREIN, AND AS IT STANDS AT THE DATE OF THIS
CERTIFICATE. HAS BEEN ISSUED BY THE INSURER.           Exhibit _____E_____ 33
                                                        Page _33_ of _100_

S.F. FORM

FORM 99
(Oct. 1968)



## CERTIFICATE OF INSURANCE

| Certificate issued to<br>**Vernon E. & Maxine O. Uhlig**<br>**C/O First National Bank of**<br>**Anchorage, Escrow Department**<br>**P.O. Box 42090**<br>**Anchorage, Alaska   99509**<br>**(2nd Mortgagee)** | Name and address of Insured<br>**Corporation of the Catholic**<br>**Archbishop of Anchorage, Etal**<br>**Box 2239**<br>**Anchorage, Alaska   99510** |
|---|---|

| Perils insured against<br>[X] Fire and Lightning<br>[X] Extended Coverage<br>[X] Vandalism & Malicious Mischief | [ ] Sprinkler Leakage<br>[ ]<br>[ ] | **$1,000**   deductible, applying to<br>**All Perils** |
|---|---|---|

Location of property covered
(1) **Various, including rental dwelling situated 7528 Stanley Drive,**
(X) **and rectory situated 7538 Stanley Drive, Anchorage, Alaska**
(X)
(X)

| Policy<br>Number | Insurer | Term<br>From        To | Coverage &<br>Locations | Amount of<br>Insurance |
|---|---|---|---|---|
| SMP2397994 | Pacific Insurance Co. | 4-15-75/4-15-78 | BL-BE-A | $6,472,683. |

Legend:
SP —Specific insurance
BL —Blanket insurance
R —Reporting form—amount of ins.
   shown is limit of liability for all
   contributing insurance

B —Building(s)
BE—Building(s) & Equipment
E —Equipment
ES —Equipment & Stock
S —Stock

1—Location #1
2—Location #2
3—Location #3
4—Location #4
A—All locations

[ ] Mortgagee Clause (requires 10 day written notice of cancellation to mortgagee)
[X] Lenders Loss Payable Endorsement (policy continues in force 10 days after written notice of cancellation is received by lender)
[ ] Other payee clause (copy attached to this Certificate)
Policies contain clause indicated above. Loss, if any, payable to the party to whom this Certificate is issued, unless otherwise noted below.

I certify that the above described policies exist and cover only in accordance with the policy terms.

_James R. McKeown_

| Agent | April 15, 1975 |
|---|---|
| (TITLE) | (DATE) |

James R. McKeown

LaBow, Haynes of Alaska, Inc. 840 "K" St., Anchorage, Alaska   99501
(FIRM AND ADDRESS)

THIS CERTIFICATE IS FOR INFORMATION ONLY; IT IS NOT A CONTRACT OF INSURANCE BUT ATTESTS THAT A POLICY AS NUMBERED HEREIN, AND AS IT STANDS AT THE DATE OF THIS CERTIFICATE, HAS BEEN ISSUED BY THE INSURER.

Exhibit __E__   34

Page __34__ of __100__