IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CONTINENTAL INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CATHOLIC BISHOP OF NORTHERN ALASKA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Case No. 3:06-cv-00019 TMB

**MEMORANDUM OF COUNSEL IN SUPPORT OF CBNA's MOTION FOR SUMMARY JUDGMENT ON EXISTENCE, COVERAGE, AND TERMS OF POLICY COVERING CBNA**

## I. Introduction

This is a "missing policy" declaratory relief action. Continental Insurance Company ("Continental") seeks "a judicial declaration that it has no duty to defend or indemnify CBNA [Catholic Bishop of Northern Alaska] for any liability stemming from . . . Underlying Abuse Claims."[1] Although missing in its original issued form, the policy issued by Continental to CBNA is established from undisputed evidence. For the reasons that follow below, there are no genuine issues of fact in dispute as to the salient facts establishing an insurance policy for CBNA's benefit. CBNA's policy with Continental is gleaned from the undisputed correspondence, accounting records, and testimony describing CBNA's policy as being identical to the policies located as to CBNA's sister diocese, the Archdiocese of Anchorage (i.e. Exhibits D and E to this memorandum). The insurance terms are further established through the undisputed

_____

[1] *Complaint for Declaratory Relief* at p. 15.

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

testimony of insurance personnel, including Continental's agents.  CBNA is entitled to summary judgment declaring it a Continental policyholder upon the undisputed terms noted below.

## II. **Facts Pertinent to Requested Relief**

Beginning in 2003, CBNA was served with the first of an evolving string of lawsuits alleging sexual abuse committed decades earlier by CBNA personnel.[2] CBNA tendered to CNA (a Continental affiliate)[3] those claims asserting "occurrences" falling within the timeframe of October, 1973 to April 15, 1979.  To support its tenders of defense, CBNA provided documents referencing Continental insurance policy numbers, insurance related forms, and accounting information.  These documents have since been authenticated by the deposition testimony of Continental underwriter Julian Robb and retired LaBow Haynes broker Juanita Brown.[4]

Despite diligent efforts, CBNA admittedly has not located the policy (including renewals) as originally issued by Continental approximately thirty years ago.  CBNA has, however, provided a "SMP" (i.e. "special multi peril) policy number (i.e. SMP 2 39 06 21).  CBNA has also provided the "SMP" policy forms issued by Continental to a

---

[2] The first such complaint was filed as *John Does 1-4 v. Catholic Bishop of Northern Alaska et al.*, 4BE-03-177 CI (Alaska Superior Court *filed* June 18, 2003).  There have been approximately a dozen other cases since filed, all of which allege sexual abuse committed decades ago.  The two cases that have thus far proceeded through trial ("evidentiary hearings") have resulted in judgments of dismissal as being time-barred under the applicable statute of limitations. *Jane Doe 2 v. Poole et al.*, 2NO-04-83 CI *pending appeal as* Alaska Supreme Court Case No. 12412; *Jane Doe 3 v. Poole et al.*, 2NO-05-56CI (Alaska Superior Court, *Final Judgment* entered October 1, 2007).

[3] *Continental's Disclosure Statement* filed with its complaint acknowledges the interrelationship of Continental to CNA Financial Corporation ("CNA").

[4] See *Depositions of Julian Robb and Juanita Brown* filed herewith and as discussed below.

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

CBNA's Motion for Summary Judgment MEMO
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 2 of 15

sister diocese, the Archdiocese of Anchorage.[5] Continental answered CBNA's tender with its "reservation of rights" letter of September 17, 2003.[6] That letter accepts the tender of defense subject to reserving the right to dispute coverage and reserving the right to obtain reimbursement for any defense.[7]

Continental filed its complaint on January 19, 2006. After answering the complaint, CBNA filed its motion to dismiss Continental's complaint as being inconsistent with Continental's 9/17/03 letter and controlling authority.[8] CBNA's motion

---

[5] *See* Exhibits A, B, and C accompanying this memorandum. These exhibits appear as Exhibits 3, 6, and 8 to the *Julian Robb Deposition* [Mr. Robb worked as a Continental "underwriter" during the 1973-76 CBNA insurance period].

[6] This letter appears as Exhibit 3 to CBNA's earlier filed *Memorandum of Counsel in Support of CBNA's Motion to Dismiss*, filed on June 1, 2006 (Clerk's Docket 14).

[7] *Id.* Federal courts in the ninth circuit have routinely stated that the duty to defend is much broader than the duty to indemnify. The duty to defend includes those claims for which the insurer is not required to indemnify. *City and County of Honolulu v. Churchill*, 167 F. Supp. 2d 1143, 1157 (D.Hawaii 2000). Specifically, "where a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage." *Id.* citing *First Ins. Co. of Hawaii Inc. v. State of Hawaii*, 66 Haw. 413, 417, 665 P.2d 648 (Hawaii 1983). Thus, the duty to defend is broader than the duty to indemnify. *Id.* citing *First Ins. Co. of Hawaii Inc.* 66 Haw. at 420. *See also Perkins v. Allstate Insurance Co.*, 63 F. Supp. 2d 1164, 1169 (C.D. Cal. 1999); and *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 24 Cal. Rptr. 2d 467, 474, 861 P.2d 1153, 1160 (Cal. 1993)(*Montrose I*). "An insurer may have a duty to defend even when it ultimately has no obligation to indemnify, either because no damages are awarded in the underlying action against the insured or because the actual judgment is for damages not covered under the policy." *Borg v. Transamerica Ins. Co.*, 47 Cal. App. 4th 448, 54 Cal. Rptr. 2d 811, 814 (Cal. App. 4th 1996).
Here, Continental cannot refute that it has a duty to defend CBNA regarding the underlying theories of liability, simply because it might not have to indemnify the insured. CBNA, as the overwhelming evidence suggests, had a policy during the relevant time period of October 1973 to April 15, 1979. The evidence supporting the insurance coverage requires that Continental act on behalf of its insured.

[8] *Memorandum of Counsel in Support of CBNA's Motion to Dismiss*, filed on June 1st, 2006 (Clerk's Docket 13).

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

CBNA's Motion for Summary Judgment MEMO
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 3 of 15

was denied by this court's *Order Denying Motion to Dismiss* entered on August 21, 2006.[9]

### III. **Standard for Summary Judgment**

Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[10] The moving party bears the initial burden of proving the absence of a genuine issue of material fact.[11] A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[12] If the moving party makes this showing, the burden then shifts to the non-moving party to "designate specific facts showing that there is a genuine issue for trial."[13] In making this determination, the factual inferences are viewed in the light most favorable to the non-moving party.[14]

### IV. **Discussion**

A.    **It is undisputed that Continental issued policy "SMP 2 39 06 21"to CBNA.**

Despite the absence of a comprehensive, consolidated policy in its original issued form, CBNA's policy of coverage is established through undisputed, separate evidence, coming from a variety of sources.

---

[9] (Clerk's Docket 31).
[10] Fed.R.Civ.P. 56(c).
[11] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[13] *Anderson*, 477 U.S. at 324.
[14] *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

CBNA's Motion for Summary Judgment MEMO
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 4 of 15

First, with its correspondence tendering defense of the underlying abuse litigation, CBNA provided its policy number ("SMP 2 39 06 21") and related correspondence, as acknowledged and recited in CNA's 9/17/03 letter.[15]

Second, insurance witnesses, in particular former Continental underwriter Julian Robb and LaBow Haynes broker Juanita Brown, have testified that a policy existed (with assigned number "SMP 2 39 06 21") and that the policy terms were similar to a known policy issued to CBNA's sister diocese, the Archdiocese of Anchorage. Julian Robb, testified as to Continental's underwriting practices during the 1970s. In particular, he authenticated various Continental generated documents reflecting that CBNA was carried as a policyholder, with coded reference to a "special multi-peril" (i.e. "SMP") policy, SMP 2 39 06 21.[16] Those undisputed documents establish that Continental's Alaska field agent (Evelyn Christopher) was messaging Continental underwriter Julian Robb for a policy to commence "10-14-73."[17] The authenticated Continental records further establish that it received payment from CBNA in 1974 of $13,494.[18] CBNA's Continental policy was often referred to in Continental interoffice shorthand reference to the "Archdiocese of Anchorage" where Fairbanks, Juneau, and Anchorage were all

---

[15] This letter appears as Exhibit 3 to CBNA's earlier filed *Memorandum of Counsel in Support of CBNA's Motion to Dismiss*, filed on June 1, 2006 (Clerk's Docket 14). As noted in the Affidavit of George Bowder, dated
[16] Marked as Exhibit 6 in the deposition and Exhibit A to this memorandum.
[17] The Christoper to Robb "telex" appears as Exhibit F to this memorandum and Exhibit 4 to the Juanita Brown deposition. Given its poor copying quality, CBNA's counsel is providing a legible retyping of it as a second page to Exhibit F.
[18] This revealing accounting record appears as Exhibit B to this memorandum at page 3. It appears also as Exhibit 8 to Continental underwriter Robb's deposition, beginning with document number "CBNA.INS.365."

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

CBNA's Motion for Summary Judgment MEMO
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 5 of 15

being addressed as a package.[19]   For example, Continental underwriter Robb, when

talking about a letter (between Continental "superintendent" P.P. Krug and a Continental

field agent (Evelyn Christopher))[20] testified as to the writing containing information

relevant to the policy associated with the Archdiocese of Anchorage:

> Q [by CBNA's counsel]:   Okay.  The note on the bottom appears to be Evelyn writing to Paul saying, "The policies will be," and then she has three different numbers using a .55 factor.  Do you know what that means?
> A:   That's our rating factor which would be involved in how we price the risk.
> Q:   And she goes on, "Since our DED" –
> A:   Deductible.
> Q:   -- "credit this year can't be 18 percent."  Did I read that right?
> A:   That's – let's see.  "This year can't be" – I think that's correct, yes.
> Q:   We – and then she goes on.  "We are using schedule credit" –
> A:   Yes.
> Q:   -- "to make up difference."
> A.   Correct.
> Q:   "INA" – I'm struggling with that next word.
> A:   "Quoted."
> Q:   Okay. – "quoted a .57 factor."  So does that mean that Continental, in effect won the bidding war because they came in at .55 and INA, which I assume is a separate company –
> A:   You're right.[21]

The above exchange demonstrates that there was a "bidding war" to become the

insurance providers for CBNA.  The referenced 1975 writing [Exhibit C] also

demonstrates that three policies did in fact exist (one in Anchorage, one in Juneau, and

one in Fairbanks):

> Q:   In the "types" part of Exhibit 3 [Exhibit C to this memorandum], fourth paragraph, the record coming from Mr. Krug to – who you indicated was the – or it says who he is here, too, he was the superintendent of Continental's Seattle office – to Evelyn Christopher, the Anchorage agent for Continental.  Krug is

---

[19] *See* Exhibit C [Exhibit 3 from Robb Deposition].  The subject was "Archdiocese of Anchorage," yet the memo refers to different policies in Anchorage, Fairbanks, Juneau.
[20] Exhibit C to this memorandum [Exhibit 3 to Robb deposition].
[21] *Julian Robb's Depo.* starting at page 74, line 23 through page 76, line 1.

CBNA's Motion for Summary Judgment MEMO
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 6 of 15

COOK SCHUHMANN & GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810
(907) 452-1855
FACSIMILE
(907) 452-8154

reporting on McKeown of LaBow Haynes advising that he's going to require three policies; is that right?

A:    That would appear to be correct, yeah.

Q:    And then he goes on to say one is for Anchorage, which includes the liability of Juneau, and then one policy for Juneau section one only, and one policy for the Fairbanks coverage. First of all, section one only, do – do you know what that means?

A:    Section one would be property coverage.

Q:    And how would you then interpret the reference to Fairbanks coverage? Would it be property or would it be liability or would it be a combination?

A:    There's no way to tell from this and there's no way to determine what Fairbanks coverage is as respects to the Archdiocese of Anchorage.

Q:    Okay. Because, in your mind, you don't know the geographic twists between what the Archdiocese of Anchorage includes?

A:    That is correct.

Q:    Okay. And then if we looked at – but if we know from the typed part that there are three policies, we know from Evelyn's note to Paul that there are three policies with SMP prefixes; is that true?

...

Q:    Is that right, Mr. Robb?

A:    That would appear to be three policies.[22]

Mr. Robb reaffirmed that three policies existed. Referencing the 1975 Exhibit C

interoffice writing, Mr. Robb testified:

Q [by Continental's counsel]:    On Exhibit 3 [N.B. Exhibit C is referred to as Exhibit 3 to Mr. Robb's deposition]–

A:    Yes.

Q:    -- and the paragraph starting, "He advises he will require three policies" and ending with, "One policy for the Fairbanks coverage."

A:    Yes.

Q:    Does that suggest that a policy was actually issued or just that someone was seeking a policy?

...

Q:    "He advises that he will require three policies."

A:    That would be an indication that negotiations had been pretty much completed and a policy was being – going to be issued.[23]

Mr. Robb further testified about a 1975 "Telephone Request", handwritten note

referring to "SMP 239 0621" and "SMP 828 8602."    Under the "Remarks" section it

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

---

[22] *Julian Robb's Depo.* starting at page 114, line 9 through page 115, line 22.
[23] *Julian Robb's Depo.* starting at page 125, line 15 through page 126, line 9.

CBNA's Motion for Summary Judgment MEMO
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 7 of 15

states "Jim McKeon [a LaBow Haynes broker], Feb. 19 Renewal 4-15, Fairbanks Catholic Bishop of <u>Northern Alaska</u>."[24]  Mr. Robb believed the author of the note was Paul Krug (Continental's superintendent of commercial lines).[25]

Juanita Brown, a retired Alaska broker handling Continental policies in the 1970's-1980's, also testified that CBNA had placed insurance with Continental.[26]  While examining Exhibit B at page 3 (Continental's accounting record noting CBNA's $13,494 payment), Ms. Brown testified:

> Q:    I'm looking at a $13,494 reference for Catholic Bishop with an SMP 2390621.
> …
> Q:    But looking at Catholic Bishop, the references roughly 10 spaces down starts with Catholic Bishop, and there's roughly five lines of Catholic Bishop, within the – in the far left-hand column SMP, and then there's a number in the second column, isn't there?
> A:    Yeah, there's a number right there 2390621.
> Q:    Okay.  So does that suggest to you that there was a policy?
> A:    Yes, it definitely does, yes.[27]

---

[24] Exhibit A (Exhibit 6 to Robb deposition), underlining in original.
[25] *Julian Robb's Depo.* at page 90, lines 11-13.
[26] Juanita Brown testified:
> Q:    And do you remember who you placed insurance with for CBNA?
> A:    With several companies.
> Q:    And do you remember which companies?
> A:    I would say Home was one, Alaska National is another and, of course, Continental.

*Juanita Brown's Depo.* at page 13, lines 9-14.
> Q:    And what was the order as best you remember?  What was it that CBNA wanted?
> A:    They just wanted good insurance coverage at a reasonable price.
> Q:    And what was the type – in your view, what do you mean by "good insurance coverage"?
> A:    I mean, broad comprehensive, the broadest element of coverage that you could but at a reasonable price.

*Juanita Brown's Depo.* starting at page 13, line 22 through page 14, line 5.
[27] *Juanita Brown's Depo.* starting at page 44, line 19 through page 45, line 11.

COOK SCHUHMANN & GROSECLOSE, INC.
14 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

CBNA's Motion for Summary Judgment MEMO
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 8 of 15

As noted, there are accounting transactions evidencing that a policy existed and that premiums were received from CBNA.  Mr. Robb ruled out the possibility that the premiums were charged for an automobile policy; specifically, when asked about a series of Continental accounting entries referring to "Catholic Bishop of NO AK,"[28] Mr. Robb testified:

> A:    As I indicated before, the effective date – this is an accounting form.  The effective date is the effective date of the transaction, not of the policy.
> Q:    Okay. So, in other words, this would be a – the date they would note the premium being received?
> A:    No.  This is a date that an endorsement was more than likely issued on that particular policy charging a premium.
> Q:    Okay.
> A:    And it becomes an accounting transaction, and that is the date of transaction.
> Q:    So it looks like just for CBNA alone, there were five different types of transactions that – roughly within a six-month time period, from November '73 to May of '74?
> A:    Correct.
> Q:    And you have – can you rule out that this is not an automobile insurance-type policy using the L reference?  I mean, is that generally the case that an L policy would not be automobile?
> A:    That is correct.[29]

Given that the "SMP" policy number is one recognized as a Continental assigned number, there is no genuine issue of material fact in dispute that Continental issued a "special multi peril" ("SMP") liability policy to CBNA beginning in October 1973.[30]

---

[28] Exhibit B (Exhibit 8 to Robb deposition, starting with document control number CBNA.INS.362).

[29] *Julian Robb's Depo.* at page 49, lines 2-24.

[30] As noted, the start date is confirmed by Continental's own interoffice telex (Exhibit F) from Continental's field agent (Evelyn Christopher) to its underwriter (Julian Robb) noting CBNA's Continental coverage to start October 14, 1973.  This is consistent with the other period correspondence noting CBNA's insurance was transferred in October 1973 from "The Catholic Mutual Relief Society of America . . . through LaBow, Haynes of Alaska, Inc." [CBNA.INS.346, Exhibit 2, page 4 of 7, to Affidavit of George Bowder (5/31/06)(appearing at Clerk's Docket 14).  As confirmed by Juanita Brown's testimony,

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

CBNA's Motion for Summary Judgment MEMO
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 9 of 15

**B.    CBNA has liability coverage common to that of the Anchorage Archdiocese**

CBNA's liability policy (excepting the property specific "section I" provisions) was identical to the policy that was issued to the Anchorage Archdiocese.[31] Juanita Brown testified that CBNA was insured insurance by Continental and that the terms were broad and similar to the ones found in the policy for the Archdiocese of Anchorage.[32]

The policies were so similar that the insurance agents referred to the "insurance package" involving Anchorage, Fairbanks and Juneau as the "Tri-Di" account.[33] Ms. Brown testified about how "Tri-Di" was used to refer to all three of the policies:

> Q:    …But at what point in history, in the early 1970s to 1975, do you know of any reason why CBNA, if it was placing insurance through your office with Continental, would have had different liability coverage?
> A:    No, no. If they were insured, which is called a Tri-Di account, it would be the same under the policy.
> Q:    And tell me what you mean by Tri-Di account?
> A:    Three dioceses.
> Q:    Did you – to your knowledge did LaBow, Haynes provide coverage for one diocese and not the other two?
> A:    It started with one and then it acquired the other two.
> Q:    Which one did it start with?
> A:    As I recall, it would have been Anchorage.
> …
> Q:    Did it ever involve, to your knowledge, all three being insured under one policy as distinct form each having a policy number?

---

LaBow Haynes brokered Continental policies. *Brown depo* at page13, lines 2 through 14.].

[31] Per page 44 of Exhibit D (Ex. 2 of Brown depo.), the Anchorage Archdiocese had coverage of:

| | |
|---|---|
| Bodily Injury Liability | $100,000 each person |
| | $300,000 each occurrence |
| | $300,000 aggregate |
| Property Damage Liability | $50,000 each occurrence |
| | $50,000 aggregate |

[32] *Juanita Brown's Depo.* starting at page 14 lines 1-5.
[33] *Juanita Brown's Depo.* starting at page 32, line 23 through page 33, line 19.

'OOK SCHUHMANN
: GROSECLOSE, INC.
14 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

CBNA's Motion for Summary Judgment MEMO
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 10 of 15

A:    As I recall, yes.[34]

The similarities between the Anchorage Archdiocese and CBNA were known to the agents and the policies were handled under similar circumstances:

> Q:    Do you have any reason to believe that CBNA would have been given or requests – would have been either given or that it requested limits other than similar to Anchorage?
> A:    I'm not sure I understand your question.  They wouldn't request limits – property limits or liability limits?
> Q:    Liability.  Yeah, I'm focused on general liability.
> A:    They followed the other Diocese.  Whatever they did the others followed.[35]

Ms. Brown also stated:

> Q:    What is your understanding, during the 1970s, if a customer had general liability coverage, whether as part of Section II to an SMP policy or as a general liability stand-alone policy, as to defense cost?
> A:    I can't remember.  I would think that it would automatically be there, but I can't be sure.
> Q:    If I were to represent to you that in Exhibits 2 and 3[36] there's policy language that refers to defense, do you have reason to think it would be any different than what was being marketed or given to the Archdiocese of Anchorage?
> A:    No, it's a standard ISO form, insurance services office form.[37]

Ms. Brown testified that she remembered dealing with Continental's field agent Evelyn Christopher specifically about issues involving CBNA, including the scope of coverage.[38]

---

[34] *Id.*
[35] *Juanita Brown's Depo.* starting at page 37, line 18 through page 38, line 3.
[36] Attached as Exhibits D and E, respectively, to this memorandum.
[37] *Juanita Brown's Depo.* at page 50, lines 1-13.
[38] Q:    Did you know Evelyn Christopher?
A:    Yes.
Q:    And how did you know her?
A:    She worked for Continental Insurance Company.  And I dealt with them on the account, and I dealt with her on issues involving the Bishop of Northern Alaska.
Q:    What issues do you remember working on?
A:    Well, the scope of coverage, mostly I'd say, prices.

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

CBNA's Motion for Summary Judgment MEMO
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 11 of 15

With regards to Continental's interoffice "11/06/73""telex"(referred to as Exhibit 4 in Ms. Brown's deposition but attached to this memorandum as Exhibit F), Ms. Brown affirmed CBNA's Continental policy as being identical to the Anchorage Archdiocese's [i.e. Exhibits D and E hereto]:

> Q:    I will represent to you Mrs. Brown, that Exhibit 4 [Exhibit F hereto] appears to be a document that is almost in the form of an old Teletype instrument or a Teletype kind of communication.
> …
> Q:    And I see Evelyn Christopher's name toward the base of it. Is there any indication that you see on that where that information was shared with LaBow, Haynes?
> A:    I would not think so, but there would be no reason to share it with LaBow, Haynes because LaBow, Haynes is the one that was asking to keep the policy dates concurrent with the other – Diocese.
> Q:    So you understand that's a directive that LaBow, Haynes is making – explain what you mean by keeping something concurrent?
> A:    In other words, the policy dates run concurrent, with Juneau and Anchorage and Fairbanks all being the same policy period.
> Q:    And why was that; to your knowledge?
> A:    Well, that's normal. If you have three different insured you want everything to be identical.
> Q:    Assuming they're all under the same policy or the same type of policy?
> A:    Right. Same policy.[39]

Ms. Brown set the limits of coverage for CBNA by reference to those for the Anchorage Archdiocese:

> Q:    Okay. Let's – before we jump to Exhibit 3 [Exhibit E hereto (policy for 4/15/75-4/15/78)], let's back up to Exhibit 2 [Exhibit D hereto (policy for 4/15/72 to 4/15/75)]. Is – what I see here as part of Exhibit 2 [Exhibit D] – it appears to be the 6th page – is a document that starts up at the top?

---

Q:    Do you know what the –if they were – if you placed a general liability policy for them?
A:    Oh yes.
Q:    And tell me what you remember about that.
A:    It was just a general liability, a standard general liability policy with whatever additional coverage you could buy, like personal injury and stuff like that.
*Juanita Brown's Depo.* at page 16, lines 3-19.
[39] *Juanita Brown's Depo.* starting at page 27, line 2 through page 28, line 9.

COOK SCHUHMANN
& GROSECLOSE, INC.
14 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS: AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

CBNA's Motion for Summary Judgment MEMO
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 12 of 15

A:    Declarations.

Q:    Yeah, is that the declaration sheet?

A:    Right.

Q:    And this has got LaBow, Haynes' name up at the top; is that right?

A:    Yes.

Q:    And that's the office that you worked at on D Street in Anchorage?

A:    519 D, right?

Q:    And this declaration sheet, as I understand it for policy coverage, refers to an enclosure; does it not?...-under limits of liability – first there's a Section I and Section II like you were talking about; is that right?

A:    Yes.

Q:    And on Section II, it then has limits of liability. I see an asterisk, which refers to a document, "Per MLB 21 attached." Do you know what that means?

A:    No, I don't. I could possibly identify if it I saw it.

Q:    Okay. Well, let me just, to kind of speed this along, flip to a page that's toward the back of the packet in Exhibit 2 [Exhibit D], that in the upper right-hand corner says MLB 21.[40]  Is this – of a form that you've seen before with policies?

A:    Oh, yeah, yes.

Q:    And in this case for the Archdiocese of Anchorage. Am I interpreting this correctly, that they had an insurance policy from April 15 of '72 to April 15th of '75?

A:    Right.

Q:    That had liability coverage of 100,000 for each person, 300,000 for each occurrence, and 300,000 in the aggregate; is that correct?

A:    Right. That's for bodily injury, property damage liability was for 50,000.[41]

Ms. Brown was certain of CBNA having comparable coverage to Anchorage:

Q:    Okay. Have you seen any document today that show that [the Fairbanks Diocese] was added to this policy?

A:    I haven't seen one, but I know it was.

Q:    Okay. Would it have been added with a separate policy number or the same policy number?

A:    Probably the same policy number just added as a named insured and listing their property and anything else that was available under the policy, that Fairbanks would have automatically been included.

Q:    As you sit here, memories fade, we all have memory fading problems. Can you say that you know for a fact, that the Fairbanks Diocese was added to the very same policy, or that your best belief or supposition?

A:    Yes, I'll say I believe it was added.

Q:    To the same policy?

A:    Right.

---

[40] Exhibit D at page 44.

[41] *Juanita Brown's Depo.* starting at page 23, line 11 through page 25, line 1.

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

CBNA's Motion for Summary Judgment MEMO
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 13 of 15

Q:    In other words, we have one policy number that covered Anchorage, Juneau and Fairbanks?

A:    Yes. [42]

While CBNA might not have been named in the headings of some policy references, it was included by an "et al." notation:

Q:    If Fairbanks was added in 1973 or 1974, why don't we see Fairbanks named? Why does it just say corporation of the Catholic Archbishop of Anchorage?

...

A:    Et al.[43]

CBNA had the identical policy provisions as the Catholic Archbishop of Anchorage:

Q:    So if CBNA had a separate policy, do you have any reason to think the nature of that separate policy, that SMP policy would be any different than what we see for the Anchorage Diocese – understanding, of course, that the properties that they own would be different.

A:    Exactly. The forms would be identical.[44]

Ms. Brown further stated:

Q:    And we've got here two sample policies of what went to Anchorage, Exhibit 2 [Exhibit D] and Exhibit 3 [Exhibit E]. One is roughly 50 pages and the other one is a hundred pages. Is that the sort of thing we would be expecting to look at for the missing policy, 2390621?

A:    Yes. [45]

Finally, as to the duration of Continental's policy of coverage, the undisputed evidence supplementing the testimony of Robb and Brown from CBNA's Finance

---

[42] *Juanita Brown's Depo.* at page 58, lines 4-22.

[43] *Juanita Brown's Depo.* at page 59, lines 3-7.

[44] *Juanita Brown's Depo.* at page 70, lines 2-7.

[45] *Juanita Brown's Depo.* at page 73, lines 16-21.

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

CBNA's Motion for Summary Judgment MEMO
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 14 of 15

Director, George Bowder, is that Continental carried CBNA's liability coverage up until a "changeover" on April 15, 1979.[46]

## V.    Conclusion

For the reasons explained above, there are no genuine issues of material fact as to CBNA being issued a Continental policy with coverage identical to that of its sister diocese, the Anchorage Archdiocese.  CBNA is entitled to summary judgment declaring it a Continental policyholder starting in October 14, 1973 and extending to April 15, 1979, with the policy coverages and terms as set form in accompanying Exhibits D and E.

DATED at Fairbanks, Alaska, this 1st day of October, 2007.

> COOK, SCHUHMANN & GROSECLOSE, Inc.
> Attorneys for Catholic Bishop of Northern Alaska
>
> By:    s/Robert B. Groseclose
>           Alaska Bar No. 7605032

**CERTIFICATE OF SERVICE**
This is to certify that on the _1st_ day
of _October_, 2007, a copy of the foregoing
is being mailed via first class mail fully prepaid
to the following attorney(s) or party(s) of record:

Gary A. Zipkin, Esq.
Guess & Rudd, P.C.
510 L Street, Suite 700
Anchorage, AK  99501

Laura K. McNally and Philip C. Stahl
Grippo & Elden LLC
111 S. Wacker Drive
Chicago, IL 60606

s/Robert B. Groseclose
for Cook Schuhmann & Groseclose, Inc.

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

---

[46] *George Bowder deposition* at p. 40, lines 6-21.

CBNA's Motion for Summary Judgment MEMO
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 15 of 15