IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

CONTINENTAL INSURANCE COMPANY,

Plaintiff,

v.

CATHOLIC BISHOP OF NORTHERN ALASKA,

Defendant.

Case No. 3:06-cv-00019 TMB

**CBNA's OPPOSITION TO CONTINENTAL'S MOTION FOR SUMMARY JUDGMENT**

## I. Introduction

Defendant Catholic Bishop of Northern Alaska ("CBNA"), by and through counsel, opposes plaintiff Continental Insurance Company's ("Continental") *Motion for Summary Judgment* (10/1/07). CBNA's opposition draws upon the same factual setting as it briefed in support of its *Motion for Summary Judgment on Existence, Coverage, and Terms of Policy Covering CBNA* filed October 1, 2007.

Despite diligent search, the insurance policies themselves have not surfaced. Instead, CBNA relies upon undisputed, secondary and reliable sources to prove CBNA's policies with Continental. Those items accompany CBNA's *Motion for Summary Judgment.* The documentary evidence is largely undisputed and establishes CBNA as being a Continental insured. To the extent competing interpretations inject issues of material fact, then Continental's motion should be denied.

## II. Facts Pertinent to Requested Relief

OOK SCHUHMANN
GROSECLOSE, INC.
I FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810
(907) 452-1855
FACSIMILE
(907) 452-8154

As noted, the facts have been previously summarized in CBNA's *Motion for Summary Judgment* filed October 1, 2007. Essentially, in 2003, CBNA was first served with a string of lawsuits alleging decades old sexual abuse committed by CBNA personnel.[1] CBNA tendered to CNA (a Continental affiliate)[2] those claims asserting "occurrences" falling within the timeframe of October, 1973 to April 15, 1979. In supporting its tenders of defense, CBNA provided numerous documents referencing Continental insurance policy numbers, insurance related forms, and accounting information, interoffice memoranda, and representative policies from the relevant time period. These documents prove the existence of policies (and the terms) from October, 1973 to April 15, 1979. These documents have been largely authenticated through the deposition testimony of retired Continental underwriter Julian Robb and retired LaBow Haynes broker Juanita Brown.[3]

## III. Standard for Summary Judgment

[1] The first such complaint was filed as *John Does 1-4 v. Catholic Bishop of Northern Alaska et al.*, 4BE-03-177 CI (Alaska Superior Court *filed* June 18, 2003). There have been approximately a dozen other cases since filed, all of which allege sexual abuse committed decades ago. The two cases that have thus far proceeded through trial ("evidentiary hearings") have resulted in judgments of dismissal as being time-barred under the applicable statute of limitations. *Jane Doe 2 v. Poole et al.*, 2NO-04-83 CI *pending appeal as* Alaska Supreme Court Case No. 12412; *Jane Doe 3 v. Poole et al.*, 2NO-05-56CI *pending appeal* as Alaska Supreme Court Case No. S-12903.

[2] *Continental's Disclosure Statement* filed with its complaint acknowledges the interrelationship of Continental to CNA Financial Corporation ("CNA").

[3] See *Depositions of Julian Robb and Juanita Brown* filed previously on October 1, 2007. While Continental has questioned the authenticity of some documents (e.g. Continental's Exhibit N), for the reasons more fully explained below, the documents are nevertheless admissible as business records. Continental's interpretation and argument as to the various documents are as to the document's persuasiveness, not their admissibility.

'OOK SCHUHMANN
GROSECLOSE, INC.
4 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810
(907) 452-1855
FACSIMILE
(907) 452-8154

Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[4] The moving party bears the initial burden of proving the absence of a genuine issue of material fact.[5] A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[6] If the moving party makes this showing, the burden then shifts to the non-moving party to "designate specific facts showing that there is a genuine issue for trial."[7] In making this determination, the factual inferences are viewed in the light most favorable to the non-moving party.[8]

Viewed in the light most favorable to CBNA, the proffered evidence support's CBNA's policyholder status. Continental has failed to show that there is an "absence of a material fact" entitling it to judgment as a matter of law.

## IV. <u>Discussion</u>

### A. CBNA HAS PROVEN BOTH THE EXISTENCE AND TERMS OF THE POLICIES THROUGH CIRCUMSTANTIAL EVIDENCE.

#### *1. Secondary evidence establishes liability policies benefiting CBNA.*

From October, 1973 to April 15, 1979, CBNA was covered by insurance policies issued by Continental (SMP 2390621 and SMP 2397996). Although, each actual policy

---

4 <u>Fed.R.Civ.P. 56(c)</u>.
5 *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
6 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
7 *Anderson*, 477 U.S. at 324.
8 *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

OOK SCHUHMANN
GROSECLOSE, INC.
4 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810
(907) 452-1855
FACSIMILE
(907) 452-8154

can no longer be located, secondary evidence provided by CBNA proves both the existence and the terms of the policies.[9]

This court is familiar with "missing policy" cases and the viability of secondary evidence establishing the policy existence and insurance terms. Specifically, in *Mapco Alaska Petroleum, Inc. v. Central National insurance Company of Omaha*,[10] an oil refinery sued its insurers for coverage of environmental cleanup costs. Mapco, like CBNA, was unable to locate the actual policy, which had similarly been issued years prior to litigation.[11] This court determined that Mapco had presented sufficient evidence to establish existence of the policy.[12] It was deemed sufficient that Mapco produced secondary evidence in the form of correspondence and invoices indicating payment of the premiums.[13] The *Mapco* court made clear that a policyholder need only supply evidence to satisfy a "more likely than not" (not clear and convincing) standard.[14]

CBNA, like Mapco, has provided secondary evidence of the issuance and renewal of liability policies of coverage.[15] It has provided accounting spreadsheets

---

[9] The various interoffice memoranda, accounting invoices, and other documents that prove the existence of the policies during the 1970s through Continental (SMP 2390621 and SMP 2397996) have been previously submitted with CBNA's *Motion for Summary Judgment*. Pertinent excerpts of insurance witness testimony has also been previously provided.

[10] 795 F.Supp. 941 (D. Alaska 1991).

[11] *Mapco*, 795 F.Supp. at 948.

[12] *Id.*

[13] *Id.*

[14] *Id.* at 948-49 ["while [the insurer] argues that [Mapco] must prove the existence of the missing policy with clear and convincing evidence, it provides no Ninth Circuit authority for application of that evidentiary standard. [Mapco] has provided the court with sufficient evidence of the existence of the missing policy for the purposes of summary judgment."]

[15] See Exhibits F and A to CBNA's *Motion for Summary Judgment* (10/1/07).

OOK SCHUHMANN
GROSECLOSE, INC.
4 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

indicating payment of the premiums.[16] It has provided inter-office communications.[17] It has provided sample policies issued to its sister, Alaskan diocese.[18] It has provided relevant letters/notes from Continental agents.[19] Finally, it has presented the testimony from Continental underwriter Julian Robb and retired LaBow Haynes broker Juanita Brown linking CBNA to Continental policies.[20] There is no evidence that the policies, or renewals were cancelled or withdrawn.

Insurance witnesses Julian Robb and Juanita Brown have testified that policies existed and that the policy terms were similar to a known policy issued to CBNA's sister diocese, the Archdiocese of Anchorage. Retired Continental underwriter Julian Robb testified as to Continental's underwriting practices during the 1970s. In particular, he authenticated various Continental generated documents reflecting that CBNA was listed in Continental records as a policyholder, with coded reference to a "special multi-peril" (i.e. "SMP") policy, SMP 2 39 06 21.[21] The records establish that Continental's Alaska field agent (Evelyn Christopher) was messaging Continental underwriter Julian Robb for a policy to commence "10-14-73."[22] The authenticated Continental records further

[16] See Exhibit B to CBNA's *Motion for Summary Judgment* (10/1/07).
[17] See Exhibit C to CBNA's *Motion for Summary Judgment* (10/1/07).
[18] See Exhibit D-E to CBNA's *Motion for Summary Judgment* (10/1/07).
[19] See Exhibits F to CBNA's *Motion for Summary Judgment* (10/1/07).
[20] See *Depositions of Julian Robb and Juanita Brown* (pertinent excerpts accompany CBNA's *Motion for Summary Judgment* (10/1/07).
[21] Marked as Exhibit 6 in the deposition and Exhibit A to CBNA's *Motion for Summary Judgment* (10/1/07).
[22] The Christoper to Robb "telex" appears as Exhibit F to CBNA's *Motion for Summary Judgment* (10/1/07) and as Exhibit 4 to the Juanita Brown deposition. It also appears as Continental's exhibit D (but without a legible rendition).

OOK SCHUHMANN
GROSECLOSE, INC.
4 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810
(907) 452-1855
FACSIMILE
(907) 452-8154

establish that it received payment from CBNA in 1974 of $13,494.[23] Following in 1975 is the Continental "inter-office memorandum" speaking to the policy "renewal in April" and to what Continental underwriter Robb described as being Continental's winning of the "bidding war" to continue as CBNA's insurer.[24]

The referenced 1975 writing [Exhibit C] demonstrates that three policies did in fact exist (one in Anchorage, one in Juneau, and one in Fairbanks):

> Q: In the "types" part of Exhibit 3 [Exhibit C], fourth paragraph, the record coming from Mr. Krug to – who you indicated was the – or it says who he is here, too, he was the superintendent of Continental's Seattle office – to Evelyn Christopher, the Anchorage agent for Continental. Krug is reporting on McKeown of LaBow Haynes advising that he's going to require three policies; is that right?
> A: That would appear to be correct, yeah.

---

[23] This revealing accounting record appears as Exhibit B at page 3 to CBNA's *Motion for Summary Judgment* (10/1/07). It appears also as Exhibit 8 to Continental underwriter Robb's deposition, beginning with document number "CBNA.INS.365."

[24] *See* Exhibit C to CBNA's *Motion for Summary Judgment* (10/1/07) [Exhibit 3 from Robb Deposition]. The subject was "Archdiocese of Anchorage," yet the memo refers to different policies in Anchorage, Fairbanks, Juneau. Robb testified supportive of CBNA's coverage remaining with Continental:

> Q [by CBNA's counsel]: Okay. The note on the bottom appears to be Evelyn writing to Paul saying, "The policies will be," and then she has three different numbers using a .55 factor. Do you know what that means?
> A: That's our rating factor which would be involved in how we price the risk.
> Q: And she goes on, "Since our DED" –
> A: Deductible.
> Q: -- "credit this year can't be 18 percent." Did I read that right?
> A: That's – let's see. "This year can't be" – I think that's correct, yes.
> Q: We – and then she goes on. "We are using schedule credit" –
> A: Yes.
> Q: -- "to make up difference."
> A. Correct.
> Q: "INA" – I'm struggling with that next word.
> A: "Quoted."
> Q: Okay. – "quoted a .57 factor." So does that mean that Continental, in effect won the bidding war because they came in at .55 and INA, which I assume is a separate company –
> A: You're right.

OOK SCHUHMANN
GROSECLOSE, INC.
4 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810
(907) 452-1855
FACSIMILE
(907) 452-8154

Q: And then he goes on to say one is for Anchorage, which includes the liability of Juneau, and then one policy for Juneau section one only, and one policy for the Fairbanks coverage. First of all, section one only, do – do you know what that means?
A: Section one would be property coverage.
Q: And how would you then interpret the reference to Fairbanks coverage? Would it be property or would it be liability or would it be a combination?
A: There's no way to tell from this and there's no way to determine what Fairbanks coverage is as respects to the Archdiocese of Anchorage.
Q: Okay. Because, in your mind, you don't know the geographic twists between what the Archdiocese of Anchorage includes?
A: That is correct.
Q: Okay. And then if we looked at – but if we know from the typed part that there are three policies, we know from Evelyn's note to Paul that there are three policies with SMP prefixes; is that true?
...
Q: Is that right, Mr. Robb?
A: That would appear to be three policies.[25]

Mr. Robb reaffirmed that three policies existed. Referencing the 1975 Exhibit C interoffice writing, Mr. Robb testified:

Q [by Continental's counsel]: On Exhibit 3 [N.B. Exhibit C is referred to as Exhibit 3 to Mr. Robb's deposition]–
A: Yes.
Q: -- and the paragraph starting, "He advises he will require three policies" and ending with, "One policy for the Fairbanks coverage."
A: Yes.
Q: Does that suggest that a policy was actually issued or just that someone was seeking a policy?
...
Q: "He advises that he will require three policies."
A: That would be an indication that negotiations had been pretty much completed and a policy was being – going to be issued.[26]

Mr. Robb further testified about a 1975 "Telephone Request", handwritten note referring to "SMP 239 0621" and "SMP 828 8602." Under the "Remarks" section it states "Jim McKeon [a LaBow Haynes broker], Feb. 19 Renewal 4-15, Fairbanks

OOK SCHUHMANN
GROSECLOSE, INC.
4 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810
(907) 452-1855
FACSIMILE
(907) 452-8154

[25] *Julian Robb's Depo.* starting at page 114, line 9 through page 115, line 22.
[26] *Julian Robb's Depo.* starting at page 125, line 15 through page 126, line 9.

Catholic Bishop of Northern Alaska."[27] Mr. Robb believed the author of the note was Paul Krug (Continental's superintendent of commercial lines).[28]

Juanita Brown, a retired Alaska broker handling Continental policies in the 1970's-1980's, also testified that CBNA had placed insurance with Continental.[29] While examining Exhibit B to CBNA's *Motion for Summary Judgment* at page 3 (Continental's accounting record noting CBNA's $13,494 payment), Ms. Brown testified:

> Q: I'm looking at a $13,494 reference for Catholic Bishop with an SMP 2390621.
> ...
> Q: But looking at Catholic Bishop, the references roughly 10 spaces down starts with Catholic Bishop, and there's roughly five lines of Catholic Bishop, within the – in the far left-hand column SMP, and then there's a number in the second column, isn't there?
> A: Yeah, there's a number right there 2390621.
> Q: Okay. So does that suggest to you that there was a policy?
> A: Yes, it definitely does, yes.[30]

As noted, there are accounting transactions evidencing that a policy existed (during the relevant time frame) and that premiums were received from CBNA. Mr.

---

[27] Exhibit A (Exhibit 6 to Robb deposition), underlining in original.
[28] *Julian Robb's Depo.* at page 90, lines 11-13.
[29] Juanita Brown testified:

> Q: And do you remember who you placed insurance with for CBNA?
> A: With several companies.
> Q: And do you remember which companies?
> A: I would say Home was one, Alaska National is another and, of course, Continental.

*Juanita Brown's Depo.* at page 13, lines 9-14.

> Q: And what was the order as best you remember? What was it that CBNA wanted?
> A: They just wanted good insurance coverage at a reasonable price.
> Q: And what was the type – in your view, what do you mean by "good insurance coverage"?
> A: I mean, broad comprehensive, the broadest element of coverage that you could but at a reasonable price.

*Juanita Brown's Depo.* starting at page 13, line 22 through page 14, line 5.
[30] *Juanita Brown's Depo.* starting at page 44, line 19 through page 45, line 11.

OOK SCHUHMANN
GROSECLOSE, INC.
4 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810
(907) 452-1855
FACSIMILE
(907) 452-8154

Robb ruled out the possibility that the premiums were charged for an automobile policy; specifically, when asked about a series of Continental accounting entries referring to "Catholic Bishop of NO AK,"[31] Mr. Robb testified:

> A: As I indicated before, the effective date – this is an accounting form. The effective date is the effective date of the transaction, not of the policy.
> Q: Okay. So, in other words, this would be a – the date they would note the premium being received?
> A: No. This is a date that an endorsement was more than likely issued on that particular policy charging a premium.
> Q: Okay.
> A: And it becomes an accounting transaction, and that is the date of transaction.
> Q: So it looks like just for CBNA alone, there were five different types of transactions that – roughly within a six-month time period, from November '73 to May of '74?
> A: Correct.
> Q: And you have – can you rule out that this is not an automobile insurance-type policy using the L reference? I mean, is that generally the case that an L policy would not be automobile?
> A: That is correct.[32]

Given that the "SMP" policy number is one recognized as a Continental assigned number, there is no genuine issue of material fact in dispute that Continental issued a "special multi peril" ("SMP") liability policy to CBNA beginning in October 1973.[33]

---

[31] Exhibit B (Exhibit 8 to Robb deposition, starting with document control number CBNA.INS.362).

[32] *Julian Robb's Depo.* at page 49, lines 2-24.

[33] As noted, the start date is confirmed by Continental's own interoffice telex (Exhibit F to CBNA's *Motion for Summary Judgment* filed 10/1/07) from Continental's field agent (Evelyn Christopher) to its underwriter (Julian Robb) noting CBNA's Continental coverage to start October 14, 1973. This is consistent with the other period correspondence noting CBNA's insurance was transferred in October 1973 from "The Catholic Mutual Relief Society of America . . . through LaBow, Haynes of Alaska, Inc." [CBNA.INS.346, Exhibit 2, page 4 of 7, to Affidavit of George Bowder (5/31/06)(appearing at Clerk's Docket 14). As confirmed by Juanita Brown's testimony, LaBow Haynes brokered Continental policies. *Brown depo* at page13, lines 2 through 14.].

OOK SCHUHMANN
GROSECLOSE, INC.
4 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

**2. The terms of the policy are established through secondary evidence.**

As this court in the *Mapco* case affirmed, a reputed insured can present secondary evidence to prove coverage.[34] Such evidence can include correspondence, financial documents, annual reports, certificates of insurance, and records of premium payments.[35] Courts are lenient in allowing proof of the policy, particularly where a premium has been paid.[36] Such evidence is relevant to the following six factors, each of which is satisfied by CBNA's proof:

1. the type of insurance at issue;
2. the degree to which this type of insurance can be shown to be "standardized" either in the pertinent geographic area, or by the specific insurer;
3. how long an insurance history the insured has with this type of insurance, generally, and with the insurer who allegedly issued the lost policy in particular;
4. how good the insured's secondary records-keeping is;
5. the amount of correspondence and the bill paying that has occurred between the insured and the insurer; and
6. the degree to which the insurer and any agents may be able to contribute meaningful records.[37]

Continental's contentions to the contrary do not withstand scrutiny.

**a. CBNA's liability "SMP" policy is known.**

We know from secondary sources that CBNA was issued a liability policy, coded a "SMP" (Special Multi-Peril) policy.[38] While Continental asserts that the precipitating

---

[34] Barry Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 17.04 (11th ed.2002); see also Fed.R.Evid. 1004 (other evidence of the contents of a writing is admissible if the original is lost or destroyed.

[35] Ostrager & Newman, *supra*, § 17.04.

[36] 17A Couch on Insurance (3d ed.) § 255:7.

[37] *Id.*

[38] Continental underwriter Robb explained from the accounting coding that CBNA was carried as a "9" or "liability" insured. Robb deposition starting at page 20 line 13 through page 21 line 6.

OOK SCHUHMANN
GROSECLOSE, INC.
4 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

1973 telex "provides no information about a policy that might or might not have been issued,"[39] the telex itself sets the order date of CBNA's policy, with supplemental accounting references,[40] assigned representative policies,[41] and "liability" coding[42] filling in the balance. As concerns the terms of coverage, that gap is readily filled by the representative policies issued to CBNA's sister diocese.[43] While Continental cites to the deposition of Kenneth Murray to argue that "SMP" could take multiple forms,[44] Murray had nothing to do with the placement of CBNA's coverage.[45] We do know from Continental's own underwriter (Julian Robb) that during the relevant time period Continental coded CBNA a "liability" policy holder[46] and used the "ISO form" for SMP policies.[47] The representative policies issued to CBNA's sister diocese establish the liability policy language and coverage.

**b. Continental had a standardized, if not integrated, policy practice for its three Catholic dioceses policyholders.**

Policies were issued to the Catholic Dioceses of Anchorage, Fairbanks, Juneau. The policies were so similar that the insurance agents referred to the "insurance

[39] *Continental Insurance Company's Memorandum in Support of Its Motion for Summary Judgment* (hereafter "Continental's Memorandum") at 3.
[40] Exhibit B to CBNA's *Motion for Summary Judgment* (10/1/07).
[41] Exhibits D and E to CBNA's *Motion for Summary Judgment* (10/1/07).
[42] Exhibit B to CBNA's *Motion for Summary Judgment* (10/1/07). Continental underwriter Robb testified that a "9" code refers to a "liability" policy holder. Robb deposition at 20-21.
[43] Exhibits D and E to CBNA's *Motion for Summary Judgment* (10/1/07).
[44] Continental's Memorandum at 15-16.
[45] Murray depo at 4.
[46] Robb depo at 21-22.
[47] Robb depo at 62, lines 16-19. "ISO" stands for "Insurance Services Offices, which is a group which does the filings [with state insurance commission offices] for forms and types of coverages." Robb depo at 21 line 24 through page 22 line 2.

OOK SCHUHMANN
GROSECLOSE, INC.
4 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810
(907) 452-1855
FACSIMILE
(907) 452-8154

package" as the "Tri-Di" account.[48] Retired LaBow and Haynes broker Juanita Brown testified how "Tri-Di" was used to refer to all three of the policies:

> Q: …But at what point in history, in the early 1970s to 1975, do you know of any reason why CBNA, if it was placing insurance through your office with Continental, would have had different liability coverage?
> A: No, no. If they were insured, which is called a Tri-Di account, it would be the same under the policy.
> Q: And tell me what you mean by Tri-Di account?
> A: Three dioceses.
> Q: Did you – to your knowledge did LaBow, Haynes provide coverage for one diocese and not the other two?
> A: It started with one and then it acquired the other two.
> Q: Which one did it start with?
> A: As I recall, it would have been Anchorage.
> …
> Q: Did it ever involve, to your knowledge, all three being insured under one policy as distinct form each having a policy number?
> A: As I recall, yes.[49]

The similarities between the Anchorage Archdiocese and CBNA were known to the agents and the policies were handled under similar circumstances:

> Q: Do you have any reason to believe that CBNA would have been given or requests – would have been either given or that it requested limits other than similar to Anchorage?
> A: I'm not sure I understand your question. They wouldn't request limits – property limits or liability limits?
> Q: Liability. Yeah, I'm focused on general liability.
> A: They followed the other Diocese. Whatever they did the others followed.[50]

Ms. Brown also stated:

> Q: What is your understanding, during the 1970s, if a customer had general liability coverage, whether as part of Section II to an SMP policy or as a general liability stand-alone policy, as to defense cost?
> A: I can't remember. I would think that it would automatically be there, but I can't be sure.

OOK SCHUHMANN
GROSECLOSE, INC.
I FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810
(907) 452-1855
FACSIMILE
(907) 452-8154

[48] *Juanita Brown's Depo.* starting at page 32, line 23 through page 33, line 19.
[49] *Id.*
[50] *Juanita Brown's Depo.* starting at page 37, line 18 through page 38, line 3.

> Q: If I were to represent to you that in Exhibits 2 and 3[51] there's policy language that refers to defense, do you have reason to think it would be any different than what was being marketed or given to the Archdiocese of Anchorage?
>
> A: No, it's a standard ISO form, insurance services office form.[52]

Ms. Brown testified that she remembered dealing with Continental's field agent Evelyn Christopher specifically about issues involving CBNA, including the scope of coverage.[53]

With regards to Continental's interoffice "11/06/73""telex"(referred to as Exhibit 4 in Ms. Brown's deposition and attached as Exhibit D to Continental's *Memorandum*[54]), Ms. Brown affirmed CBNA's Continental policy being identical to the Anchorage Archdiocese's [i.e. Exhibits D and E to CBNA's *Motion for Summary Judgment* (10/1/07)]:

> Q: I will represent to you Mrs. Brown, that Exhibit 4 [Exhibit F to CBNA's *Motion for Summary Judgment*] appears to be a document that is almost in the form of an old Teletype instrument or a Teletype kind of communication.
>
> . . .

---

[51] Attached as Exhibits D and E, respectively.

[52] *Juanita Brown's Depo.* at page 50, lines 1-13.

[53]Q: Did you know Evelyn Christopher?
A: Yes.
Q: And how did you know her?
A: She worked for Continental Insurance Company. And I dealt with them on the account, and I dealt with her on issues involving the Bishop of Northern Alaska.
Q: What issues do you remember working on?
A: Well, the scope of coverage, mostly I'd say, prices.
Q: Do you know what the –if they were – if you placed a general liability policy for them?
A: Oh yes.
Q: And tell me what you remember about that.
A: It was just a general liability, a standard general liability policy with whatever additional coverage you could buy, like personal injury and stuff like that.
*Juanita Brown's Depo.* at page 16, lines 3-19.

[54] This same document appears as Exhibit F, together with a legible rendition, to CBNA's *Motion for Summary Judgment* (10/1/07).

OOK SCHUHMANN
GROSECLOSE, INC.
4 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810
(907) 452-1855
FACSIMILE
(907) 452-8154

Q: And I see Evelyn Christopher's name toward the base of it. Is there any indication that you see on that where that information was shared with LaBow, Haynes?
A: I would not think so, but there would be no reason to share it with LaBow, Haynes because LaBow, Haynes is the one that was asking to keep the policy dates concurrent with the other -- Diocese.
Q: So you understand that's a directive that LaBow, Haynes is making – explain what you mean by keeping something concurrent?
A: In other words, the policy dates run concurrent, with Juneau and Anchorage and Fairbanks all being the same policy period.
Q: And why was that; to your knowledge?
A: Well, that's normal. If you have three different insured you want everything to be identical.
Q: Assuming they're all under the same policy or the same type of policy?
A: Right. Same policy.[55]

Ms. Brown was certain of CBNA having comparable coverage to Anchorage:

Q: Okay. Have you seen any document today that show that [the Fairbanks Diocese] was added to this policy?
A: I haven't seen one, but I know it was.
Q: Okay. Would it have been added with a separate policy number or the same policy number?
A: Probably the same policy number just added as a named insured and listing their property and anything else that was available under the policy, that Fairbanks would have automatically been included.
Q: As you sit here, memories fade, we all have memory fading problems. Can you say that you know for a fact, that the Fairbanks Diocese was added to the very same policy, or that your best belief or supposition?
A: Yes, I'll say I believe it was added.
Q: To the same policy?
A: Right.
Q: In other words, we have one policy number that covered Anchorage, Juneau and Fairbanks?
A: Yes. [56]

**c. CBNA has established its liability insurance history with Continental.**

As reflected by the 11/06/73 telex and other period correspondence, CBNA's history with Continental began no later than the fall of 1973.[57] The policy was a SMP

OOK SCHUHMANN
GROSECLOSE, INC.
4 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810
(907) 452-1855
FACSIMILE
(907) 452-8154

[55] *Juanita Brown's Depo.* starting at page 27, line 2 through page 28, line 9.
[56] *Juanita Brown's Depo.* at page 58, lines 4-22.

policy. As to the duration of Continental's policy of coverage, the undisputed evidence supplementing the testimony of Mr. Robb and Ms. Brown from CBNA's Finance Director, George Bowder, is that Continental carried CBNA's liability coverage up until a "changeover" on April 15, 1979.[58]

**d. CBNA has provided adequate records.**

CBNA has provided adequate records for both the existence and the terms of the policy. Ms. Brown set the limits of coverage for CBNA as those for the Anchorage Archdiocese:[59]

> Q: Okay. Let's – before we jump to Exhibit 3 [Exhibit E to CBNA's *Motion for Summary Judgment* (10/1/07) (policy for 4/15/75-4/15/78)], let's back up to Exhibit 2 [Exhibit D hereto (policy for 4/15/72 to 4/15/75)]. Is – what I see here as part of Exhibit 2 [Exhibit D] – it appears to be the 6th page – is a document that starts up at the top?
> A: Declarations.
> Q: Yeah, is that the declaration sheet?
> A: Right.
> Q: And this has got LaBow, Haynes' name up at the top; is that right?
> A: Yes.
> Q: And that's the office that you worked at on D Street in Anchorage?
> A: 519 D, right?
> Q: And this declaration sheet, as I understand it for policy coverage, refers to an enclosure; does it not?...-under limits of liability – first there's a Section I and Section II like you were talking about; is that right?
> A: Yes.
> Q: And on Section II, it then has limits of liability. I see an asterisk, which refers to a document, "Per MLB 21 attached." Do you know what that means?

---

[57] Exhibit F to CBNA's *Motion for Summary Judgment* (10/12/07); same as Exhibit D to Continental's motion.
[58] *George Bowder deposition* at p. 40, lines 6-21.
[59] Per page 44 of Exhibit D to CBNA's *Motion for Summary Judgment* (10/1/07) (Ex. 2 of Brown depo.), the Anchorage Archdiocese had coverage of:

| | |
|---|---|
| Bodily Injury Liability | $100,000 each person |
| | $300,000 each occurrence |
| | $300,000 aggregate |
| Property Damage Liability | $50,000 each occurrence |
| | $50,000 aggregate |

OOK SCHUHMANN
GROSECLOSE, INC.
I FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810
(907) 452-1855
FACSIMILE
(907) 452-8154

A: No, I don't. I could possibly identify if it I saw it.
Q: Okay. Well, let me just, to kind of speed this along, flip to a page that's toward the back of the packet in Exhibit 2 [Exhibit D], that in the upper right-hand corner says MLB 21.[60] Is this – of a form that you've seen before with policies?
A: Oh, yeah, yes.
Q: And in this case for the Archdiocese of Anchorage. Am I interpreting this correctly, that they had an insurance policy from April 15 of '72 to April 15th of '75?
A: Right.
Q: That had liability coverage of 100,000 for each person, 300,000 for each occurrence, and 300,000 in the aggregate; is that correct?
A: Right. That's for bodily injury, property damage liability was for 50,000.[61]

While CBNA might not have been named in the headings of some policy references, it was included by an "et al." notation:

Q: If Fairbanks was added in 1973 or 1974, why don't we see Fairbanks named? Why does it just say corporation of the Catholic Archbishop of Anchorage?
. . .
A: Et al.[62]

CBNA had the identical policy provisions as the Catholic Archbishop of Anchorage:

Q: So if CBNA had a separate policy, do you have any reason to think the nature of that separate policy, that SMP policy would be any different than what we see for the Anchorage Diocese – understanding, of course, that the properties that they own would be different.
A: Exactly. The forms would be identical.[63]

Ms. Brown further stated:

Q: And we've got here two sample policies of what went to Anchorage, Exhibit 2 [Exhibit D] and Exhibit 3 [Exhibit E]. One is roughly 50 pages and the other one is a hundred pages. Is that the sort of thing we would be expecting to look at for the missing policy, 2390621?
A: Yes.[64]

[C]OOK SCHUHMANN
GROSECLOSE, INC.
[71]1 FOURTH AVE., SUITE 200
[P]OST OFFICE BOX 70810
[FA]IRBANKS, AK 99707-0810
(907) 452-1855
FACSIMILE
(907) 452-8154

[60] Exhibit D at page 44.
[61] *Juanita Brown's Depo.* starting at page 23, line 11 through page 25, line 1.
[62] *Juanita Brown's Depo.* at page 59, lines 3-7.
[63] *Juanita Brown's Depo.* at page 70, lines 2-7.

**e. Continental's own billing records establish that CBNA paid premiums.**

There is evidence of billing and correspondence between CBNA and Continental. Specifically, a revealing accounting record (Exhibit B to CBNA's *Motion for Summary Judgment* (10/1/07)) shows premiums paid by CBNA to Continental. The authenticated Continental records establish that it received payment from CBNA in 1974 of $13,494.[65]

**f. Continental's own evidence confirms CBNA's policy.**

As noted above, numerous records confirm CBNA's insurance relationship with Continental. Continental's underwriter at the time (Julian Robb) and the LaBow Haynes broker (Juanita Brown) at the time both have testified as to their memories and the records affirming CBNA's insurance relationship with Continental. The above deposition excerpts, together with the exhibits of secondary evidence, prove that CBNA was insured by Continental for "liability" coverage during the relevant time frame.

**B. THE DOCUMENTS UPON WHICH CBNA RELIES *ARE* ADMISSIBLE UNDER THE BUSINESS RECORDS HEARSAY EXCEPTION.**

Continental is mistaken when it states that CBNA must have witnesses (beyond records custodians) with personal knowledge of the documents upon which its relies. The secondary, documentary evidence of CBNA's insurance relationship with Continental is admissible under the "Business Records" hearsay exception set forth in the Federal Evidence Rules. Federal Evidence Rule 803(6) specifically states:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:...**(6) Records of regularly conducted activity.** *A memorandum, report, record, or data compilation, in any form, or acts, events,*

OOK SCHUHMANN
GROSECLOSE, INC.
FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

---

[64] *Juanita Brown's Depo.* at page 73, lines 16-21.
[65] Exhibit B.

> *conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity*, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all *as shown by the testimony of the custodian or other qualified witness*, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.[66]

There is no requirement that the person testifying about the evidence have personal knowledge in order for the documents to be admissible as business records.[67]

To be admissible under 28 U.S.C. § 1732, the document or writing must be "a memorandum or record" of some "act, transaction, occurrence or event."[68] "The memorandum or record must have been made in the 'regular course' of the business. It

---

[66] Emphasis Added.

[67] Additionally, 28 U.S.C.A § 1732 outlines the admissibility of business records and further delineates Federal Rule 803(6):

> If any business, institution, member of a profession or calling, or any department or agency of government, in the regular course of business or activity has kept or recorded any memorandum, writing, entry, print, representation or combination thereof, of any act, transaction, occurrence, or event, and in the regular course of business has caused any or all of the same to be recorded, copied, or reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic, or other process which accurately reproduces or forms a durable medium for so reproducing the original, the original may be destroyed in the regular course of business unless its preservation is required by law. Such reproduction, when satisfactorily identified, is as admissible in evidence as the original itself in any judicial or administrative proceeding whether the original is in existence or not and an enlargement or facsimile of such reproduction is likewise admissible in evidence if the original reproduction is in existence and available for inspection under direction of court. The introduction of a reproduced record, enlargement, or facsimile does not preclude admission of the original. This subsection shall not be construed to exclude from evidence any document or copy thereof which is otherwise admissible under the rules of evidence.

[68] 28 U.S.C.A § 1732

OOK SCHUHMANN
GROSECLOSE, INC.
I FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810
(907) 452-1855
FACSIMILE
(907) 452-8154

must also have been in the regular course of the business to make the memorandum or record 'at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.'"[69]

The record's trustworthiness lies in it being a regular reflection of the day-to-day operations of the business in whose files the memoranda and reports are found.[70] Day-to-day operations of a commercial enterprise are those in which the business is directly concerned as a participant.[71] Examples include: ***offers, bids, sales, purchases, deliveries, price quotations***, inventory changes, salary and wage payments and deductions, credit extensions, loans, rentals and bank deposits.[72]

Here, CBNA relies upon secondary evidence in the form of offers,[73] bids,[74] purchases,[75] sales,[76] and price quotations.[77] These all are admissible "business records," created in day-to-day operations to further CBNA's insurance relationship with Continental.

V. **Conclusion**

For the reasons explained above and by CBNA's competing summary judgment motion, Continental's motion for summary judgment should be denied. Continental's suggestion that insufficient proof exists of an insurance relationship benefiting CBNA

---

69 *Standard Oil Company of California v. Moore*, 251 F.2d 188, 213 (9th Cir. 1958).
70 *Palmer v. Hoffman*, 318 U.S. 109, 112 (1943).
71 *Standard Oil Co. of Ca.*, 251 F.2d at 213.
72 *Id.* (Emphasis added).
73 *Julian Robb's Depo.* starting at page 74, line 23 through page 76, line 1.
74 *Id.*
75 The authenticated Continental records establish that it received payment from CBNA in 1974 of $13,494. *See* Exhibit B at page 3 to CBNA's *Motion for Summary Judgment* (Robb deposition exhibit 8).
76 Id. (i.e. sales of $13,494).
77 *Julian Robb's Depo.* starting at page 74, line 23 through page 76, line 1.

OOK SCHUHMANN
GROSECLOSE, INC.
I FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810
(907) 452-1855
FACSIMILE
(907) 452-8154

confronts the compelling, undisputed proof detailed through CBNA's counter motion. There is substantial evidence showing that insurance policies existed from October 14, 1973 and extending to April 15, 1979 and that the terms of the liability policies were comparable to those policies issued to the Anchorage Diocese (appearing as Exhibits D and E to CBNA's *Motion for Summary Judgment* (10/7/07)).

DATED at Fairbanks, Alaska, this 8th day of November, 2007.

COOK, SCHUHMANN & GROSECLOSE, Inc.
Attorneys for Catholic Bishop of Northern Alaska

By: s/Robert B. Groseclose
Alaska Bar No. 7605032

**CERTIFICATE OF SERVICE**
This is to certify that on the 8th day of November, 2007, a copy of the foregoing is being mailed via first class mail fully prepaid to the following attorney(s) or party(s) of record:
Gary A. Zipkin, Esq.
Guess & Rudd, P.C.
510 L Street, Suite 700
Anchorage, AK 99501
Laura K. McNally and Philip C. Stahl
Grippo & Elden LLC
111 S. Wacker Drive
Chicago, IL 60606

s/Robert B. Groseclose
for Cook Schuhmann & Groseclose, Inc.

OOK SCHUHMANN
GROSECLOSE, INC.
4 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810
(907) 452-1855
FACSIMILE
(907) 452-8154