Gary A. Zipkin
**GUESS & RUDD P.C.**
510 L Street, Suite 700
Anchorage, Alaska 99501
Phone: 907-793-2200
Alaska Bar No. 7505048

**Attorneys for The Continental Insurance Company**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE CONTINENTAL INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CATHOLIC BISHOP OF NORTHERN ALASKA,<br><br>　　　　Defendant. | Case No. 3:06-cv-00019 TMB |

**THE CONTINENTAL INSURANCE COMPANY'S RESPONSE TO MEMORANDUM OF COUNSEL IN SUPPORT OF CBNA'S MOTION FOR SUMMARY JUDGMENT ON <u>EXISTENCE, COVERAGE AND TERMS OF POLICY COVERING CBNA</u>**

　　　　In the Continental Insurance Company's ("Continental") Memorandum of Law in Support of its Motion for Summary Judgment, which is incorporated by reference herein, Continental attempted to anticipate the evidence on which the Catholic Bishop of Northern Alaska ("CBNA" or "Fairbanks") would seek to establish the existence, terms and conditions of coverage under certain policies allegedly issued to CBNA as a named insured. Continental explained that these documents and testimony were insufficient as a matter of law to satisfy CBNA's burden of proving the terms and conditions of coverage.

In the instant cross-motion for summary judgment, CBNA reveals its evidentiary basis for the alleged coverage, and for the first time, asserts that CBNA was actually an additional insured under policies issued to the Archdiocese of Anchorage – an entirely separate entity. As discussed below, CBNA's motion for summary judgment fails as a matter of law.

The argument section of CBNA's brief is divided into two sections. The first section is devoted to proving the existence of the policy under which CBNA sought coverage from Continental: Policy SMP 2390621. (CBNA's Memorandum of Counsel in Support of CBNA's Motion For Summary Judgment on Existence, Coverage, and Terms of Policy Covering CBNA ("CBNA Mem.") at pp. 4-9.) Continental does not dispute that it issued this policy. CBNA's motion fails, however, to provide evidence of the terms and conditions of Policy SMP 2390621. As a result, CBNA is not entitled to summary judgment based on this policy.

The second argument section (with the exceptions of one sentence of argument and a short deposition quote on page 14) is devoted to proving that CBNA was an additional insured on policies issued to the Archdiocese of Anchorage. (CBNA Mem. at pp. 10-14. See CBNA Ex. D,[1] Policy SMP 8288602,[2] and CBNA Ex. E, Policy SMP 2397994 (collectively the "Anchorage Policies").) The Anchorage Policies have been located, and neither covers, let alone mentions, CBNA. No admissible extrinsic evidence supports CBNA's claim that it was an additional insured on either Anchorage Policy.

---

[1] To avoid reproducing cited exhibits, Continental cites to both exhibits filed with CBNA's motion for summary judgment ("CBNA Ex. __") and Continental's own motion for summary judgment ("Ctl. Ex. __"). Continental also cites the February 5, 2007 deposition of Juanita Brown ("J. Brown dep."), the October 4, 2006 deposition of Julian Robb ("J. Robb dep."), the December 12, 2006 deposition of George Bowder ("G. Bowder dep."), which were submitted with CBNA's motion for summary judgment, and the December 8, 2006 deposition of Kenneth Murray ("K. Murray dep."), which is Ctl. Ex. H.

[2] The named insured references in CBNA Ex. D have been redacted, but the Parties agree that this document was issued to the Archdiocese of Anchorage. The policy number can be found on page 25 of 56.

THE CONTINENTAL INS. CO.'S RESPONSE TO MEMORANDUM OF COUNSEL
IN SUPPORT OF CBNA'S MOTION FOR SUMMARY JUDGMENT ON EXISTENCE,
COVERAGE AND TERMS OF POLICY COVERING CBNA
Continental Insurance Co. v. Catholic Bishop of Northern Alaska, Case No. 3:06-cv-00019 TMB
Page 2 of 12

CBNA's claim for coverage under the Anchorage Policies is based entirely on the testimony of Juanita Brown, a former employee of Labow Haynes, CBNA's broker. This testimony is inadmissible under the best evidence rule (Fed. R. Evid. 1002) and therefore cannot be considered here. Regardless, in the same deposition, in testimony not cited in CBNA's brief, Ms. Brown conceded that the policy documents contained no mention of CBNA (see pp. 8-9, infra) and therefore did not support her recollection. CBNA therefore fails to prove it is entitled to summary judgment based on the Anchorage Policies.

## ARGUMENT

### A. Standard for Summary Judgment.

Summary judgment can only be granted where there is no "genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[D]isputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). CBNA, as the moving party, bears the initial responsibility of informing the district court of the basis for its motion and, as the party with the burden of proof at trial, must "make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002) (internal citations omitted). "In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party," here Continental. Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); see also United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

B. **CBNA Must Prove the Policy Period, Terms, Conditions and Limits of the Alleged Policies.**

In Alaska, the purported insured bears the burden of proving the existence of coverage. MAPCO Alaska Petroleum v. Central Nat'l Ins. Co., 795 F. Supp. 941, 948 (D. Alaska 1991); see also Butler v. Gale, 866 P.2d 837, 845 (Alaska 1994) (party seeking to recover under an instrument must establish the terms of the instrument); 17A COUCH ON INSURANCE (3d ed.) § 254:28 ("[a] party relying on the terms of a missing insurance policy . . . must bear the burden of establishing the existence and terms of the policy"); 17A COUCH ON INSURANCE (3d ed.) § 255:7 ("[t]he burden of proving the existence and terms of the alleged policy fall on the party which asserts them as a basis for some right or recovery"). Other jurisdictions have also followed this rule. See, e.g., Dart Industries, Inc. v. Commercial Union Ins. Co., 28 Cal. 4th 1059, 1071 (Cal. 2002) (where a claimant seeks coverage under an alleged policy, "the claimant has the burden of proving (1) the fact that he or she was insured under the lost policy during the period in issue, and (2) the substance of each policy provision essential to the claim for relief, i.e., essential to the particular coverage that the insured claims"); City of Sharonville v. American Employers Ins. Co., 109 Ohio St. 3d 186, 191 (Ohio 2006) (citing 17 COUCH ON INSURANCE (3d ed.), § 254:11) ("an insured seeking benefits must prove the existence of a policy covering the relevant period"); UNR Industries, Inc. v. Continental Ins. Co., 682 F. Supp. 1434, 1447 (N.D. Ill. 1988) (policyholder has burden of proving material terms).

C. **CBNA Cannot Establish the Potential for Coverage Under Policy SMP 2390621.**

CBNA uses over five pages of its Memorandum of Law to argue that Continental issued Policy SMP 2390621. (CBNA Mem. at pp. 4-9.) While Continental does not agree with

CBNA's interpretation of certain evidence,[3] Continental admits that it did, in fact, issue a policy to CBNA with the number SMP 2390621.

It is not enough, however, to simply prove the existence of a policy. CBNA must also prove the terms and conditions of coverage. See 17A COUCH ON INSURANCE (3d ed.) § 255:7; Dart, 28 Cal. 4th at 1071; UNR Industries, 682 F. Supp. at 1447; Star Steel Supply Co. v. United States Fidelity & Guaranty Co., 465 N.W.2d 17, 19-20 (Mich. Ct. App. 1990) (affirming trial court judgment in favor of insurer where trial judge was convinced that a policy had been issued based on the evidence, but the policyholder failed to sustain its burden with regard to the terms of the policy). A mere policy number is simply insufficient to establish potential for coverage.

After arguing that Policy SMP 2390621 existed, CBNA devotes almost no discussion to establishing the terms or conditions of this policy. CBNA only mentions Policy SMP 2390621 again on page 14 of the brief, quoting Ms. Brown's deposition. In this text, Ms. Brown speculates that if CBNA had a separate policy, "[t]he forms would be identical" to

---

[3] For example, CBNA states that "undisputed documents establish that Continental's field agent (Evelyn Christopher) was messaging Continental underwriter Julian Robb for a policy to commence '10-14-73.'" (CBNA Mem. at 5.) While CBNA indicated that the relied upon document is CBNA Ex. F of its motion, no such document was included with CBNA's submission (Continental submitted the document as Ctl. Ex. D). Neither party located a response to this telex, and no witness testified that he or she had personal knowledge of this document or its contents. The one witness who was questioned about the document, former LaBow Haynes underwriter Juanita Brown, indicated that the document likely was not shared with LaBow Haynes. (J. Brown dep. at 27:2-22.) Similarly, CBNA asserts that "authenticated Continental records further establish that it received payment from CBNA in 1974 of $13,494," citing CBNA Ex. B. (CBNA Mem. at 5.) No witness, however, has personal knowledge of this document or its contents. Former Continental underwriter Julian Robb testified that he was not even sure whether this was a Continental document. (J. Robb dep. at 51:10-23, 54:2-7.) Juanita Brown testified that the document "[looks like] a print out of an accounts payable," (J. Brown dep. at 42:24-44:24.), but she did not work with such documents as part of her normal job duties and lacked any personal knowledge of the document's origin or contents. (Id. at 64:24-65:25.) Continental more fully discusses the documents cited by CBNA in Continental Insurance Company's Memorandum In Support Of Its Motion For Summary Judgment at pp. 3-7.

THE CONTINENTAL INS. CO.'S RESPONSE TO MEMORANDUM OF COUNSEL
IN SUPPORT OF CBNA'S MOTION FOR SUMMARY JUDGMENT ON EXISTENCE,
COVERAGE AND TERMS OF POLICY COVERING CBNA
Continental Insurance Co. v. Catholic Bishop of Northern Alaska, Case No. 3:06-cv-00019 TMB
Page 5 of 12

the policy issued to the Archdiocese of Anchorage and that the CBNA policy would be roughly 50 pages or 100 pages in length. (CBNA Mem. at 14.)

The referenced testimony provides no details of the alleged coverage. Ms. Brown did not testify that the specific terms would have been identical to terms in the Anchorage Policies. Indeed, in later testimony not quoted by CBNA in its motion, Ms. Brown testified that the terms could have been different.

> Q: The forms would be identical, the terms of coverage in terms of policy limits . . . . would they be any different?
>
> . . . .
>
> A: I don't know.
>
> Q: *So it could be different?*
>
> A: *Yeah, it could be, right.*

(J. Brown dep. at 70:7-18 (emphasis added).)

> Q: And [Policy SMP 2390621], do we know whether it had liability coverage or not?
>
> A: No.
>
> Q: Do we know, if it had liability coverage, what the amount of the liability coverage would be?
>
> A: *Know nothing of it.*
>
> Q: *We know nothing of the provisions of coverage?*
>
> A: *No.*
>
> Q: Okay.
>
> A: Without seeing the policy –
>
> Q: Without seeing the policy what?

    A: You can't distinguish. *You can't say what's in the policy if you can't see the policy*.

(Id. at 64:9-23 (emphasis added, objection omitted).)

  Similarly, former Continental underwriter Julian Robb and former insurance agent Kenneth Murray testified that each risk was underwritten individually, preventing any inference that coverage issued to CBNA would necessarily have been identical to policies issued to the Archdiocese of Anchorage. Julian Robb testified that an underwriter assesses the risks of the particular insured in creating a policy, and one cannot know a policy's terms without reviewing the actual language of the policy issued to that entity. (J. Robb dep. at 99:2-6, 100:9-25.) Kenneth Murray testified that two SMP policies do not necessarily include the same types of coverage. (Ctl. Ex. H, K. Murray dep. at 14:3-15:1, 15:20-16:13.) Even if general liability coverage were included in two policies, the policies could differ on such terms as whether defense costs erode the policy's limits. (Id. at 47:4-48:17.)

  The testimony of Juanita Brown, Julian Robb and Kenneth Murray all create, at a minimum, a genuine issue of fact regarding the terms and conditions of coverage in Policy SMP 2390621. CBNA's motion for summary judgment on Policy SMP 2390621 must be denied.

**D. <u>CBNA Cannot Establish Potential for Coverage Under the Anchorage Policies.</u>**

  Although CBNA never tendered any claims under the Anchorage Policies (<u>see</u> Ctl. Ex. A and Ctl. Ex. B) and did not mention these policies in its responsive pleadings, CBNA now asserts that it was an additional insured under the Anchorage Policies. (<u>See</u> CBNA Mem. at pp. 10-14.) Other that Ms. Brown's testimony, which is addressed separately, CBNA offers no

evidence to support its claim of coverage under the Anchorage Policies. The Policies make no mention of CBNA. (See CBNA Ex. D and CBNA Ex. E.) Nor is there any secondary evidence suggesting that CBNA was ever an additional insured on those policies.

Federal Rule of Evidence 1002 provides, "To prove the content of a writing, recording or photograph, the original writing, recording or photograph is required, except as otherwise provided in these rules or by Act of Congress." The only exception to this requirement occurs when the original (or duplicate, see Fed. R. Evid. 1003) has been lost, destroyed or is otherwise not available. Fed. R. Evid. 1004. See also Torres v. State, 519 P.2d 788, 797 (Alaska 1974) ("where the contents of a writing are in issue, the Best Evidence Rule places a higher burden on the party seeking to introduce the contents of the writing to produce the original writing into evidence"). Here, where the original Anchorage Policies have not been lost or destroyed, the writings are the best evidence of their terms, and Ms. Brown's recollections of their contents are therefore inadmissible. See United States v. Bennett, 363 F.3d 947, 952 (9th Cir. 2004). "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002) (internal citations omitted). Accordingly, this Court may not consider Ms. Brown's testimony asserting that CBNA was an additional insured under the Anchorage Policies.

Even if the Court were to consider this testimony, however, CBNA could not prevail. In her deposition, Ms. Brown testified on several occasions that she recalled CBNA being insured under the Anchorage Policies, under a program in which the policies were issued to the "Tri-Di" – the Archdiocese of Anchorage and the Dioceses of Juneau and Fairbanks. (J. Brown dep. at 32:22-33:19, 40:20-25, 58:4-22.)

But in language not cited in CBNA's motion, Ms. Brown conceded that the Anchorage Policies contain no mention of coverage for CBNA:

> Q: Okay. And why would you say that [CBNA was added as a co-insured or additional insured as part of the Anchorage Policies]?
>
> A: *Well, I guess not. They don't seem to be.*
>
> Q: I'm not trying to put words in your mouth. It looks like there were some endorsements that added, like you gave the example, the Daughters of Saint Paul, right?
>
> A: Yeah. *I don't see an endorsement adding Fairbanks at all.*

(Id. at 41:1-7 (emphasis added).)

> Q: Can you show me anywhere in here where it specifically references Fairbanks?
>
> A: I don't think so. . . . *I do not see an amendment to the policy adding Fairbanks.*

(Id. at 59:9-19 (emphasis added).)

Ms. Brown then conceded that the Anchorage Policies were not issued with CBNA as a named insured:

> Q: . . . . "[T]he fact that CBNA is not listed, doesn't that suggest that *[CBNA] wasn't on this [Anchorage] policy prior to 4/15/75?*"
>
> A: *Exactly.*
>
> Q: Does that lead you to say, *it must not have been issued a policy by Pacific Insurance or Continental -- to CBNA prior to 4/15/75?*
>
> A: *Yes.*

(Id. at 60:16-23 (emphasis added).)

Ms. Brown then conceded that the existence of later endorsements adding additional insureds other than CBNA suggested that CBNA had not been added to the policy:

> Q: So if we have this endorsement adding the Sisters of Saint Paul, in '77, *wouldn't you expect that if the Fairbanks Diocese was added to the policy by that date 8/1/77, we would see an endorsement adding them?*
>
> A: *Exactly.*
>
> Q: *But you don't see that endorsement?*
>
> A: *No I don't.*
>
> . . . .
>
> Q: And as you follow all these endorsements by 1977, *there's not a single reference to Fairbanks in these endorsements in 1977*?
>
> A: *No*.

(Id. at 62:19-63:10 (emphasis added).)

Ms. Brown acknowledged that she had no memory regarding when Fairbanks was added as an additional insured on any Anchorage Policy:

> Q: [C]an you tell us on what day CBNA, the Fairbanks Diocese – on what day or what month or what year they were added to this policy, SMP 2397994?
>
> A: *I cannot state. I have no recollection.*
>
> . . . .
>
> Q: Okay. As of that date, do you know for a fact that the Fairbanks Diocese was on the [Anchorage Policy,] was an additional insured on the date that the limits were raised?
>
> A: *No, I have no idea*.

(Id. at 66:1-18 (emphasis added).)

CBNA's claim that the Anchorage Policies covered all "Tri-Di" members is further undermined by testimony provided by CBNA's own Director of Finance since 1978, George Bowder. Mr. Bowder testified that the "Tri-Di" was not set up until April of 1983, well after the Anchorage Policies terminated. (G. Bowder dep. at 8:15-18.)

Because CBNA has produced no admissible evidence that it was insured under the Anchorage Policies, and even the inadmissible testimony on which CBNA relies fails to establish as a matter of law that CBNA was insured under those policies, CBNA's motion for summary judgment based on these Policies must be denied.

### E.  Conclusion.

CBNA cannot, as a matter of law, meet its burden of proving the terms and conditions of coverage. Accordingly, Continental respectfully requests that the Court deny CBNA's motion for summary judgment.

DATED at Anchorage, Alaska this 9th day of November 2007.

> GUESS & RUDD P.C.
> Attorneys for Plaintiff
>
> By:     s/ Gary A. Zipkin
>       510 L Street, Suite 700
>       Anchorage, Alaska  99501
>       Phone:  907-793-2200
>       Fax:    907-793-2299
>       Email:  gzipkin@guessrudd.com
>       Alaska Bar No. 7505048

CERTIFICATE OF SERVICE
I hereby certify that on the
9th day of November, 2007, a copy
of the foregoing document was served
electronically on:

Robert B. Groseclose, Esq.
Laura K. McNally, Esq.
Philip C Stahl, Esq.

Guess & Rudd P.C.


By:     s/ Gary A. Zipkin

F:\DATA\6024\3\pleading\28 Brief in opposition to CBNA motion for summary judgment.DOC