IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

CONTINENTAL INSURANCE COMPANY, )
)
          Plaintiff, )
v. )
)
CATHOLIC BISHOP OF NORTHERN )
ALASKA, )
          Defendant. )
_____)

Case No. 3:06-cv-00019 TMB

### CBNA'S REPLY TO CONTINENTAL'S RESPONSE TO CBNA'S MOTION FOR SUMMARY JUDGMENT ON EXISTENCE, COVERAGE AND TERMS OF POLICY

Continental has opposed Catholic Bishop of Northern Alaska's (CBNA's) motion for summary judgment filed October 1, 2007, by arguing that 1) CBNA has the burden of proof (something CBNA does not dispute), 2) CBNA cannot establish the "potential for coverage under policy SMP 2390621" (a policy Continental acknowledges issuing); and 3) CBNA cannot link its coverage to its sister diocese's (Anchorage's) policies. For the reasons covered in CBNA's opposition to Continental's competing motion for summary judgment, CBNA has presented undisputed, compelling secondary evidence of its coverage through Continental from 1973-79.[1]

    **1.**     **CBNA Has Proven the Policy Period, Terms, Conditions and Limits of the Policies Through Secondary Evidence.**

As addressed in its opening memorandum, CBNA has presented secondary evidence proving the period, terms, conditions, and limits of the policies issued by Continental. Continental cites *Mapco Alaska Petroleum, Inc. v. Central National*

OOK SCHUHMANN
GROSECLOSE, INC.
4 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

---

[1] CBNA acknowledges that its reply briefing in part duplicates its briefing in opposition to Continental's motion for summary judgment. While saying the same thing once, not twice, is laudable, CBNA has erred in favor of assuring that the record as to each separate competing motion is clear.

*insurance Company of Omaha*,[2] but ignores critical language as to "secondary evidence" an insured need produce to establish the existence and terms of a "missing policy".

In *Mapco*, an oil refinery sued its insurers for coverage of environmental cleanup costs.[3] Mapco, like CBNA, was unable to locate the actual policy, which had similarly been issued years prior to litigation.[4] Mapco produced secondary evidence in the form of correspondence and invoices indicating payment of premiums.[5] This court determined that Mapco had presented sufficient evidence to establish the policy's existence.[6] *Mapco* makes clear that a policyholder need only supply evidence to satisfy a "more likely than not" (not clear and convincing) standard.[7]

CBNA, like Mapco, has provided secondary evidence of the issuance and renewal of liability policies of coverage.[8] Secondary evidence is an expansive term and can include financial documents, correspondence, annual reports, certificates of insurance, and records of premium payments.[9] Courts are lenient in allowing proof of

---

[2] 795 F. Supp. 941 (D. Alaska 1991).
[3] 795 F. Supp. at 941-48.
[4] *Mapco*, 795 F. Supp. at 948.
[5] *Id.*
[6] *Id.*
[7] *Id.* at 948-49 ["while [the insurer] argues that [Mapco] must prove the existence of the missing policy with clear and convincing evidence, it provides no Ninth Circuit authority for application of that evidentiary standard. [Mapco] has provided the court with sufficient evidence of the existence of the missing policy for the purposes of summary judgment."]
[8] See Exhibit A to CBNA's *Motion for Summary Judgment* (10/1/07). See also Exhibit F. Although referred to throughout CBNA's opening memorandum and duplicated as Exhibit D to Continental's competing motion, Exhibit F was inadvertently omitted from CBNA's opening memorandum.
[9] Ostrager & Newman, *supra*, § 17.04.

OOK SCHUHMANN
GROSECLOSE, INC.
4 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

CBNA's Reply to Response to Continental's Motion for Summary Judgment
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 2 of 13

the policy, especially where a premium has been paid.[10] Such evidence is analyzed based on the following six factors:

1. the type of insurance at issue;
2. the degree to which this type of insurance can be shown to be "standardized" either in the pertinent geographic area, or by the specific insurer;
3. how long an insurance history the insured has with this type of insurance, generally, and with the insurer who issued the lost policy;
4. how good the insured's secondary records-keeping is;
5. the amount of correspondence and the bill paying that has occurred between the insured and the insurer; and
6. the degree to which the insurer and any agents may be able to contribute meaningful records.[11]

### a.    CBNA's "SMP" liability policy is known.

Acknowledged by Continental, secondary sources prove that Continental issued CBNA a liability policy coded a "SMP" (Special Multi-Peril) policy.[12] A 1973 telex[13] sets the order date of CBNA's policy, with supplemental accounting references,[14] assigned representative policies,[15] and "liability" coding[16] filling in the balance. As concerns the terms of coverage, that gap is readily filled by the representative policies issued to CBNA's sister diocese.[17] We know from Continental's own underwriter (Julian Robb) that during the relevant time period Continental coded CBNA as being a "liability" policy

---

[10] 17A Couch on Insurance (3d ed.) § 255:7.
[11] *Id.*
[12] Continental underwriter Robb explained from the accounting coding that CBNA was carried as a "9" or "liability" insured. Robb deposition starting at page 20 line 13 through page 21 line 6.
[13] Exhibit F, attached hereto.
[14] Exhibit B to CBNA's *Motion for Summary Judgment* (10/1/07).
[15] Exhibits D and E to CBNA's *Motion for Summary Judgment* (10/1/07).
[16] Exhibit B to CBNA's *Motion for Summary Judgment* (10/1/07). Continental underwriter Robb testified that a "9" code refers to a "liability" policy holder. Robb deposition at 20-21.
[17] Exhibits D and E to CBNA's *Motion for Summary Judgment* (10/1/07).

'OOK SCHUHMANN
. GROSECLOSE, INC.
14 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

CBNA's Reply to Response to Continental's Motion for Summary Judgment
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 3 of 13

holder.[18] We also know that Continental used the national Insurance Services Office "ISO" form for its SMP policies.[19] The representative policies issued to CBNA's sister diocese establish the liability policy language and coverage.

    b. **Continental had a standardized, if not integrated, policy practice for its three Catholic dioceses policyholders.**

As noted in CBNA's opposition to Continental's Motion for Summary Judgment, retired insurance broker Juanita Brown testified to the common insurance policy practices of the Fairbanks Diocese (CBNA) and its sister dioceses in Juneau and Anchorage.[20] The policies were so similar that the insurance agents referred to the "insurance package" as the "Tri-Di" account.[21] Ms. Brown testified how "Tri-Di" was used to refer to all three of the policies.[22]

Continental's opposition points out Ms. Brown's acknowledgement that "seeing the policy" would eliminate doubt as to it actual terms.[23] Continental puts too fine a point on the obvious, namely, that if we had the actual policy we would not have to rely upon secondary evidence. CBNA will openly acknowledge that the actual policy would be the best evidence of its terms. As *Mapco* allows, however, that level of certainty is not required. Ms. Brown's testimony confirms and connects a Continental-CBNA insurance relationship on terms supplied through reference to known and located sister diocese policies of a comparable time period. The similarities between the Anchorage

---

[18] *Julian Robb Depo.* at 21-22.
[19] *Julian Robb Depo.* at 62, lines 16-19. "ISO" stands for "Insurance Services Offices, which is a group which does the filings [with state insurance commission offices] for forms and types of coverages." *Robb Depo.* at 21 line 24 through page 22 line 2.
[20] *Juanita Brown's Depo.* at 32-33.
[21] *Juanita Brown's Depo.* starting at page 32, line 23 through page 33, line 19.
[22] *Juanita Brown's Depo.* starting at page 32, line 23 through page 33, line 19.
[23] Continental's *Opposition* at 6-7.

OOK SCHUHMANN GROSECLOSE, INC.
4 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

CBNA's Reply to Response to Continental's Motion for Summary Judgment
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 4 of 13

Archdiocese and CBNA were known to the agents; the policies were handled under similar circumstances:

> Q: Do you have any reason to believe that CBNA would have been given or requests – would have been either given or that it requested limits other than similar to Anchorage?
> A: I'm not sure I understand your question. They wouldn't request limits – property limits or liability limits?
> Q: Liability. Yeah, I'm focused on general liability.
> A: They followed the other Diocese. Whatever they did the others followed.[24]

Ms. Brown also stated:

> Q: What is your understanding, during the 1970s, if a customer had general liability coverage, whether as part of Section II to an SMP policy or as a general liability stand-alone policy, as to defense cost?
> A: I can't remember. I would think that it would automatically be there, but I can't be sure.
> Q: If I were to represent to you that in Exhibits 2 and 3[25] there's policy language that refers to defense, do you have reason to think it would be any different than what was being marketed or given to the Archdiocese of Anchorage?
> A: No, it's a standard ISO form, insurance services office form.[26]

Ms. Brown testified that she remembered dealing with Continental's field agent Evelyn Christopher (i.e. the author of the Exhibit F telex placing coverage in October 1973) specifically about issues involving CBNA, including the scope of coverage.[27]

---

[24] *Juanita Brown's Depo.* starting at page 37, line 18 through page 38, line 3.
[25] Attached as Exhibits D and E, respectively.
[26] *Juanita Brown's Depo.* at page 50, lines 1-13.
[27] Q: Did you know Evelyn Christopher?
A: Yes.
Q: And how did you know her?
A: She worked for Continental Insurance Company. And I dealt with them on the account, and I dealt with her on issues involving the Bishop of Northern Alaska.
Q: What issues do you remember working on?
A: Well, the scope of coverage, mostly I'd say, prices.
Q: Do you know what the –if they were – if you placed a general liability policy for them?
A: Oh yes.

'OOK SCHUHMANN
GROSECLOSE, INC.
14 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

CBNA's Reply to Response to Continental's Motion for Summary Judgment
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 5 of 13

    c.    **CBNA has established its liability insurance history with Continental.**

As reflected by the 11/06/73 telex[28] and other period correspondence, CBNA's history with Continental began no later than the fall of 1973.[29] The policy was a SMP policy. As to the duration of Continental's policy of coverage, the undisputed evidence from CBNA's Finance Director, George Bowder, is that Continental carried CBNA's liability coverage up until a "changeover" on April 15, 1979.[30]

    d.    **CBNA has provided adequate records.**

CBNA has provided adequate records of the existence and policy terms. Ms. Brown set the limits of coverage for CBNA as being those for the Anchorage Archdiocese:[31]

> Q: Okay. Let's – before we jump to Exhibit 3 [Exhibit E to CBNA's *Motion for Summary Judgment* (10/1/07) (policy for 4/15/75-4/15/78)], let's back up to Exhibit 2 [Exhibit D](policy for 4/15/72 to 4/15/75). Is – what I see here as part of Exhibit 2 [Exhibit D] – it appears to be the 6th page – is a document that starts up at the top?
> A: Declarations.
> Q: Yeah, is that the declaration sheet?
> A: Right.

---

Q: And tell me what you remember about that.
A: It was just a general liability, a standard general liability policy with whatever additional coverage you could buy, like personal injury and stuff like that.
*Juanita Brown's Depo.* at page 16, lines 3-19.
[28] Exhibit F hereto.
[29] Exhibit F to CBNA's *Motion for Summary Judgment* (10/12/07); See attached Exhibit F.
[30] *George Bowder deposition* at p. 40, lines 6-21.
[31] Per page 44 of Exhibit D to CBNA's *Motion for Summary Judgment* (10/1/07) (Ex. 2 of Brown depo.), the Anchorage Archdiocese had coverage of:

| | |
|---|---|
| Bodily Injury Liability | $100,000 each person |
| | $300,000 each occurrence |
| | $300,000 aggregate |
| Property Damage Liability | $50,000 each occurrence |
| | $50,000 aggregate |

'OOK SCHUHMANN
. GROSECLOSE, INC.
14 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

CBNA's Reply to Response to Continental's Motion for Summary Judgment
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 6 of 13

> Q: And this has got LaBow, Haynes' name up at the top; is that right?
> A: Yes.
> Q: And that's the office that you worked at on D Street in Anchorage?
> A: 519 D, right?
> Q: And this declaration sheet, as I understand it for policy coverage, refers to an enclosure; does it not?…-under limits of liability – first there's a Section I and Section II like you were talking about; is that right?
> A: Yes.
> Q: And on Section II, it then has limits of liability. I see an asterisk, which refers to a document, "Per MLB 21 attached." Do you know what that means?
> A: No, I don't. I could possibly identify if it I saw it.
> Q: Okay. Well, let me just, to kind of speed this along, flip to a page that's toward the back of the packet in Exhibit 2 [Exhibit D], that in the upper right-hand corner says MLB 21.[32] Is this – of a form that you've seen before with policies?
> A: Oh, yeah, yes.
> Q: And in this case for the Archdiocese of Anchorage. Am I interpreting this correctly, that they had an insurance policy from April 15 of '72 to April 15th of '75?
> A: Right.
> Q: That had liability coverage of 100,000 for each person, 300,000 for each occurrence, and 300,000 in the aggregate; is that correct?
> A: Right. That's for bodily injury, property damage liability was for 50,000.[33]

While CBNA might not have been named in the headings of some policy references, it was included by an "et al." notation:

> Q: If Fairbanks was added in 1973 or 1974, why don't we see Fairbanks named? Why does it just say corporation of the Catholic Archbishop of Anchorage?
> …
> A: Et al.[34]

CBNA had the identical policy provisions as the Catholic Archbishop of Anchorage:

> Q: So if CBNA had a separate policy, do you have any reason to think the nature of that separate policy, that SMP policy would be any different than what we see for the Anchorage Diocese – understanding, of course, that the properties that they own would be different.

---

[32] Exhibit D at page 44.
[33] *Juanita Brown's Depo.* starting at page 23, line 11 through page 25, line 1.
[34] *Juanita Brown's Depo.* at page 59, lines 3-7.

'OOK SCHUHMANN GROSECLOSE, INC.
14 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810
(907) 452-1855
FACSIMILE
(907) 452-8154

CBNA's Reply to Response to Continental's Motion for Summary Judgment
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 7 of 13

A:   Exactly. The forms would be identical.[35]

Ms. Brown further stated:

Q:   And we've got here two sample policies of what went to Anchorage, Exhibit 2 [Exhibit D] and Exhibit 3 [Exhibit E]. One is roughly 50 pages and the other one is a hundred pages. Is that the sort of thing we would be expecting to look at for the missing policy, 2390621?
A:   Yes.[36]

### e.  Continental's own billing records establish that CBNA paid premiums.

There is evidence of billing and correspondence between CBNA and Continental. Specifically, a revealing accounting record (Exhibit B to CBNA's *Motion for Summary Judgment* (10/1/07)) shows premiums paid by CBNA to Continental. The authenticated Continental records establish that it received payment from CBNA in 1974 alone of $13,494.[37]

### f.  Continental's own evidence confirms CBNA's policy.

As noted above, numerous records confirm CBNA's insurance relationship with Continental. Continental's underwriter at the time of issuance (Julian Robb) and the LaBow Haynes broker (Juanita Brown) working with CBNA in he 1970s and 1980s at have both testified as to their memories and the records affirming CBNA's insurance relationship with Continental. Both witnesses are qualified, based on their experience and knowledge, to authenticate the exhibits pursuant to Federal Rules 803(6)[38] and

---

[35] *Juanita Brown's Depo.* at page 70, lines 2-7.
[36] *Juanita Brown's Depo.* at page 73, lines 16-21.
[37] Exhibit B to CBNA's *Motion for Summary Judgment* (10/1/07).
[38] Fed. R. Evid. 803(6) - The following are not excluded by the hearsay rule, even though the declarant is available as a witness:…**(6) Records of regularly conducted activity.** *A memorandum, report, record, or data compilation, in any form, or acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from*

OOK SCHUHMANN
GROSECLOSE, INC.
14 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
AIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

CBNA's Reply to Response to Continental's Motion for Summary Judgment
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 8 of 13

1004.[39] The above deposition excerpts, together with the exhibits of secondary evidence, prove that CBNA was insured by Continental for "liability" coverage during the relevant time frame.

CBNA has provided accounting spreadsheets indicating payment of the premiums.[40] It has provided Continental's own inter-office communications.[41] It has provided period-representative policies issued to its sister, Alaskan diocese.[42] It has provided relevant letters and notes from Continental agents.[43] Finally, it has presented testimony from Continental underwriter Julian Robb and retired LaBow Haynes broker

---

*information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity*, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all *as shown by the testimony of the custodian or other qualified witness*, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit

[39] Fed. R. Evid. 1004 - The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if-- (1) **Originals lost or destroyed**. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or (2) **Original not obtainable**. No original can be obtained by any available judicial process or procedure; or (3) **Original in possession of opponent**. At a time when an original was under the control of the party against whom offered, that party was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and that party does not produce the original at the hearing; or (4) **Collateral matters**. The writing, recording, or photograph is not closely related to a controlling issue.

[40] See Exhibit B to CBNA's *Motion for Summary Judgment* (10/1/07).
[41] See Exhibit C to CBNA's *Motion for Summary Judgment* (10/1/07).
[42] See Exhibit D-E to CBNA's *Motion for Summary Judgment* (10/1/07).
[43] See Exhibits F to CBNA's *Motion for Summary Judgment* (10/1/07).

COOK SCHUHMANN  
& GROSECLOSE, INC.  
714 FOURTH AVE., SUITE 200  
POST OFFICE BOX 70810  
FAIRBANKS, AK 99707-0810  

(907) 452-1855  
FACSIMILE  
(907) 452-8154

CBNA's Reply to Response to Continental's Motion for Summary Judgment  
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB  
Page 9 of 13

Juanita Brown linking CBNA to Continental policies.[44] There is no evidence that the policies, including renewals, were cancelled or withdrawn from issuance in October 1973 until CBNA switched insurance effective April 15, 1979.[45]

The Fairbanks Diocese had similar coverage to its sister Diocese in Anchorage.[46] Secondary evidence (i.e. the exhibits attached to CBNA's original memorandum and current reply and the testimony from Continental agents) proves that CBNA is entitled to coverage under the missing policy terms.[47]

### 2.    Other Courts Have Found Coverage Based on Secondary Evidence Similar to CBNA's.

Other courts have reviewed "missing policy" cases and have made a determination as to what an insured must prove through secondary evidence.

For example, Continental, in its response, cited *Dart v. Commercial Union Insurance Co.*[48] In *Dart*, the California Supreme Court stated that showing merely *the substance of a missing policy* (and not the precise language) was sufficient.[49] As in CBNA's situation, *Dart* involved a policy missing when litigation commenced.[50] The insurer in *Dart* argued that in "most lost insurance policy cases from other jurisdictions, *there is at least an approximation of the actual language through specimen policies,*

---

[44] See *Depositions of Julian Robb and Juanita Brown* (pertinent excerpts accompany CBNA's *Motion for Summary Judgment* (10/1/07).
[45] *George Bowder deposition* at p. 40, lines 6-21.
[46] See Exhibit D to CBNA's *Motion for Summary Judgment* (10/1/07).
[47] See Exhibits A-F; see also *Depositions of Julian Robb and Juanita Brown* (pertinent excerpts accompany CBNA's *Motion for Summary Judgment* (10/1/07).
[48] 28 Cal. 4th 1059, 52 P.3d 79 (Cal. 2002).
[49] 28 Cal. 4th at 1074, 52 P.3d at 89. "[T]here is no reason either in the law of contract or of evidence why secondary evidence that attests to the substance but not the precise language of an insurance policy should be insufficient as a matter of law to establish the insurer's contractual obligations."
[50] 28 Cal. 4th at 1072, 52 P.3d at 88.

COOK SCHUHMANN & GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

CBNA's Reply to Response to Continental's Motion for Summary Judgment
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 10 of 13

*standardized policies*, policies from preceding or subsequent years and the like."[51]

"This does not mean that Dart is required to prove the policy's contents verbatim. Rather, it must prove the substance of the [policy] with sufficient evidence to show coverage for the [claims]."[52]

While Dart (the insured) was unable to provide a specimen or standardized policy, and hence was denied coverage,[53] the *Dart* court's reasoning nevertheless acknowledges the sufficiency of CBNA's proof:

> There is no evidence at all concerning the words used in the policy. *There is no evidence to show what sort of language was used by [the insurer] (in standard or manuscript policies or at all) at the time Dart's policy was issued* (or at any time). There is no evidence to show what sort of language was used in the industry at the time Dart's policy was issued (or at any time). There is no evidence to show what standard provisions, if any, were required by statute at the time Dart's policy was issued or what standardized provisions, if any, were usually incorporated into [the insurer's] CGL policies...[54]

In contrast to Dart, CBNA has shown the policy terms through a specimen policy from its sister diocese.[55] Unlike Dart, CBNA has presented a similar policy that, taken with other evidence, proves the comparable terms applicable to CBNA. CBNA's insurance broker (Juanita Brown) has already testified that the terms were similar.[56]

---

[51] 28 Cal. 4th at 1073-74, 52 P.3d at 90. (Emphasis Added); citing *Remington Arms Co. v. Liberty Mutual Ins. Co.*, 810 F. Supp.1420, 1427 (D.Del.1992); *Burroughs Wellcome Co. v. Commercial Union Ins. Co.*, 632 F. Supp. 1213, 1222-1223 (S.D.N.Y. 1986); *Employers' Liability Assurance Corp. v. Hoechst Celanese Corp.* 43 Mass. App. Ct. 465, 684 N.E.2d 600 (Mass. App. Ct. 1997).
[52] 28 Cal. 4th at 1074, 52 P.3d at 90.
[53] 28 Cal. 4th at 1073, 52 P.3d at 88-89.
[54] *Id.* (Emphasis Added).
[55] Attached as Exhibits D and E to CBNA's *Motion for Summary Judgment* (10/1/07).
[56] Juanita Brown's *Depo.* at page 5, lines 3-7; see also at page 32, line 23 through page 33, line 19; and at page 37, line 18 through 38, line 3.

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

CBNA's Reply to Response to Continental's Motion for Summary Judgment
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 11 of 13

Under *Dart*, CBNA does not have to prove the specific policy terms—it merely has to prove the <u>relevant substance</u> of the missing terms.

As noted, CBNA has proven terms found in the comparable Anchorage Archdiocese policy on page 44.[57]

The Anchorage Archdiocese had coverage of:

| | |
|---|---|
| Bodily Injury Liability | <u>$100,000 each person</u> |
| | <u>$300,000 each occurrence</u> |
| | <u>$300,000 aggregate</u> |
| Property Damage Liability | <u>$50,000 each occurrence</u> |
| | <u>$50,000 aggregate</u> |

Other jurisdictions outside of the ninth circuit have also encountered situations like the one facing CBNA.[58] Similar to *Dart*, the Massachusetts *Rubenstein v. Royal Insurance Company of America*[59] case demonstrates the sufficiency of CBNA's secondary evidence. In *Rubenstein*, the insured sued its insurer over a missing policy. The underlying loss was multiple-decades-old oil contamination and associated cleanup claims.[60] Upon proof comparable to CBNA's, the *Rubenstein* court found the existence and the terms of the lost decades-old policy.[61] It did so based upon the insured's testimony, that of the insurer's employees, a schedule of insurance prepared by an

---

[57] Per page 44 of Exhibit D to CBNA's *Motion for Summary Judgment* (10/1/07) (Ex. 2 of Brown depo.)
[58] Continental cites *City of Sharonville v. American Employers Ins. Co.*, 109 Ohio St. 3d 186, 191 (Ohio 2006); *UNR Industries, Inc. v. Continental Ins. Co.*, 682 F. Supp. 1434, 1447 (N.D.Ill.1988).
[59] 44 Mass. App. Ct. 842, 843-44, 694 N.E.2d 381, 382-383 (Mass. App. Ct. 1998).
[60] *Id.*
[61] 44 Mass. App. Ct. 842, 847, 694 N.E.2d 381, 384-385.

COOK SCHUHMANN & GROSECLOSE, INC.
14 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

CBNA's Reply to Response to Continental's Motion for Summary Judgment
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 12 of 13

insurance agency, specimen forms of the type of policy used by the insurer at the time, and the insurer's in-house memoranda.[62]

### 3. Conclusion.

CBNA has proven through undisputed, secondary evidence the existence and terms of its missing Continental insurance policy. CBNA is entitled to insurance coverage similar to that of the Anchorage Archdiocese for the term of October 1973 until April 15, 1979.

DATED at Fairbanks, Alaska, this <u>30th</u> day of November, 2007.

COOK, SCHUHMANN & GROSECLOSE, Inc.
Attorneys for Catholic Bishop of Northern Alaska

By: <u>s/Robert B. Groseclose</u>
Alaska Bar No. 7605032

**CERTIFICATE OF SERVICE**
This is to certify that on the 30th day of <u>November,</u> 2007, a copy of the foregoing is being mailed via first class mail fully prepaid to the following attorney(s) or party(s) of record:

Gary A. Zipkin, Esq.
Guess & Rudd, P.C.
510 L Street, Suite 700
Anchorage, AK 99501

Laura K. McNally and Philip C. Stahl
Grippo & Elden LLC
111 S. Wacker Drive
Chicago, IL 60606

<u>s/Robert B. Groseclose</u>
for Cook Schuhmann & Groseclose, Inc.

---

[62] *Id.*

COOK SCHUHMANN
& GROSECLOSE, INC.
714 FOURTH AVE., SUITE 200
POST OFFICE BOX 70810
FAIRBANKS, AK 99707-0810

(907) 452-1855
FACSIMILE
(907) 452-8154

CBNA's Reply to Response to Continental's Motion for Summary Judgment
Continental Insurance Company v. Catholic Bishop of Northern Alaska, Case # 3:06-cv-00019TMB
Page 13 of 13