Gary A. Zipkin
**GUESS & RUDD P.C.**
510 L Street, Suite 700
Anchorage, Alaska 99501
Phone: 907-793-2200
Alaska Bar No. 7505048
E-mail: gzipkin@guessrudd.com

**Attorneys for The Continental Insurance Company**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE CONTINENTAL INSURANCE COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> CATHOLIC BISHOP OF NORTHERN ALASKA, <br><br> Defendant. | Case No. 3:06-cv-00019 TMB |

**THE CONTINENTAL INSURANCE COMPANY'S REPLY TO CBNA'S RESPONSE REGARDING CONTINENTAL'S MOTION FOR SUMMARY JUDGMENT**

In its opening brief, The Continental Insurance Company ("Continental") asserted that the Catholic Bishop of Northern Alaska ("CBNA") is unable, as a matter of law, to prove the existence, terms and conditions of coverage, and as a result, Continental is entitled to summary judgment. In response, CBNA presented a smattering of deposition excerpts and conclusory characterizations of the evidence and the applicable evidentiary rules. When the arguments relating to uncontested issues are distilled out and the evidence purportedly supporting the conclusory descriptions of the evidence are examined, CBNA's arguments collapse. With

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Reply re Motion for Summary Judgment
Page 1 of 12

briefing now complete, the record is clear: CBNA's claims of coverage fail as a matter of law, and Continental is entitled to summary judgment.[1]

# ARGUMENT

## A. CBNA's Purported Secondary Evidence Is Largely Inadmissible.

As discussed on pages 12-13 of Continental's opening brief, the documents on which CBNA seeks to rely are inadmissible because they cannot be authenticated and lack foundation. Inadmissible documents may not be considered in ruling upon a motion for summary judgment. Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").

"The foundation is laid for receiving a document in evidence by the testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document and, where appropriate, its delivery." United States v. Dibble, 429 F.2d 598, 602 (9th Cir. 1970). CBNA's opposition offers no specific facts to counter Continental's statement that these documents lack foundation and cannot be authenticated. Rather, CBNA makes bald and unsupported statements that the documents are admissible.

For example, CBNA refers to Exhibit J as an "authenticated Continental record[]." (CBNA Opp. at pp. 5-6, 17.) The testimony regarding this document contradicts this statement. No witness has personal knowledge of this document or its contents; Julian Robb was not even sure whether this was a Continental document. (J. Robb dep. at 51:10-23, 54:2-7.)

---

[1] To avoid reproducing cited exhibits, Continental cites to both exhibits filed with Continental's opening brief ("Ex. __") and CBNA's motion for summary judgment ("CBNA Ex. __"). Continental also cites the February 5, 2007 deposition of Juanita Brown ("J. Brown dep."), the October 4, 2006 deposition of Julian Robb ("J. Robb dep."), the December 12, 2006 deposition of George Bowder ("G. Bowder dep."), which were submitted with CBNA's motion for summary judgment, and the December 8, 2006 deposition of Kenneth Murray ("K. Murray dep."), which is Ex. H.

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Reply re Motion for Summary Judgment
Page 2 of 12

Juanita Brown, a former employee of LaBow Haynes, CBNA's broker, was able to speculate only that the document "[looked like] a print out of an accounts payable." (J. Brown dep. at 42:24-44:24.)[2] Brown further testified that she did not work with such documents as part of her normal job duties and lacked any personal knowledge of the document's origin or contents. (Id. at 64:24-65:25.)

Similarly, no witness authenticated Exhibit D, the purported telex from Continental's Evelyn Christopher to Continental underwriter Julian Robb, dated November 6, 1973. (Cited at CBNA Opp. at pp. 5, 11, 13-14.) Julian Robb was not even asked about this document. Juanita Brown indicated that the document likely was not shared with her agency, LaBow Haynes, (J. Brown dep. at 27:2-22) and as a result, she could have no personal knowledge of its contents.

CBNA's key testimonial evidence is also inadmissible. Juanita Brown's testimony that CBNA was an insured under policies issued to the Archdiocese of Anchorage (CBNA Opp. at pp. 11-12, 14, 16) is inadmissible under the best evidence rule, Federal Rule of Evidence 1002, because the policies themselves contain no mention of CBNA or any other evidence that CBNA would be covered. (See Continental's Response To Memorandum Of Counsel In Support Of CBNA's Motion For Summary Judgment On Existence, Coverage And Terms Of Policy Covering CBNA ("Ctl. Opp.") at pp. 8-10.)

---

[2] The attorney propounding questions represented to Ms. Brown that Julian Robb, "in his deposition, has talked about this document being an accounting document that he believed Continental had generated to show payments made to LaBow, Haynes." (J. Brown dep. at 42:24-43:4.) This misrepresents Mr. Robb's testimony. Mr. Robb actually testified with respect to this document that he had "no recollection of [] this form at all." (J. Robb dep. at 51:17-52:6.)

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Reply re Motion for Summary Judgment
Page 3 of 12

CBNA responds to Continental's challenge by stating that the documents are admissible because they are not hearsay under the business records exception. (CBNA Opp. at 17-19.) This assertion is beside the point. The fact that a document may not be hearsay under Federal Rule of Evidence 803(6) does not mean that the document satisfies the other evidentiary rules, including Rules 901 (authentication/ foundation), 602 (personal knowledge) or 1002 (best evidence).

B.  **CBNA Cannot Establish Entitlement To Coverage.**

Much like a shell game, CBNA's response presents a variety of arguments and assertions designed to distract the Court's attention from the specific facts at issue and the specific evidence in the record. Undisputed issues are addressed in great detail as if they were contested by the parties, and the actual matters in dispute are glossed over with sweeping overstatements and subtle misdirection. When one examines CBNA's response in light of its burden of proof, however, it becomes clear that CBNA's claim fails as a matter of law.

To prevail, CBNA must prove the existence and material terms of any policy that allegedly provides coverage. MAPCO Alaska Petroleum v. Central Nat'l Ins. Co., 795 F. Supp. 941, 948 (D. Alaska 1991); Butler v. Gale, 866 P.2d 837, 845 (Alaska 1994). (See also Continental's Memorandum In Support Of Its Motion For Summary Judgment ("Ctl. s.j. mem.") at 11-12.) Continental's opening brief addressed the two policies under which CBNA had sought coverage: SMP 2390621 and SMP 2397996. In CBNA's motion for summary judgment, CBNA asserted for the first time that it was an additional insured under policies issued to the Archdiocese of Anchorage (the "Anchorage Policies"). We address each alleged policy in turn:

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Reply re Motion for Summary Judgment
Page 4 of 12

1. <u>CBNA Is Not Entitled to Coverage Under Policies Issued to the Archdiocese of Anchorage.</u>

In its Opposition to CBNA's Motion for Summary Judgment, Continental discussed at length CBNA's claim that the Anchorage Policies provided coverage to CBNA. (<u>See</u> Ctl. Opp. at pp. 7-11.) Rather than repeat that entire discussion, Continental incorporates its arguments by reference here. In short, there is absolutely no evidence whatsoever that CBNA was an insured under the Archdiocese of Anchorage policies. CBNA cannot rely on coverage under the Anchorage Policies to defeat summary judgment.

Although CBNA's broker, Juanita Brown, initially testified that she recalled CBNA being insured under the Anchorage Policies as part of the so-called "Tri-Di" program (J. Brown dep. at 32:22-33:19, 40:20-25, 58:4-22), she later conceded that the Anchorage Policies contain no mention of coverage for CBNA:

> Q: Okay. And why would you say that [CBNA was added as a co-insured or additional insured as part of the Anchorage Policies]?
>
> A: *Well, I guess not. They don't seem to be.*
>
> Q: I'm not trying to put words in your mouth. It looks like there were some endorsements that added, like you gave the example, the Daughters of Saint Paul, right?
>
> A: Yeah. *I don't see an endorsement adding Fairbanks at all.*

(<u>Id.</u> at 41:1-7 (emphasis added).)

> Q: Can you show me anywhere in here where it specifically references Fairbanks?
>
> A: I don't think so. . . . *I do not see an amendment to the policy adding Fairbanks.*

(<u>Id.</u> at 59:9-19 (emphasis added).)

<u>Continental Insurance Company v. Catholic Bishop of Northern Alaska,</u>
Case No. 3:06-cv-00019 TMB
CNA's Reply re Motion for Summary Judgment
Page 5 of 12

Ms. Brown then conceded that the Anchorage Policies were not issued with CBNA as a named insured:

> Q: . . . . "[T]he fact that CBNA is not listed, doesn't that suggest that *[CBNA] wasn't on this [Anchorage] policy prior to 4/15/75?*"
>
> A: *Exactly.*
>
> Q: Does that lead you to say, *it must not have been issued a policy by Pacific Insurance or Continental -- to CBNA prior to 4/15/75*?
>
> A: *Yes*.

(Id. at 60:16-23 (emphasis added).)

Ms. Brown next conceded that the existence of later endorsements adding additional insureds other than CBNA suggested that CBNA had not been added to the policy:

> Q: So if we have this endorsement adding the Sisters of Saint Paul, in '77, *wouldn't you expect that if the Fairbanks Diocese was added to the policy by that date 8/1/77, we would see an endorsement adding them?*
>
> A: *Exactly.*
>
> Q: *But you don't see that endorsement?*
>
> A: *No I don't.*
>
> . . . .
>
> Q: And as you follow all these endorsements by 1977, *there's not a single reference to Fairbanks in these endorsements in 1977*?
>
> A: *No*.

(Id. at 62:19-63:10 (emphasis added).)

Ms. Brown even acknowledged that she had no memory regarding when Fairbanks was added as an additional insured on any Anchorage Policy:

> Q: [C]an you tell us on what day CBNA, the Fairbanks Diocese – on what day or what month or what year they were added to this policy, SMP 2397994?

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Reply re Motion for Summary Judgment
Page 6 of 12

> A: *I cannot state. I have no recollection.*
>
> . . . .
>
> Q: Okay. As of that date, do you know for a fact that the Fairbanks Diocese was on the [Anchorage Policy,] was an additional insured on the date that the limits were raised?
>
> A: *No, I have no idea.*

(Id. at 66:1-18 (emphasis added).)

CBNA's claim that the Anchorage Policies covered all "Tri-Di" members is further undermined by testimony provided by CBNA's own Director of Finance since 1978, George Bowder. Mr. Bowder testified that the "Tri-Di" was not set up until April of 1983, well after the Anchorage Policies terminated. (G. Bowder dep. at 8:15-18.)

CBNA has produced no admissible evidence that it was insured under the Anchorage Policies; even the inadmissible testimony on which CBNA relies fails to raise a genuine issue as to whether CBNA was insured under those policies. Therefore, Continental's motion for summary judgment cannot be denied on this basis.

2. CBNA Cannot, As A Matter Of Law, Prove the Terms and Conditions of SMP 2390621.

CBNA's response is the most detailed when it presents evidence that Continental issued policy SMP 2390621. (See CBNA Opp. at pp. 3-6, 8-9.) That discussion is entirely irrelevant to Continental's motion for summary judgment, however. As stated repeatedly in its opening brief, Continental does not contest that it issued Policy SMP 2390621.

Continental does dispute, however, that CBNA can meet its burden of proving the terms and conditions of Policy SMP 2390621. (Ctl. s.j. mem. at pp. 3-6, 14-16.) CBNA's response brief made virtually no effort to provide any details of coverage. Rather, CBNA merely

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Reply re Motion for Summary Judgment
Page 7 of 12

stated, "As concerns the terms of coverage, that gap is readily filled by the representative policies issued to CBNA's sister diocese." (CBNA Opp. at p. 11.) All evidence in the record, however, contradicts CBNA's broad assurance that the Anchorage Policies may properly serve as gap-fillers. As discussed in Section 4 below, the evidence establishes that it would be an unreasonable inference for this Court to conclude that the two dioceses had identical policies.

3. CBNA Cannot, As A Matter Of Law, Prove the Existence, Terms or Conditions of Alleged Policy SMP 2397996.

Continental's opening brief demonstrated that no evidence in the record supported the argument that Continental ever issued Alleged Policy SMP 2397996. (Ctl. s.j. mem. at pp. 6-8, 13-14.) In its response brief, CBNA offered no new evidence or arguments to suggest that this policy was actually issued. Instead, CBNA offered conclusory statements about what the evidence showed, followed by deposition text that directly contradicted the conclusory statements. For example, CBNA's brief claimed, "The referenced 1975 writing [Continental's Exhibit M] *demonstrates that three policies did in fact exist.*" (CBNA Opp. at p. 6 (emphasis added).) The cited deposition testimony, however, highlighted that Exhibit M did not reference policies in existence; it referenced policies the broker was going to "require" *in the future*. (Ex. M; see also Ctl. s.j. mem. at pp. 6-7.) Indeed, when asked specifically if the language suggested "that a policy was actually issued or just that someone was seeking a policy," Mr. Robb speculated that the author meant only that the policy was "going to be issued." (J. Robb dep. at

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Reply re Motion for Summary Judgment
Page 8 of 12

125:14-126:9.) No witness was able to testify that a policy was actually issued.[3]

Not only was CBNA unable to establish that Alleged Policy SMP 2397996 was issued, it is also unable to establish the terms and conditions of the policy. As with Policy SMP 2390621, CBNA merely asserted that the "gap" of unknown policy information is "readily filled by the representative policies issued to CBNA's sister diocese." (CBNA Opp. at p. 11.) As discussed below, this argument fails as a matter of law.

   4. <u>The Terms And Conditions Of The Anchorage Policies Cannot Be Assumed To Be The Same As The Terms And Conditions Of The CBNA Coverage.</u>

All witnesses in this case make clear that one cannot assume that policies issued to different policyholders would be the same. Julian Robb testified that underwriters look at the specific exposures of the particular insured in creating a policy and tailor the policy to those particular exposures. (J. Robb dep. at 100:9-17.) "Religious institutions have their own problems from the standpoint of various things that they're involved in, *every one of them being different*. So from that standpoint, they would have been underwritten more carefully than, say, the Joe's Grocery next door." (<u>Id.</u> at 116:11-22 (emphasis added).)

Nor are there any standard terms, conditions, policy terms, or limits upon which CBNA can rely. As Mr. Robb testified, in order to know what is covered under a policy, one must see the policy. (<u>Id.</u> at 99:2-6.) Mr. Robb also testified that Continental did not maintain

---

[3] Notably, CBNA failed to establish that Mr. Robb had any personal knowledge regarding Exhibit M and whether any policies were issued pursuant to the instructions in Exhibit M:

> Q. Is this anything, apart from [Exhibit M] that you have a memory of being involved with or know anything about?
>
> A. I have no recollection of that.

(J. Robb dep. at 76:15-18.)

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Reply re Motion for Summary Judgment
Page 9 of 12

sample or template-type policies, and that because each policy is unique, one cannot reconstruct a policy from a policy number alone. (J. Robb dep. at 99:7-14; 66:21-67:7; 70:21-71:9.) He further testified that Continental policies did not have standard limits (Id. at 99:19-25), and that one would need to see a policy to determine its length (Id. at 100:18-25).

Similarly, Juanita Brown, CBNA's own broker, testified that there was insufficient evidence to determine the key relevant terms of the Alleged Policies:

> Q. And [Policy SMP 2396021], do we know whether it had liability coverage or not?
> 
> A. No.
> 
> …
> 
> Q. Do we know, if it had liability coverage, what the amount of the liability coverage would be?
> 
> A. *Know nothing of it.*
> 
> Q. *We know nothing of the provisions of coverage?*
> 
> A. *No.*
> 
> Q. Okay.
> 
> A. Without seeing the policy --
> 
> Q. Without seeing the policy what?
> 
> A. You can't distinguish. *You can't say what's in the policy if you can't see the policy.*

(J. Brown dep. at 64:9-23 (emphasis added).) Ms. Brown also testified that there were no standard limits ("[policy limits] would vary"). (Id. at 30:18-21.)

Former agent Kenneth Murray testified that two SMP policies did not necessarily include the same types of coverage. (Ex. H, K. Murray dep. at 14:3-15:1, 15:20-16:13.) Even if general liability coverage were included in two policies, the policies could differ on such terms as whether defense costs erode the policy's limits. (Id. at 47:4-48:17.) And CBNA has failed to

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Reply re Motion for Summary Judgment
Page 10 of 12

establish that the fact that a broker may have sought three policies at the same time means those policies would have contained the exact same terms (assuming all the policies were issued). In fact, such a conclusion would be an unreasonable inference from the documents (e.g., Exhibit M suggests that the Juneau and Anchorage policies would have contained different coverages).

CBNA seeks to impeach Mr. Murray's testimony by asserting that he "had nothing to do with the placement of CBNA's coverage." (CBNA Opp. at p. 11.) CBNA misunderstands Mr. Murray's testimony. As a former agent who worked with Continental policies, Mr. Murray had personal knowledge of Continental's underwriting procedures and is thus competent to testify that the fact that two policies have the same policy code prefix does not mean that the two policies had identical, or even necessarily similar terms.

As explained in Continental's opening brief, nothing other than speculation and conjecture support CBNA's contention that the terms and conditions of the Archdiocese of Anchorage policies should be imported wholesale to fill the gaps in CBNA's evidence. In its response brief, CBNA offered only more speculation and conjecture. In the face of such absence of admissible evidence, CBNA cannot, as a matter of law, meet its burden of proving the policies.

C. **Conclusion.**

CBNA has not sustained its burden to prove the existence of one Alleged Policy and the terms and conditions of either Alleged Policy, even when afforded all reasonable inferences. Therefore, Continental respectfully requests that the Court grant Continental's motion for summary judgment.

Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Reply re Motion for Summary Judgment
Page 11 of 12

DATED at Anchorage, Alaska this 30th day of November 2007.

        GUESS & RUDD P.C.
        Attorneys for Plaintiff


By:  Gary A. Zipkin

    Guess & Rudd P.C.
    510 L Street, Suite 700
    Anchorage, Alaska  99501
    Phone:  907-793-2200
    Fax:     907-793-2299
    Email:  gzipkin@guessrudd.com
    Alaska Bar No. 7505048


CERTIFICATE OF SERVICE
I hereby certify that on the
30th day of November, 2007, a copy
of the foregoing document was served
electronically on:

Robert B. Groseclose, Esq.
Laura K. McNally, Esq.
Philip C. Stahl, Esq.

Guess & Rudd P.C.


By:     s/ Gary A. Zipkin


Continental Insurance Company v. Catholic Bishop of Northern Alaska,
Case No. 3:06-cv-00019 TMB
CNA's Reply re Motion for Summary Judgment
Page 12 of 12