IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CONTINENTAL INSURANCE COMPANY, | Case No. 3:06-cv-00019 TMB |
| Plaintiff, | |
| v. | |
| CATHOLIC BISHOP OF NORTHERN ALASKA, | |
| Defendant. | |

## MEMORANDUM OF COUNSEL SUPPORTING MOTION TO REFER CASE TO BANKRUPTCY COURT

**I.     INTRODUCTION**

Defendant, Catholic Bishop of Northern Alaska, an Alaska religious corporation sole ("CBNA"), initiated a Chapter 11 reorganization proceeding by filing a voluntary petition in the United States Bankruptcy Court for the District of Alaska ("Bankruptcy Court") on March 1, 2008 (the "Petition Date").  The Reorganization Case is currently pending before the Bankruptcy Court as Case No. 08-00110 (the "Reorganization Case").   This Memorandum of Counsel ("Memorandum") supports CBNA's Motion seeking an Order pursuant to this Court's Miscellaneous General Order Number 503, dated May 17, 1985, and 28 U.S.C. § 157, referring the above captioned civil case (the "Case") to the Bankruptcy Court for adjudication.  The Case is a "core proceeding" in the Reorganization Case and should be finally heard and determined by the Bankruptcy Court pursuant to 28 U.S.C. § 157(b). In the alternative, the Case is "related to" the Reorganization Case under the Bankruptcy Court's "non-core" jurisdiction pursuant to 28 U.S.C. § 157(c), and the Case should still be referred to the Bankruptcy Court for adjudication.

COOK, SCHUHMANN
& GROSECLOSE,
INC.
714 Fourth Ave.
Suite 200
Post Office Box 70810
Fairbanks, AK 99707

QBACTIVE\124448.00004\6196011.2

## II.    BACKGROUND

Beginning in 2003, CBNA experienced the first in a series of cases[1] alleging sexual abuse committed by priests and other workers in the Roman Catholic Church in Alaska (the "Alaska Clergy Abuse Cases").  For various reasons which are addressed in more detail in the "<u>Declaration Of Bishop Donald J. Kettler In Support Of Chapter 11 Petition And First Day Motions</u>" (the "Kettler Declaration") which was filed in the Reorganization Case on March 2, 2008, a true and correct copy of which is attached hereto as Exhibit "A", CBNA determined to file a Chapter 11 petition commencing the Reorganization Case.  As stated in the Kettler Declaration, in view of CBNA's limited resources, the failure of a key primary insurer to participate in any meaningful way that would assist in resolution of the pending cases outside of bankruptcy and CBNA's desire to comprehensively deal with the claims of all victims of sexual abuse, CBNA filed the Reorganization Case.

In November 2007, the Oregon Province of Jesuits (the "Province"), a co-defendant with CBNA in these suits and the religious order that historically supplied all of the religious workers in the Diocese of Fairbanks, including every predecessor of the current Bishop, entered into a global settlement of the sexual abuse claims against the Province for an aggregate amount of $50 million.  CBNA did not participate in the settlement and remains a defendant in each of these suits.

While the Alaska Clergy Abuse Cases were pending in the Alaska state court, Continental Insurance Company ("Continental") filed the Case seeking to avoid any responsibility for coverage of any of the claims of the claimants seeking redress in the Alaska Clergy Abuse Cases.  Insurance is one of the key assets of CBNA's bankruptcy estate.  The

---

[1] These cases have ultimately resulted in claims approximately 150 plaintiffs.  The number of plaintiffs has, from time to time, fluctuated because of settlements and dismissals.

**COOK, SCHUHMANN & GROSECLOSE, INC.**
**714 Fourth Ave.**
**Suite 200**
**Post Office Box 70810**
**Fairbanks, AK 99707**

MEMORANDUM IN SUPPORT OF MOTION                                                      Page 2of 9
TO REFER TO BANKRUPTCY COURT                              CIC v. CBNA Case No. 3:06-cv-00019 TMB
QBACTIVE\124448.00004\6196011.2

participation of its insurers in a plan of reorganization is central to CBNA's ability to reorganize pursuant to Chapter 11 of the Bankruptcy Code.  To that end, CBNA is, simultaneously, with filing this Motion, initiating an adversary proceeding under Fed R. Bankr. P. 7001 in the Bankruptcy Court against Catholic Mutual Relief Society of America, The Catholic Relief Insurance Company of America, Alaska National Insurance Company, Aetna Casualty and Surety Company, nka and dba Travelers Casualty and Surety Company, Aetna Casualty and Surety Company of Illinois, nka and dba Travelers Casualty and Surety Company or Travelers Casualty and Surety Company of Illinois, as well as Continental (collectively, the "Adversary Defendants"), seeking a judicial determination of various "scope of coverage" issues that are or may be in dispute as between CBNA and the Adversary Defendants (the "Insurance Adversary Proceeding").  A copy of the complaint commencing the Insurance Adversary Proceeding is attached hereto as Exhibit "B".  The determination of the issues raised in the Insurance Adversary Proceeding directly affect the total amount of liability insurance coverage available to CBNA to respond to the claims in the already asserted Alaska Clergy Abuse Cases as well as any other claims that come forward during the claims process in the Reorganization Case.

In the instant action, Continental seeks a judicial declaration by this Court that CBNA cannot offer satisfactory evidence of the issuance of various liability policies by Continental to CBNA for any policy periods within the calendar period of October 1973 to April 15, 1979 (the "Policies"), and seeks reimbursement of defense costs paid with respect to the Alaska Clergy Abuse Cases by Continental under a reservation of rights.  CBNA's answer asks this Court for the opposite judicial declaration that Continental has a duty to defend and indemnify CBNA with respect to the underlying claims under the Policies that were issued to it by Continental during the October 1973 to April 15, 1979 calendar period.  Cross motions for summary judgment have

**COOK, SCHUHMANN & GROSECLOSE, INC.**
**714 Fourth Ave.**
**Suite 200**
**Post Office Box 70810**
**Fairbanks, AK 99707**

been filed by Continental and CBNA. This action has been stayed as a result of the automatic stay under 11 U.S.C. § 362(a) that was automatically imposed on the Petition Date when CBNA filed the Reorganization Case.

## III. ARGUMENT

### A. The Policies Are Property of CBNA's Bankruptcy Estate.

Under 11 U.S.C. § 541(a), the commencement of a case under Title 11, United States Code, creates an estate which includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *See*, *also, In re Western Asbestos Company*, 313 B.R. 859, 863-864 (N.D. Cal. 2004); *In re Minoco*, 799 F.2d 517, 518 (9th Cir.1986). Congress intended this definition to be broad, including both tangible and intangible property. *Western Asbestos* 313 B.R. at 864; *Minoco*, 799 F.2d at 518. Insurance contracts, particularly liability policies, are included in this definition, and can even be an estate's most valuable asset.[2] A debtor's estate is worth more with the insurance policy than without. *Western Asbestos* 313 B.R. at 864; *Minoco*, 799 F.2d at 519, citing *A.H. Robins v. Piccinin*, 788 F.2d 994 (4th Cir.1986).

CBNA's insurance policies are, by far, the most valuable assets in the Reorganization Case. CBNA is simply unable to deal with the claims which have been asserted in the Alaska Clergy Abuse Cases and the sexual abuse claims which are yet to be asserted in the Reorganization Case without this valuable asset.[3] The importance of the Continental Policies to the Reorganization Case is confirmed by the fact that there are more than 60 claimants with claims pending against CBNA who allege that they were subjected to sexually abusive conduct,

---

[2] The value of the Policies is even more significant in the Reorganization Case given the dire financial circumstances of CBNA.

[3] Pursuant to Fed. R. Evid. 201(d), the Court may judicially notice the importance of meaningful participation of insurers in diocesan Chapter 11 cases. This has already been amply demonstrated in the Portland, Spokane, Tucson and Davenport diocesan Chapter 11 cases.

**COOK, SCHUHMANN & GROSECLOSE, INC.**
714 Fourth Ave.
Suite 200
Post Office Box 70810
Fairbanks, AK 99707

MEMORANDUM IN SUPPORT OF MOTION
TO REFER TO BANKRUPTCY COURT
QBACTIVE\124448.00004\6196011.2

Page 4of 9
CIC v. CBNA Case No. 3:06-cv-00019 TMB

by clerics and other workers in the Catholic Church in Alaska, during one or more of the Continental policy periods covering the calendar period of October 1973 to April 15, 1979.  In addition, others could come forward during the claims process in the Reorganization Case. Moreover, Continental seeks monetary relief against CBNA in the form of reimbursement of defense costs paid to date, which are potentially significant and could constitute one of the largest non-abuse claims to be addressed in any plan of reorganization to be proposed by CBNA in the Reorganization Case.

### B.     Bankruptcy Court's Jurisdiction.

The United States District Courts ("District Courts") have exclusive jurisdiction over all cases under Title 11, United States Code, and concurrent jurisdiction over all civil proceedings arising under Title 11, or arising in or related to cases under Title 11. 28 U.S.C. § 1334(b); See, *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431,1434-1435 (9th Cir. 1995).  District Courts also have the authority to refer bankruptcy proceedings, including proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Bankruptcy Code, to the bankruptcy judges in their respective districts. 28 U.S.C. § 157(a).  The United States District Court of Alaska ("District of Alaska") has adopted Local Rule 503, which automatically refers "all cases under Title 11 and all proceedings arising under Title 11 or arising in or related to cases under Title 11" to the bankruptcy judges of the District of Alaska

A distinction exists between those concurrent jurisdiction claims that "arise under" or "arise in" Title 11 on the one hand, and those that are merely "related to" Title 11 on the other hand.  *In re Harris Pine Mills*, 44 F.3d at 1435.  Claims that arise under or in Title 11 are deemed to be "core" proceedings, while claims that are related to Title 11 are "non-core" proceedings.  *Id. citing*, *Robertson v. Isomedix, Inc. (In re Int'l Nutronics)*, 28 F.3d 965, 969 (9th Cir.1994) ("[c]ore proceedings are matters concerning the administration of the estate and rights

COOK, SCHUHMANN
& GROSECLOSE,
INC.
714 Fourth Ave.
Suite 200
Post Office Box 70810
Fairbanks, AK 99707

created by title 11.") (internal citation and quotation omitted). Bankruptcy Courts may exercise jurisdiction over both *core* and *non-core* matters. The difference between *core* and *non-core* proceedings is jurisdictionally significant because a bankruptcy judge may enter final orders or judgments in a core proceeding. 28 U.S.C. § 157(b); *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1235 (3d Cir.1994). In a *non-core* proceeding, however, unless the parties consent, the bankruptcy judge makes a report and recommendation to the district court, subject to *de novo* review by the district court on any matter to which a party has objected. Section 157(c)(1); *Phar-Mor*, 22 F.3d at 1235.

### C. The Determination Of The Existence And Extent Of the Policies Is a Core Proceeding.

The Case constitutes a "core proceeding" because it concerns the existence (or non-existence) of property of the estate implicating 11 U.S.C. § 541(a), and concerns a determination of the validity and extent a claim against the estate for reimbursement of defense costs accruing under Continental's reservation of rights. Therefore, the issues in the Case fall firmly within 28 U.S.C. § 157(b)(2)(A)(B) and (O). Congress provided a non-comprehensive list of core proceedings in 28 U.S.C. § 157(b)(2). However, the primary criteria for determining whether a proceeding is *core* or *non-core* is determining whether the proceeding "arises in', "arises under" or "is related to" a case under Title 11. As the Ninth Circuit explained in *Eastport Assocs. v. City of Los Angeles (In re Eastport Assocs.)*:

> Congress used the phrase "arising under title 11" to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11.... The meaning of "arising in" proceedings is less clear, but seems to be a reference to those "administrative" matters that arise *only* in bankruptcy cases. In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.
>
> The court concluded: "If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of

**COOK, SCHUHMANN & GROSECLOSE, INC.**
714 Fourth Ave.
Suite 200
Post Office Box 70810
Fairbanks, AK 99707

MEMORANDUM IN SUPPORT OF MOTION
TO REFER TO BANKRUPTCY COURT
QBACTIVE\124448.00004\6196011.2

Page 6of 9
CIC v. CBNA Case No. 3:06-cv-00019 TMB

> bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but ... it is an 'otherwise related' or non-core proceeding."
> *Id*. at 97.

*Eastport Assocs. v. City of Los Angeles (In re Eastport Assocs.)*, 935 F.2d 1071, 1076-77 (9th Cir.1991) (as amended) (Quoting *In re Wood*, 825 F.2d 90, 96-97 (5th Cir.1987) emphases in original; footnote omitted).

Moreover, Congress added: "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3).[4]  This is because

> in the ordinary bankruptcy proceeding the great bulk of creditor claims are claims that have accrued under state law prior to bankruptcy-claims for goods sold, wages, rent, utilities, and the like.... Every such claim must be filed and its validity is subject to adjudication by the Bankruptcy Court. The existence and validity of such claims recurringly depend on state law.  Hence, the bankruptcy judge is constantly enmeshed in state-law issues.

*Northern Pipeline v. Marathon,* 458 U.S. 50, 96-97, 102 S.Ct. 2858, 2884-85 73 L.Ed.2d 598, 631 (1982) (White, J., dissenting).

Determining the existence and extent of bankruptcy estate property under 11 U.S.C. § 541(a) is one of the Bankruptcy Court's core functions.  As previously illustrated, the insurance policies (including the Policies) are property of CBNA's bankruptcy estate. Continental seeks a determination that no such Policies exist.  Accordingly, whichever court determines the issue will, of necessity, have to determine the nature and extent of property of CBNA's bankruptcy estate.  Since this determination is a core function of the Bankruptcy Court, the Case should be referred to the Bankruptcy Court for all future and pending matters.

---

[4] Many of the issues in the Case are or may be determined by reference to state law.

**COOK, SCHUHMANN & GROSECLOSE, INC.**
714 Fourth Ave.
Suite 200
Post Office Box 70810
Fairbanks, AK 99707

MEMORANDUM IN SUPPORT OF MOTION  
TO REFER TO BANKRUPTCY COURT  
QBACTIVE\124448.00004\6196011.2

Page 7of 9  
CIC v. CBNA Case No. 3:06-cv-00019 TMB

### D. This Case is "related to" CBNA's Reorganization Case

In the alternative, the Case should be referred to the Bankruptcy Court by this Court because it is "related to" the Reorganization Case.[5] In the Ninth Circuit, a proceeding is related to a case under Title 11 if "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Great Western Savings v. Gordon (In re Fietz)*, 852 F.2d 455, 457 (9th Cir.1988) (citation omitted). Without doubt and for the reasons previously articulated, the outcome of the Case will have a direct and significant effect on the extent of assets being administered, the extent of the claims administered and the formulation of a plan of reorganization in the Reorganization Case. In addition, the Case is closely related to the Insurance Adversary Proceeding.

A bankruptcy judge may still hear and determine a proceeding that is not a core proceeding but is other related to a case under Title 11, United States Code. In that instance, the bankruptcy judge is to submit proposed findings of fact and conclusions of law to the District Court and any final order or judgment is to be entered by the district judge after considering the bankruptcy judge's proposed findings of fact and conclusions of law with a provision for de novo review (unless the parties consent otherwise). 28 U.S.C. § 157(c)(1) and (2). Because of the significant relationship between the Case, the Insurance Adversary Proceeding and the Reorganization Case, it will be more efficient and more economical to have these matters heard by one court -- the Bankruptcy Court.

---

[5] The request by CBNA that the Court consider an alternative basis for granting the motion does not diminish CBNA's position that the Policy Existence Case is a core matter that can and should be finally determined by the Bankruptcy Court.

**COOK, SCHUHMANN & GROSECLOSE, INC.**
**714 Fourth Ave.**
**Suite 200**
**Post Office Box 70810**
**Fairbanks, AK 99707**

MEMORANDUM IN SUPPORT OF MOTION　　　　　　　　　　　　　　　　　　　Page 8of 9
TO REFER TO BANKRUPTCY COURT　　　　　　　　　CIC v. CBNA Case No. 3:06-cv-00019 TMB
QBACTIVE\124448.00004\6196011.2

## IV.  CONCLUSION

The Case implicates the two most basic functions of the Bankruptcy Court - determining the existence and extent of estate assets and determining the validity and extent of claims against the estate.  The Bankruptcy Court is the forum in which all matters related to the extent and nature of insurance coverage and its relationship to the Reorganization Case as a whole, can be most efficiently and comprehensively determined.  Therefore, CBNA respectfully requests entry of an ORDER referring this matter to the United States Bankruptcy Court of the District of Alaska as a "core proceeding" under 28 U.S.C. § 157(b); or in the alternative, an ORDER referring this matter to the United States Bankruptcy Court of the District of Alaska under its "non-core" "related to" jurisdiction under 28 U.S.C. § 157(c).

DATED this 24th day of April, 2008.

COOK, SCHUHMANN & GROSECLOSE

By:   /s/ Robert B. Groseclose
    Robert B. Groseclose
    Alaska Bar No. 7605032

**CERTIFICATE OF SERVICE**

This is to certify that on the 24th day
of April, 2008, a copy of the foregoing
is being mailed via first class mail fully prepaid
to the following attorney(s) or party(s) of record:

Gary A. Zipkin, Esq.
Guess & Rudd, P.C.
510 L Street, Suite 700
Anchorage, AK  99501

Laura K. McNally and Philip C. Stahl
Grippo & Elden LLC
111 S. Wacker Drive
Chicago, IL 60606

  /s/ Jamie Archibald
for Quarles & Brady, LLP

**COOK, SCHUHMANN & GROSECLOSE, INC.**
**714 Fourth Ave.**
**Suite 200**
**Post Office Box 70810**
**Fairbanks, AK 99707**

MEMORANDUM IN SUPPORT OF MOTION          Page 9 of 9
TO REFER TO BANKRUPTCY COURT          CIC v. CBNA Case No. 3:06-cv-00019 TMB
QBACTIVE\124448.00004\6196011.2