# EXHIBIT B

Susan G. Boswell, Esq. (AZ #004791; Admitted Pro Hac Vice)
David A. Paige (AZ #004333; Pro Hac Vice Admission Pending)
QUARLES & BRADY LLP
One South Church Avenue
Suite 1700
Tucson, Arizona 85701-1621
Telephone: (520) 770-8700
Facsimile: (520) 770-2222
Email: sboswell@quarles.com

Robert B. Groseclose (AK #7605032)
Dennis E. Cook (AK #7011051)
COOK SCHUHMANN & GROSECLOSE, INC.
714 Fourth Ave., Suite 200
Fairbanks, Alaska 99701
Telephone (907) 452-1855
Facsimile (907) 452-8154
Email: bob@alaskalaw.com

Attorneys for Debtor, Catholic Bishop of Northern Alaska

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re: | Case No. 08-00110-DMD |
| Catholic Bishop of Northern Alaska, an Alaska religious corporation sole, | (Chapter 11) |
| Debtor | |

Catholic Bishop of Northern Alaska

Debtor/Plaintiff,

v.

Continental Insurance Company; Catholic Mutual Relief Society of America; The Catholic Relief Insurance Company of America; Alaska National Insurance Company; Travelers Casualty and Surety Company, formerly known as Aetna Casualty and Surety Company,

Defendants.

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Catholic Bishop of Northern Alaska, an Alaska religious corporation sole, hereby presents its Declaratory Judgment Complaint against Defendants Continental Insurance Company; Catholic Mutual Relief Society of America; Alaska National Insurance Company; Traveler's Casualty and Surety Company, formerly known as Aetna Casualty and Surety Company, and alleges as follows:

## PARTIES

1.  Plaintiff, Catholic Bishop of Northern Alaska ("CBNA") is an Alaska religious corporation sole.

2.  Defendant Continental Insurance Company, sometimes referred to as "CNA", and hereafter in this Complaint referred to as "Continental", is a corporation organized and existing under the laws of South Carolina with its principal place of business in Chicago, Illinois.

3.  Defendant Catholic Mutual Relief Society of America is a Nebraska non-profit corporation with its principal place of business in Omaha, Nebraska. Defendant The Catholic

**Quarles & Brady LLP**
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

Relief Insurance Company of America is a property casualty insurance company organized under the laws of the State of Nebraska (hereinafter referred to collectively as "Defendant Catholic Mutual" or "Catholic Mutual") with its principal place of business in the state of Nebraska.

4.  Defendant Alaska National Insurance Company (hereinafter referred to as "Defendant Alaska National" or "Alaska National") is an Alaska corporation with its principal place of business in Anchorage, Alaska.

5.  Defendant Travelers Casualty and Surety Company is a Connecticut corporation with its principal place of business in the state of Connecticut, and is the successor to Aetna Casualty and Surety Company, which previously issued various insurance policies that included Plaintiff as an insured. Upon information and belief, Aetna Casualty and Surety Company merged into, became a part of and/or known as, Travelers Casualty and Surety Company, a Connecticut corporation, with its principal place of business in Hartford, Connecticut. For purposes of this complaint, Travelers Casualty and Surety Company and Aetna Casualty and Surety Company are referred to herein collectively as "Travelers/Aetna."

## JURISDICTION AND VENUE

6.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This adversary proceeding is brought pursuant to Fed. R. Bankr. P. 7001.

7.  This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

8.  Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

9.  This Court has jurisdiction to award a declaratory judgment pursuant to 26 U.S.C. §§ 2201 *et. seq.*

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

## BACKGROUND

10. On March 1, 2008 (the "Petition Date"), Plaintiff commenced its voluntary Chapter 11 reorganization case (the "Reorganization Case") to, among other things, finally and comprehensively address the numerous claims that have been brought against it as a result of alleged sexual abuse by clerics and other workers in the Catholic Church in Alaska.

11. As of the Petition Date, CBNA was a defendant in numerous lawsuits brought by individuals who claim that they were sexually abused by one or more members of the clergy or other workers in the Catholic Church in Alaska. These lawsuits are commonly referred to as the "Alaska Clergy Abuse Cases."

12. Upon information and belief, additional claims alleging sexual abuse will be filed against CBNA as part of the claims filing process in the Reorganization Case.

13. The Diocese of Fairbanks, which is the ecclesiastical entity that carries on the mission of the Roman Catholic Church within its territory, is among the poorest in the United States and, as previously stated in pleadings before this Court, is the only truly missionary diocese in the United States.

14. It is critical to CBNA's ability to reorganize that there be significant and meaningful participation by its liability insurers in the ultimate resolution of this Reorganization Case.

## THE INSURANCE POLICIES

15. Upon information and belief, Defendant Continental previously issued various primary liability insurance policies covering various policy periods that span the calendar period commencing on or about October 1973 and ending on or about April 15, 1979. As of the filing of this declaratory judgment action, there is pending between CBNA and Continental that certain

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

declaratory judgment action in the United States District Court for the District of Alaska (the "District Court"), entitled *Continental Insurance Company v. The Catholic Bishop of North America*, Case No. 3:06-cv-00019-TMB (hereinafter referred to as the "Policies Existence Case"). The Policies Existence Case was brought by Continental, who has sought a judicial declaration that CBNA cannot offer satisfactory evidence of the issuance of various liability policies by Continental to CBNA for any policy periods with the calendar period of October 1973 to April 15, 1979. In the Policies Existence Case, CBNA is seeking a judicial declaration that CBNA has proven the existence of coverage under the liability policies CBNA contends were issued to it by Continental for various policy periods within the calendar period October 1973 to April 15, 1979. There currently are pending before the District Court in the Policies Existence Case cross motions for summary judgment by Continental and CBNA with regard to the existence of the policies CBNA contends were issued to it by Continental. The Policies Existence Case that is pending between CBNA and Continental has not presented to the District Court in that case any of the type of scope of coverage issues that this Declaratory Judgment Action presents. Furthermore, the issues raised in this Declaratory Judgment Action involve all of CBNA's insurers as more fully set forth below and not just Continental, and these other liability insurers are not parties to the Policies Existence Case.

16. CBNA is filing this same date, in the Policies Existence Case, a Motion to refer the Policies Existence Case to this Court pursuant to the District Court's Miscellaneous General Order number 503 dated May 17, 1985 and 28 U.S.C. § 157. A copy of the "<u>Motion To Refer Case To Bankruptcy Court</u>" filed this same date is attached hereto as Attachment A.

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

COMPLAINT FOR DECLARATORY JUDGMENT

QBACTIVE\6194962.2

Page 5 of 16
In re *Catholic Bishop of Northern Alaska*, Case No. 08-00110-DMD

17. Upon information and belief, for certain policy periods the Continental insurance primary policies issued to CBNA have policy limits of $100,000 per person and $300,000 per occurrence limit, without any General Bodily Injury aggregate limit.

18. Upon information and belief, other of the Continental insurance primary policies issued to CBNA may have a $500,000 per occurrence limit, without a General Bodily Injury aggregate limit.

19. Defendant Catholic Mutual issued various primary liability insurance policies to CBNA for policy periods during the calendar period of April 15, 1979 to April 15, 1983, and again from April 15, 1988 to the present.

20. Various of the Catholic Mutual primary policies issued to CBNA have a $300,000 Single Limit for Bodily Injury Liability coverage without a General Bodily Injury aggregate limit.

21. Defendant Catholic Mutual also has issued various umbrella/excess liability insurance policies to CBNA for the policy periods of April 15, 1979 to April 15, 1983 and from April 15, 1988 to present.

22. The umbrella/excess liability policies issued to CBNA by Defendant Catholic Mutual provide that Catholic Mutual "will indemnify the Named Entity for all sums which the Named Entity shall be legally obligated to pay as damages, all as more fully defined set forth by the term 'ultimate net loss' on account of:

"1. Personal Injuries . . .to which this Certificate applies, caused by an occurrence."

23. The Catholic Mutual umbrella/excess liability policies issued to CBNA, define "Personal Injuries" as follows:

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

8. PERSONAL INJURIES

The term "Personal Injuries" whenever used herein means bodily injury, mental injury, mental anguish, shock, sickness, disability, false arrest, false imprisonment, wrongful eviction, detention, malicious prosecution, discrimination, (unless coverage therefor is prohibited by law), humiliation, also libel, slander, or defamation of character or invasion of rights of privacy, except that which arises out of any Advertising activities.

24. In contrast, the Catholic Mutual primary liability insurance policies issued to CBNA state that coverage is provided for the legal liability of CBNA to a third-party claimant when it is claimed that "bodily injury" took place during the applicable policy period(s). In the Catholic Mutual primary policies, "bodily injury" is defined as "bodily injury, sickness or disease."

25. For purposes of the Alaska Clergy Abuse Cases that have been brought against CBNA to date, with regard to the Catholic Mutual primary liability insurance policies issued to CBNA, Catholic Mutual has taken the position that "bodily injury" takes place during a Catholic Mutual primary liability insurance policy if the claimant has alleged that the abusive sexual contact occurred during one or more of the Catholic Mutual policy periods.

26. Travelers/Aetna previously issued primary and umbrella liability insurance policies, as to which CBNA is included as an insured, including a Commercial Excess Liability (Umbrella) Policy No. XS-587476, with a policy period of April 15, 1989 to July 1, 1990 (hereafter "Travelers/Aetna Umbrella Policy"). While various primary liability insurance policies issued by Travelers/Aetna, as to which CBNA is an insured, covering the policy periods underlying the April 15, 1989 - July 1, 1990 Travelers/Aetna Umbrella Policy include an "Abuse Or Molestation Exclusion" Form No. CG2146 (Ed. 01-87), no such abuse or molestation exclusion is included within the Travelers/Aetna Umbrella Policy(ies) to which CBNA is an insured. The Insuring Agreement, Section I, of the Travelers/Aetna Umbrella Policy(ies)

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

provides that in the event there is no coverage for a third-party liability claim under the underlying primary liability policy, but coverage applies under the umbrella/excess policy, coverage under the applicable Travelers/Aetna Umbrella Policy(ies) is subject to a $10,000 retained limit for any one occurrence.

27. The Insuring Agreement of the Travelers/Aetna Umbrella Policy No. XS-587476, and any other such umbrella policies issued by Travelers/Aetna as to which CBNA is an insured, also provides that the insurer " will pay on behalf of the insured the 'ultimate net loss' in excess of the 'applicable underlying limit' which the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' personal injury,' or 'advertising injury' to which this insurance applies."  Further, the policy states that it applies only to "bodily injury" or "property damage";

    (a)    Occurring during the policy period; and

    (b)    Caused by an 'occurrence'; . . .

"Applicable underlying limit" means"

    a.    if the policies of "underlying insurance" apply to the "occurrence" or "offense", the greater of: (1) the amount of insurance stated in the policies of "underlying insurance" in the Declarations or any other available insurance less the amount by which an applicable limit so stated has been reduced solely due to payment of claims; or (2) the "retained limit" shown in the Declarations; or

    b.    if the policies of "underlying insurance" do not apply to the "occurrence" or "offense," the amount stated in the Declarations as the "retained amount."

28. The Travelers/Aetna primary general liability coverage form states that coverage is provided for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." The primary policies define "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

29. In contrast, the Travelers/Aetna Umbrella Policy(ies) define covered "bodily injury" as follows:

> "Bodily injury" means bodily injury, shock, fright, mental injury, mental anguish, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time.

30. In the Alaska Clergy Abuse Cases, the claimants in those cases have made various allegations against CBNA related to improper sexual abusive contact between clerics and other workers and those claimants during various periods of time. Those claimants further allege that CBNA not only has vicarious liability for the acts of abusive conduct on the part of clergy members, but also that CBNA has liability for its own alleged negligent supervision of the clergy members.

31. Various of the claimants in the Alaska Clergy Abuse Cases have asserted that the applicable statute of limitations does not apply to their claims because that claimant didn't know, recognize or realize or should not have known, recognized or realized the effects of the abuse at the time of the abusive contact, and rather may have only initially known about the occurrence of the abuse. Upon information and belief, various claimants in the Alaska Clergy Abuse Cases have asserted that they have experienced ongoing impacts from previous sexual contact, including allegations of ongoing impacts of bodily injury, mental injury, mental anguish, shock, fright, sickness and/or humiliation, and various claimants also have alleged that it was not until later, after a significant passage of time, that the claimant experienced "delayed knowledge," "delayed recognition" or "delayed realization" of the reasons for the previously experienced bodily injury, mental injury, mental anguish, shock, fright, sickness and/or humiliation.

32. In the underlying Alaska Clergy Abuse Cases, CBNA has opposed claims by various of the claimants therein that: (i) they have suffered "delayed knowledge", "delayed recognition," or "delayed realization" of the reasons and/or causes for any such post-abusive

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

contact impacts as bodily injury, mental injury, mental anguish, shock, fright, sickness and/or humiliation or (ii) that the claimants only initially knew about or remembered the alleged abuse.

33. By referring to the allegations of various claimants in the Alaska Clergy Abuse Cases, CBNA does not intend to agree with or endorse those allegations. CBNA has affirmatively denied numerous allegations made against it in the Alaska Clergy Abuse Cases, including allegations related to the claimants' assertions about so-called "delayed knowledge," "delayed recognition" or "delayed realization" related to prior abusive sexual contact and any allegedly resulting bodily injury, mental injury, mental anguish, shock, fright, sickness and/or humiliation experienced by a claimant before any allegedly "delayed knowledge," "delayed recognition" or "delayed realization" event or events.

34. Allegations made by various claimants in the Alaska Clergy Abuse Cases to the effect that the claimant has experienced "delayed knowledge," "delayed recognition" or "delayed realization" from prior abusive sexual contact with allegedly resulting bodily injury, mental injury, mental anguish, shock, fright, sickness and/or humiliation being experienced by the claimant before the alleged "delayed knowledge," "delayed recognition" or "delayed realization" present allegations which potentially trigger coverage under the Catholic Mutual umbrella/excess liability policies, because "Personal Injuries" is defined as including such alleged impacts as "mental injury", "mental anguish", "shock" and/or "humiliation."

35. Allegations made by various claimants in the Alaska Clergy Abuse Cases to the effect that the claimant has experienced "delayed knowledge," "delayed recognition," or "delayed realization" from prior abusive sexual contact with allegedly resulting bodily injury, mental injury, mental anguish, shock, fright, sickness and/or humiliation present allegations which potentially trigger coverage under the Travelers/Aetna Umbrella Policy(ies) as to which CBNA

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

COMPLAINT FOR DECLARATORY JUDGMENT                                    Page 10 of 16
                                                 In re *Catholic Bishop of Northern Alaska*, Case No. 08-00110-DMD
QBACTIVE\6194962.2

is an insured, because the definition of covered "bodily injury" not only includes "bodily injury," "sickness" or "disease" but also "shock", "fright", "mental injury", "mental anguish" and "humiliation."

36. Defendant Alaska National has issued primary commercial liability insurance policies to CBNA covering the periods of April 15, 1983 to April 15, 1988. Various of the Alaska National policies provide a single limit of liability for bodily injury coverage in the amount of $1,000,000 each occurrence, without a General Bodily Injury aggregate limit. Other of the Alaska National policies provide bodily injury coverage in the policy limit amount of $500,000 each occurrence, without a General Bodily Injury aggregate limit.

37. Upon information and belief, Alaska National may have issued one or more primary liability policies to CBNA that included a General Bodily Injury aggregate and/or deductible, though a determination as to which, if any, of such policies may have General Bodily Injury aggregate and/or deductible has been impeded because of the lack of specific and clear documentation of various policy provisions provided to date by Alaska National.

38. The Alaska National primary bodily injury liability coverage provides that:

The Company will pay on behalf of the **insured** all sums which the insured shall be legally obligated to pay as damages because of

A. Bodily Injury . . .

To which this insurance applies, caused by an **occurrence**, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of bodily injury. . .

39. As of the filing of this Declaratory Judgment Action, there are pending against CBNA approximately 150 individual claims brought by various claimants in the Alaska Clergy Abuse Cases.

40. In context of the Alaska Clergy Abuse Cases, there are various "scope of coverage" issues that require adjudication as between CBNA and the Defendants, including, but

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

not limited to, the applicable "trigger of coverage" and "allocation" principles, and what constitutes an "occurrence" for purposes of a "per occurrence" policy limit and/or a "per occurrence" retained limit or deductible. Resolution of such scope of coverage issues as trigger of coverage, allocation, and the number of occurrences that apply under CBNA's policies will directly affect the total amount of liability insurance coverage potentially available to CBNA to respond to the various claims in Alaska Clergy Abuse Cases and other sexual abuse claims filed in the Reorganization Case during the claims filing process. For example, were a court to declare that each cleric or worker who abused multiple claimants during a policy period constituted a separate "occurrence" and five (5) clerics and workers engaged in abusive contact during a policy period, a policy period subject to a $500,000 per occurrence policy limit could potentially provide $2.5 million in coverage limits, subject to any "per person" limit provisions. On the other hand, were a court to declare that each claimant who suffered abusive contact during a policy period constituted a separate "occurrence" and five (5) clerics and workers collectively abused ten (10) claimants during a policy period, a policy with a $500,000 per occurrence policy limit could potentially provide $5 million in coverage limits, subject to any "per person" limit provisions.

41. Scope of coverage issues, including the trigger of coverage, allocation and number of "occurrences" issues could likewise affect application of one or more self-insured or deductible provisions.

42. Scope of coverage issues also need to be considered in concert with those policies that do not have a General Bodily Injury Aggregate Limit provision and those that do have a General Bodily Injury Aggregate Limit.

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

43. A comprehensive declaratory judgment action involving CBNA and all of CBNA's primary and excess insurers is necessary to ensure that there will not be potentially inconsistent scope of coverage adjudications, which might occur were there to be separate adjudications of the same scope of coverage issues between CBNA and one or more, but less than all, of CBNA's primary and excess liability insurers.

### REQUEST FOR DECLARATORY RELIEF

44. There is a current justiciable case and controversy between the Plaintiff and all of the Defendants with regard to the scope of coverage available to CBNA under the Defendants' policies with regard to the claims of the claimants in the underlying Alaska Clergy Abuse Cases, as well as for any future claims that may be presented against CBNA, as to the scope of Defendants' defense and/or indemnity coverage obligations.

**WHEREFORE**, Plaintiff CBNA requests the Court to issue a declaratory judgment setting forth an adjudication with regard to all of the provisions of all the Defendants' respective primary and excess/umbrella liability insurance policies, as to which CBNA is an insured, that are required to be addressed in order to establish the scope of coverage currently available to Plaintiff CBNA and/or potentially available to Plaintiff CBNA under the Defendants' various liability policies, and each of them, with regard to the claims of the current claimants in the pending Alaska Clergy Abuse Cases, and also with regard to future claims that may be brought against CBNA, together with an award of Plaintiffs' attorneys' fees, taxable costs and such other and further supplemental relief necessary to fully adjudicate the rights and obligations of Plaintiff and the Defendants under the subject primary and excess/umbrella liability insurance policies.

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

DATED this 24th day of April 2008.

          QUARLES & BRADY LLP
          One South Church, Suite 1700
          Tucson, AZ 85701


          By /s/ Susan G. Boswell
             David A. Paige
             Susan G. Boswell


          Robert B. Groseclose, Esq.
          Dennis E. Cook, Esq.
          COOK, SCHUHMANN & GROSECLOSE, Inc.
          714 Fourth Ave., Suite 200
          Fairbanks, AK 99701

          Attorneys for Plaintiff

**Quarles & Brady LLP**
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

COMPLAINT FOR DECLARATORY JUDGMENT            Page 14 of 16
In re *Catholic Bishop of Northern Alaska*, Case No. 08-00110-DMD
QBACTIVE\6194962.2

I hereby certify that a copy of the foregoing was
served this 24th day of April, 2008 on:

Kay Hill - U.S. Trustee
605 West 4th Avenue, Suite 258
Anchorage, Alaska 99501
Email: Kay.hill@usdoj.gov

James I. Stang, Esq
Hamid Rafatjoo, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, CA 90067
Email: jstang@pszjlaw.com
Email: hrafatjoo@pszjlaw.com

David H. Bundy, Esq.
3201 C Street
Suite 301
Anchorage, AK 99503
Email: dhb@alaska.net

John C. Manly, Esq.
Manly, McGuire & Stewart
4220 Von Karman Avenue, Suite 200
Newport Beach, CA 92660
Email: jmanly@manlymcguire.com

Kenneth Roosa, Esq.
Christopher R. Cooke, Esq.
Cooke Roosa LLC
3700 Jewel Lake Road
Anchorage, AK 99502
Email: Ken@CookeRoosa.com
Email: Chris@CookeRoosa.com

William L. Courshon
Trial Attorney
Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, WA 98101
Email: Bill.L.Courshon@usdoj.gov

Charles R. Ekberg
Brad E. Ambarian
Lane Powell PC

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

COMPLAINT FOR DECLARATORY JUDGMENT

Page 15 of 16
In re *Catholic Bishop of Northern Alaska*, Case No. 08-00110-DMD

QBACTIVE\6194962.2

1420 Fifth Avenue, Suite 4100
Seattle, WA 98101
Email: ekbergc@lanepowell.com;
ambarianb@lanepowell.com

David C. Christian II
Sara E. Lorber
Seyfarth Shaw LLP
131 S. Dearborn Street, Suite 2400
Chicago, IL 60603
Email: dchristian@seyfarth.com; slorber@seyfarth.com

Philip C. Stahl
Laura K. McNally
Grippo & Elden LLC
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Email: pstahl@grippoelden.com;
lmcnally@grippoelden.com

Arthur E. Neuman
3201 New Mexico Avenue, N.W., Suite 247
Washington, D.C. 20016
Email: arthureneuman@aol.com

Ford Elsaesser
James S. MacDonald
Elseasser Jarzabek Anderson Marks Elliott & McHugh
Third & Lake Streets
PO Box 1049
Sandpoint, ID 83864
Email: ford@ejame.com; jmacdonald@ejame.com

Official Committee of Unsecured Creditors

Attached Official Service List dated
April 24, 2008

by first class mail and email, if available, or
by electronic means through the ECF system
as indicated on the Notice of Electronic
filing.

By: /s/ Jamie Archibald
       Quarles & Brady LLP

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

COMPLAINT FOR DECLARATORY JUDGMENT

Page 16 of 16
In re *Catholic Bishop of Northern Alaska*, Case No. 08-00110-DMD

QBACTIVE\6194962.2